## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 12-31336-JBS |
| | ) | |
| **DVORKIN HOLDINGS, LLC,** | ) | Chapter 11 |
| | ) | |
| | ) | Hon. Jack B. Schmetterer |
| **Debtor.** | ) | Hearing Date:  December 18, 2014 |
| | ) | Hearing Time: 10:00 a.m. |

## COVER SHEET FOR FIFTH INTERIM APPLICATION OF
## SEYFARTH SHAW LLP FOR COMPENSATION AND REIMBURSEMENT
## OF EXPENSES AS COUNSEL TO CHAPTER 11 TRUSTEE GUS A. PALOIAN
## <u>FOR THE PERIOD OF JULY 1, 2014 THROUGH OCTOBER 31, 2014</u>

<u>Name of Applicant</u>:                          Seyfarth Shaw LLP

Authorized to Provide
<u>Professional Services to</u>:                   Chapter 11 Trustee Gus A. Paloian

<u>Date of Appointment</u>:                      November 5, 2012, retroactive to October 3, 2012

Period for which Compensation
<u>and Reimbursement is Sought</u>:          July 1, 2014 through October 31, 2014

Amount of Interim Compensation
<u>Sought</u>:                                          $373,576.00

Amount of Interim Expense
<u>Reimbursement Sought</u>:                     $4,563.23

<u>This is an</u>:              Final      <u>  X  </u>  Interim Application.      <u>Prior Applications</u>:

| | | | | SEYFARTH'S PRIOR INTERIM FEE APPLICATIONS IN CHAPTER 11 CASE | | |
|---|---|---|---|---|---|---|
| Interim App. | Filing Date & Docket Number(s) | Interim Period Covered | Total Fees Requested & [Allowed] | Total Expenses Requested & [Allowed] | Aggregate Allowed Fees & Expenses | Fees & Expenses Paid to Date |
| 1st | 4/14/13 [287] | 10/3/12 - 3/31/13 | $676,704.00 [$676,704.00] | $25,118.36 [25,118.36] | $701,822.36 | $701,822.36 |
| 2nd | 10/2/13 [357] | 4/1/13 - 8/31/13 | $640,171.50 [$640,171.50] | $17,311.98 [$17,311.98] | $657,483.48 | $657,483.48 |
| 3rd | 4/11/14 [460] | 9/1/13 - 2/28/14 | $509,734.00 [$509,734.00] | $11,503.71 [$11,503.71] | $521,237.71 | $521,237.71 |
| 4th | 8/4/14 [509] | 3/1/14 - 6/30/14 | $399,553.50 [$399,553.50] | $7,400.65 [$7,400.65] | $406,954.15 | $406,954.15 |
| | | | | TOTAL | $2,287,497.70 | $2,287,497.70 |

Dated:  November 26, 2014

Respectfully submitted,

GUS A. PALOIAN, not individually or personally, but solely in his capacity as the Chapter 11 Trustee of Debtor's Estate

By:/s/ James B. Sowka                                    
   Gus A. Paloian (6188186)
   James B. Sowka (6291998)
   Bret M. Harper (6299968)
   SEYFARTH SHAW LLP
   131 South Dearborn Street
   Suite 2400
   Chicago, Illinois 60603
   Telephone:  (312) 460-5000
   *Counsel to Chapter 11 Trustee Gus A. Paloian*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-31336-JBS |
| | ) | |
| **DVORKIN HOLDINGS, LLC,** | ) | Chapter 11 |
| | ) | |
| **Debtor.** | ) | Hon. Jack B. Schmetterer |
| | ) | Hearing Date:  December 18, 2014 |
| _____ | ) | Hearing Time: 10:00 a.m. |

**NOTICE OF FIFTH INTERIM APPLICATION FOR COMPENSATION AND
EXPENSE REIMBURSEMENT OF SEYFARTH SHAW LLP AND HEARING**

**TO:    PARTIES ON ATTACHED SERVICE LIST**

**PLEASE TAKE NOTICE** that on November 26, 2014, Seyfarth Shaw LLP (the

"Applicant") filed its **Fifth Interim Application for Compensation and Reimbursement of**

**Expenses of Seyfarth Shaw LLP as Counsel to Chapter 11 Trustee Gus A. Paloian for the**

**Period of July 1, 2014 through October 31, 2014** (the "Application") with the United States

Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Bankruptcy

Court").  In the Application, Applicant seeks interim compensation in the amount of $373,576.00

and interim reimbursement of expenses in the amount of $4,563.23.  The Application is being

served contemporaneously with this Notice upon each party receiving notice in the above-

captioned case pursuant to the Bankruptcy Court's CM/ECF system.  All other parties may

obtain copies of the Application upon request to:  Ms. Jennifer M. McManus, Seyfarth Shaw

LLP, 131 South Dearborn Street, Suite 2400, Chicago, Illinois 60603-5577;

jmcmanus@seyfarth.com.

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider the Application will

be held before the Honorable Jack B. Schmetterer, United States Bankruptcy Judge for the

United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, in the

courtroom normally occupied by His Honor, Courtroom 682, located at 219 South Dearborn

Street, Chicago, Illinois 60604, on **December 18, 2014, at 10:00 a.m. prevailing Central Time**,

or as soon thereafter as the undersigned counsel may be heard.

Dated:  November 26, 2014

Respectfully submitted,

GUS A. PALOIAN, not individually or
personally, but solely in his capacity as the
Chapter 11 Trustee of Debtor's Estate

By:/s/ James B. Sowka_____
    Gus A. Paloian (6188186)
    gpaloian@seyfarth.com
    James B. Sowka (6291998)
    jsowka@seyfarth.com
    Bret M. Harper (6299968)
    bharper@seyfarth.com
    SEYFARTH SHAW LLP
    131 South Dearborn Street
    Suite 2400
    Chicago, Illinois 60603
    Telephone:  (312) 460-5000

    *Counsel to Chapter 11 Trustee Gus A.
    Paloian*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on this 26th day of November, 2014, pursuant to Section II, B, 4 of the Administrative Procedures for the Case Management/Electronic Case Filing System and Fed.R.Civ.P. 5(a), he caused a copy of the attached:

1.      **Notice of Fifth Interim Application for Compensation and Expense Reimbursement and Hearing** and **Fifth Interim Application for Compensation and Reimbursement of Expenses of Seyfarth Shaw LLP as Counsel to Chapter 11 Trustee Gus A. Paloian for the Period for July 1, 2014 through October 31, 2014** to be served (1) electronically upon those parties who receive notice through the ECF system, which parties are so noted on the attached Service List; and (2) via First Class U.S. Mail, postage prepaid, upon Patrick S. Layng c/o Stephen G. Wolfe, Office of the U.S. Trustee, Region 11, 219 S. Dearborn Street, Room 873, Chicago, IL  60604; and

2.      **Notice of Fifth Interim Application for Compensation and Expense Reimbursement of  Seyfarth Shaw LLP and Hearing** to be served via First Class U.S. Mail, postage prepaid, upon each of the parties so noted on the attached Service List.


/s/ James B. Sowka
      James B. Sowka

**DVORKIN HOLDINGS, LLC**
**Case No.  12-31336**

## CM/ECF ELECTRONIC MAIL DISTRIBUTION

Samantha Babcock
sbabcock@chuhak.com;
rsaldivar@chuhak.com

Gary I. Blackman
Counsel for Michael Tuchman, Levenfeld
Pearlstein, LLC
gblackman@lplegal.com;
slevandowski@lplegal.com;
druiz@lplegal.com

Timothy W. Brink
Counsel for 444 Wabash Partners, LLC
timothy.brink@dlapiper.com;
docketingchicago@dlapiper.com;
william.guthrie@dlapiper.com

William J. Connelly
Peter D. Sullivan
Counsel for Michael Tuchman
wconnelly@hinshawlaw.com
psullivan@hinshawlaw.com

Jonathan M. Cyrluk
Counsel for Trustee, Gus A. Paloian
cyrluk@carpenterlipps.com;
haas@carpenterlipps.com

Jeffrey W. Finke
Counsel for Albany Bank &Trust N.A.
jwfinke@mindspring.com

David Chroust
Counsel for R.G. Construction Services, Inc.
david.chroust@icemiller.com

Michael J. Davis
Joshua D. Green
Counsel for Dvorkin Holdings, LLC
mdavis@archerbay.com;
davislaw80@gmail.com;
jgreene@archerbay.com;
llarson@archerbay.com

David A. Kallick
Counsel for First Nations Bank
dkallick@tishlerandwald.com

Patrick S. Layng
Office of the U.S. Trustee
USTPRegion11.ES.ECF@usdoj.gov

Gina B. Krol
Counsel for: Francine Dvorkin; Beverly
Dvorkin; Aaron Dvorkin
gkrol@cohenandkrol.com;
jhazdra@cohenandkrol.com;
pmchugh@cohenandkrol.com

Emily N. Masalski
Counsel for Centier Bank
masalski@dlec.com; Richards@dlec.com;
shump@dlec.com; emasalski@yahoo.com;
stein@dlec.com

Matthew T. Gensburg
Rebecca D. Rosenthal
Counsel for RiverSource Life Insurance Co.
gensburgm@gtlaw.com;
rosenthalr@gtlaw.com; chidocket@gtlaw.com;
ChiBkyDocket@gtlaw.com;
greenbergc@gtlaw.com;
sullivanka@gtlaw.com

David S. Makarski
Counsel for Ascher Brothers Company, Inc.
david.makarski@sfnr.com;
craig.coleman@sfnr.com;
george.sang@sfnr.com; seth.matus@sfnr.com

Michael J. Gunderson
Counsel for Focus VI, LLC
mgunderson@gundersontharp.com;
lopez@gundersontharp.com

Kevin H. Morse
Counsel for Chapter 7 Trustee Ilene F.
Goldstein
khmorse@arnstein.com

David L. Kane
Counsel for FirstMerit Bank N.A.
dkane@mpslaw.com; dnichols@mpslaw.com;
mpslawllc@gmail.com; jlitwin@mpslaw.com

Lawrence A. Stein
Counsel for Francine Dvorkin, Trustee of
Dvorkin Childrens' Trust; Francine Dvorkin,
Trustee of Francine Dvorkin Revocable Trust;
lstein@huckbouma.com;
lkoster@huckbouma.com

Forrest B. Lammiman
Steven R. Rogovin
Counsel for FirstMerit Bank, N.A.
flammiman@mpslaw.com;
dkane@mpslaw.com; srogovin@mpslaw.com;
dnichols@mpslaw.com;
mpslawllc@gmail.com; jlitwin@mpslaw.com

Jean Soh
Jerry L. Switzer
Counsel for ColFin Bulls Funding A, LLC
jsoh@polsinelli.com
jswitzer@polsinelli.com

David P. Leibowitz
Counsel for Bette Lynn Lavere, Frank Lavere
dleibowitz@lakelaw.com;
czuniga@lakelaw.com; jstorer@lakelaw.com;
ecf@lakelaw.com

Michael L. Tinaglia
Counsel for International Bank of Chicago
mltinaglia@tinaglialaw.com;
jmwretzky@tinaglialaw.com

Colleen E. McManus
Kurt M. Carlson
Counsel for BMO Harris Bank
cmcmanus@carlsondash.com;
kcarlson@carlsondash.com;
knoonan@carlsondash.com;
jbubacz@carlsondash.com

Stephen G. Wolfe
Office of the U.S. Trustee
steve.g.wolfe@usdoj.gov;
jennifer.r.toth@usdoj.gov

Jonathan N. Rogers
Counsel for Bayview Loan Servicing, LLC and
BMO Harris Bank, N.A.
jrogers@skdaglaw.com

William W. Thorsness
Counsel for Asset Liquidators, LLC
wthorsness@vedderprice.com;
ecfdocket@vedderprice.com

- **SERVICE LIST**

## VIA UNITED STATES MAIL

Patrick S. Layng
c/o Stephen G. Wolfe
Office of the U.S. Trustee, Region 11
219 S. Dearborn Street, Room 873
Chicago, IL  60604

Andrew Baumann
Tishler & Wald
200 S. Wacker Drive, Suite 300
Chicago, IL 60606

North Shore Bank
7800 Lincoln Avenue
Skokie, IL  60077

Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

1 Transam Plaza (Oakbrook Terrace) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

1000 N. Halsted LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

1055 W 175th (Homewood) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

1101 Tower Rd (Schaumburg) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Dvorkin Holdings, LLC
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

A-Plus Plumbing, Inc.
733 W. Estes Avenue
Schaumburg, IL  60193

Blue Star Holdings LLC
c/o Michael Tuchman
2 N. LaSalle Street, Suite 1300
Chicago, IL  60602

Dahl & Bonadies, LLC
James E. Dahl
30 N. LaSalle Street, Suite 1500
Chicago, IL  60602

MB Financial Bank, N.A.
Attn:  Mark Kosminskas
6111 N. River Road
Rosemont, IL  60018

McGrath Lexus of Westmont
500 E Ogden Avenue
Westmont, IL  60559-1228

Toyota Motor Credit Corporation (TMCC)
P.O. Box 8026
Cedar Rapids, IA  52408-8026

Dan Air Holdings, L.L.C.
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

11824 S.W. Highway (Palos Heights) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Daniel Dvorkin
1636 Highland Avenue
Lombard, IL  60148

1203 Maple (Lisle), LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Daniel G. Dvorkin Insurance Trust
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

1230 S. Highland (Lombard) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Daniel G. Dvorkin Revocable Trust
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

125-165 W. Dundee Road (Buffalo Grove),
LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Daniel Hyman
Millenium Properties
200 W. Madison Avenue, 36th Floor
Chicago, IL  60606

1275 Davis (Elgin), L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

DDL Property Limited
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

1611 Stewart Street LLC
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL  60602

Debi Kight
DDL Property
One Trans Am Plaza Dr., Suite 120
Oakbrook Terrace, IL  60181

1920 S. Highland (Lombard), L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Department of the Treasury
Internal Revenue Service
P.O. Box  7346
Philadelphia, PA  19101-7346

1941 Selmartin (Aurora), L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

DH-EK Management Corporation
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

2150 N. Clybourn (Chicago) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Dupage Office Leasing, Inc.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL  60602

2200 South Main (Lombard) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

246 E. Janta (Lombard), LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

25210 W. Reed Street (Channahon), LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

328 S. Jefferson (Chicago) SG, L.L.C.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

3330-40 West Dundee (Northbrook) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

444 N. Wabash (Chicago), LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

4949-5001 W. Oakton Residential Financing
(Skokie) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

4949-5001 W. Oakton Retail (Skokie) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

560 West Washington (Chicago), L.L.C.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Dvorkin Children's Trust dated March 5, 1998
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

EIS Kalt LLC
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

Epaminodas Karvelas
Christopher Karvelas
Emersons Street Grill, Inc.
113 S. Emerson
Mt. Prospect, IL  60056

Esther Jackson
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Farnsworth (Aurora) Bisel, L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Farnsworth (Aurora) Lando LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Flossmoor - Plaza DH Holdings, L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Flossmoor Commons (Professional), L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Flossmoor Commons (Retail), L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

606 W. Roosevelt (Chicago), L.L.C.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

6200 N. Rockwell (Chicago) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

640-650 Lake Street, L.L.C.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

920 Roosevelt (West Chicago), L.L.C.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

956 N. Neltnor (West Chicago), L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

975 Nerge (Roselle) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

Aaron Trust
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL 60181

Aaron's Children's Trust
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL 60181

Ariel Weissberg
Weissberg & Associates, Ltd.
401 S. LaSalle St., Suite 403
Chicago, IL 60605

Francine Dvorkin Revocable Trust
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL 60181

Glenwood Residential, L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

Golden Holdings, L.L.C.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Goldfarb Properties, LLC
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL 60181

Greystone Associates, Inc.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Highland Avenue Qualified Personal
Residence Trust
One Trans Am Plaza Drive, Suite 120
Oakbrook Terrace, IL 60181

Inverarry Family Trust
1220 Rudolph Dr., Apt. 2F
Northbrook, IL 60062

Jackie Cullen
1 Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL 60181

Jackson Trust
Esther/Julianne Jackson
4075 W. Bonanza Drive
Beverly Hills, FL 34465

Auto Gallery Chicago, LLC
Peter Alvarez
12 W. Factory Road
Addison, IL  60101

Ambry Estates Joint Venture (Lynwood), LLC
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL  60602

American Equine Insurance Group, LTD.
Michael J. Morrisroe
114 S. Bloomingdale Road
Bloomingdale, IL  60108

Ameriprise Financial Services, Inc.
C T Corporation System
208 S. LaSalle Street, Suite 814
Chicago, IL  60604

Barone & Jenkins, P.C.
Anthony G. Barone
635 Butterfield Rd., Suite 145
Oakbrook Terrace, IL  60181

Barry Milowitz
The Milowitz Office
3 Wyldwood
Tarrytown, NY  10591

Beit Dan, L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Belmont Financial Group, Inc.
Belmont Bank & Trust
BFKPN Corporate Services Inc.
8250 W. Belmont Avenue
Chicago, IL  60634

Beverly Dvorkin
700 W. Grand Avenue, Apt. 5
Chicago, IL  60654-5173

Kinman Enterprises, L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Steve Kling
Colliers International
6250 N. River Road, Suite 11-100
Rosemont, IL  60018

Leah - Beverly Trust
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

Levenfeld Pearlstein
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL  60602

Lynwood DT Investors LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Lynwood Land Company, L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

M. Morgan Trust
23123 N. Cardenas
Sun City W, AZ  85375

Matteson, LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Midland Equities
Charles Hold
One Trans Am Plaza Dr., Suite 310, Oakbrook
Terrace, IL  60181

Beverly Children's Trust
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL 60181

Blue Star Gearing, LLC
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Blue Star Properties, Inc.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Bruce Teitelbaum
Vision Realty
1240 Meadow Road
 Northbrook, IL 60062

BT Holdings, LLC
Rakik Boughadou
1200 Harger Road
Suite 325
Oak Brook, IL 60523

Caryn Kolton
c/o Keith Kolton
2929 W. Balmoral
Chicago, IL 60625

Channahon Plaza, L.L.C.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Chicago Commercial, L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

Nigel and Ellen Rhodes
1980 W. Downer Place
Aurora, IL  60508

North Shore Community Bank & Trust
c/o Robert J. Huguelet Jr., PC
10749 Winterset Drive
Orland Park, IL  60467

Northgate Plaza (Aurora), L.L.C.
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL 60181

Sharyl A. Ross, CPA
Silver, Lerner, Schwartz & Fertel
8707 Skokie Boulevard, Suite 400
Skokie, IL  60077

Oak West (Oakbrook Terrace) Office LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

Oxford Bank & Trust
Attn:  Devon J. Eggert
Freeborn & Peters LLP
311 S. Wacker Drive, Suite 3000
Chicago, IL  60606

Plaza (Arlington Heights) Office LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

Private Bank & Trust Co.
PrivateBank Corp.
James Thompson, Managing Director
The Private Bank and Trust Company
70 W. Madison, Suite 200
Chicago, IL 60602

Craig Golden
Blue Star Properties, Inc.
600 W. Van Buren Street, Suite 1000
Chicago, IL 60607

Craig Yale
2801 Lakeside Drive
Suite 207
Bannockburn, IL  60015

Crown Construction and Development, Inc.
Craig M. White
225 W. Wacker Drive, Suite 2800
Chicago, IL  60606

Star Park LLC
c/o Richard M. Goldwasser
Schoenberg Finkel Newman & Rosenberg
222 S. Riverside Plaza, Suite 2100
Chicago, IL  60606

Schaumburg Bank & Trust Company
c/o Samantha Licker
Garfield & Merel, Ltd.
180 N. Stetson, Suite 1300
Chicago, IL  60601

Dyek-O'Neal, Inc.
P.O. Box 13370
Arlington, TX  76094

Texas 1845 LLC
Michael Mulcaby
Vedder Price P.C.
222 North LaSalle Street, Suite 2600
Chicago, IL  60601

Rachel Dvorkin
1653 Pebblebeach Circle
Elgin, IL 60123

Sterling 18th Street LLC
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Sierra Office Solutions LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

Stoller-Lieberman Holdings
James Stoller
The Building Group
1045 W. Lawrence Avenue
Chicago, IL 60640

Zifco Corporation
Ed Zifkin
56 Skokie Valley Road
Highland Park, IL  60035

David D. O'Sullivan
Springer, Brown, Covey, Gaertner & Davis,
LLC
1755 S. Naperville Road, Suite 200
Wheaton, IL  60189

Chicago Title Land Trust Company as Trustee
for Trusts
C T Corporation System
208 S. LaSalle Street, Suite 814
Chicago, IL 60604
and
Robert Kuzma
10 S. LaSalle, Suite 2750
Chicago, IL 60603

Re:
Land Trust 34383
Land Trust 1636-Y
Land Trust 42470
Land Trust 43314
Land Trust 44203
Land Trust 44204
Land Trust 94-6075
Land Trust 95-6296

Eatman Holdings, L.L.C.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602
and
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

Re:
Chicago Commercial
Cross Creek Office Center
Flossmoor Commons (Professional), L.L.C.
Flossmoor Commons (Retail), L.L.C.
Glen Ellyn Venture Trust 37330
1920 Highland
Matteson
Palos Heights
Selmarten
Trans Am Plaza

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-31336-JBS |
| | ) | |
| **DVORKIN HOLDINGS, LLC,** | ) | Chapter 11 |
| | ) | |
| **Debtor.** | ) | Hon. Jack B. Schmetterer |
| | ) | Hearing Date:  December 18, 2014 |
| | ) | Hearing Time: 10:00 a.m. |

**FIFTH INTERIM APPLICATION FOR COMPENSATION AND REIMBURSEMENT
OF EXPENSES AS  COUNSEL TO CHAPTER 11 TRUSTEE GUS A. PALOIAN FOR
THE PERIOD FROM JULY 1, 2014 THROUGH OCTOBER 31, 2014**

Pursuant to Sections 105(a), 330 and 331 of the United States Bankruptcy Code, 11

U.S.C. §§ 101 through 1330, *as amended* (the "Bankruptcy Code"), Seyfarth Shaw LLP

("Seyfarth"), as counsel to Gus A. Paloian, not individually or personally, but solely in his

capacity as the duly-appointed Chapter 11 trustee (the "Trustee") of the bankruptcy estate (the

"Estate") of the above-captioned debtor (the "Debtor"), hereby submits its Fifth Interim

Application for Compensation and Reimbursement of Expenses (the "Application") for legal

services performed, and expenses incurred, during the period from July 1, 2014 through October

31, 2014 (the "Application Period").  In support of this Application, Seyfarth respectfully

represents, as follows:

## I.  INTRODUCTION

1.        Seyfarth makes this Application pursuant to:  (A) Sections 105(a), 330 and 331 of

the Bankruptcy Code;  (B) Rule 2016 of the Federal Rules of Bankruptcy Procedure (singularly,

a "Rule";  collectively, the "Rules");  (C) certain applicable provisions of the Guidelines for

Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. § 330, adopted by the Office of the United States Trustee (the "Guidelines");  (D) Rule

5082-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern

District of Illinois (the "Court");  (E) that certain Order of the Court entered in the above-captioned case (the "Case") on November 5, 2012, authorizing Seyfarth's retention as counsel to the Trustee retroactive to October 3, 2012;  and (F) other applicable case law.

2.      In making this Application, Seyfarth respectfully seeks an Order of this Court awarding and directing payment from the Estate of:  (1) interim allowance of compensation in the amount of $373,576.00 for professional services rendered by Seyfarth on behalf of the Trustee during the Application Period;  and (2) interim reimbursement of actual and necessary expenses in the amount of $4,563.23 incurred by Seyfarth in rendering such professional services to the Trustee in the Case.  To date, the Trustee has collected **$20,629,533.99**, for the benefit of the Estate, in addition to certain other valuable assets including notes, mortgages, and ownership interests in certain related entities which own real property, and as of October 31, 2014 holds **$18,301,792.69.**

## II.  JURISDICTION

3.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is before the Court pursuant to 28 U.S.C. § 157 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.  Venue of this Case and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(A) and/or (O).

## III.  BACKGROUND

4.      On August  7, 2012, the Debtor initiated this case by filing a voluntary petition for relief under Chapter 11 of the Code and, during the onset of the case, remained in possession and control of its assets and operated its business under §§ 1107 and 1108 of the Code as debtor-in-possession.  Loran Eatman ("Mr. Eatman"), vice president of DH-EK Management Corp., ("DH-EK") signed the petition as the Debtor's authorized individual.

2

5.      On August 17, 2012, the Debtor filed its schedules of assets and liabilities and its statement of financial affairs.  *See* Dkt. No. 11.  Five days after that, the Debtor filed a set of amended schedules and an amended statement of financial affairs.  *See* Dkt. Nos. 20, 21 and 22. According to the amended statement of financial affairs, Francine Dvorkin ("Mrs. Dvorkin") and several Dvorkin family entities own a controlling interest in the Debtor.  Mrs. Dvorkin is married to Daniel Dvorkin ("Mr. Dvorkin").

6.      The Debtor, through its subsidiaries or related entities, is primarily involved in commercial real estate investment and management. The Debtor, through one or more limited liability companies and land trusts, possesses or possessed ownership interests in approximately seventy (70) parcels of real property.  These real properties include developed and undeveloped parcels.  The developed parcels consist of office, retail, industrial, and residential properties in Chicago and the surrounding suburbs.

7.      The Debtor lists ownership interests in more than 40 partnerships and joint ventures, all of which are limited liability companies (the "Nondebtor LLCs") in its amended Schedule B.  The Debtor also discloses beneficial interests in 14 land trusts ("Land Trusts"). According to its amended Schedule H, the Debtor is a codebtor or guarantor of the debt for at least 44 entities, most of which appear to be Non-Debtor LLCs or Land Trusts.

8.      In addition to the Dvorkin family's ownership interests in the Debtor, public records indicate Mrs. Dvorkin occupies a significant management position in DH-EK. According to the Illinois Secretary of State's website, Mrs. Dvorkin is the president of DH-EK, the company which employs Mr. Eatman and is managing member of the Debtor.  The Secretary of State's website also indicates that Mr. Eatman serves as registered agent for both DH-EK and the Debtor.  Upon information and belief, Mr. Dvorkin played a role in managing the Debtor's business affairs prior to the commencement of this case.

9.      Mr. Dvorkin was indicted and convicted in a proceeding pending in the United

States District Court for the Northern District of Illinois for his alleged involvement in a murder

for hire plot.  *See* Case No. 12 CR 00500, *USA V. Dvorkin.*  The alleged intended victim was

involved in a DuPage County lawsuit which resulted in a multimillion dollar judgment against

the Debtor and Mr. Dvorkin in February of 2012.[1]  The Debtor's counsel has represented that

Mrs. Dvorkin terminated Mr. Dvorkin's relationship with the Debtor approximately two weeks

after his arrest, and then put Mr. Eatman in control of the Debtor shortly before the filing of this

case.

10.     On August 24, 2012, the U.S. Trustee filed a Motion to Appoint Chapter 11

Trustee.  *See* Dkt. No. 29.  On August 29, 2012, creditor First Merit Bank, N.A. filed its Motion

to Appoint Chapter 11 Trustee.  *See* Dkt. No. 32.  On October 1, 2012, the Court granted the

U.S. Trustee's Motion to Appoint a Chapter 11 Trustee.  *See* Dkt. No. 80.

11.     On October 3, 2012, The U.S. Trustee filed its Motion for Approval of the

Appointment of Gus A. Paloian as Chapter 11 Trustee. *See* Dkt. No. 83.  On October 16, 2012,

the Bankruptcy Court entered the Order approving the appointment of Gus A. Paloian as Chapter

11 Trustee.  *See* Dkt. No. 96.

12.     On October 18, 2012, the Trustee filed the Application of Chapter 11 Trustee Gus

A. Paloian to Employ Seyfarth Shaw LLP as His Counsel Retroactively (the "Employment

Application").  The terms of Seyfarth's employment are memorialized in the Employment

Application.  *See* Dkt. No. 104.

13.     On November 5, 2012, the Court entered its order authorizing the employment of

Seyfarth to render services to the Trustee that are necessary and beneficial to administering the

Estate (the "Retention Order").  *See* Dkt. No. 122.

---

[1] The list of twenty largest creditors attached to the Debtor's petition includes an entity named Texas 1845 LLC
holding a disputed $8,259,250.00 claim arising from a judgment entered on February 24, 2012.  It appears that the
Debtor may have begun considering relief under the Bankruptcy Code following the entry of that judgment.

14.    On February 15, 2013, the Trustee filed his Amended Application to Clarify

Scope of Employment of Seyfarth Shaw LLP (the "Amended Employment Application"), which

the Court approved on February 28, 2013 (the "Amended Retention Order" and, with the

Retention Order, collectively the "Seyfarth Retention Orders").  *See* Dkt. No. 215.

15.    As more fully set forth in the Amended Employment Application, Seyfarth's

representation of the Trustee and the Estate in their capacity as agent for the various Land Trusts

under powers of direction, the Nondebtor LLCs as manager thereof, and other entities

(collectively referred to as the "Affiliates") owned or controlled, in whole or in part, by the

Estate as disclosed in the amended bankruptcy schedules and statement of financial affairs or as

otherwise indicated by the Trustee has included, but is not limited to the sale of assets, including

real property, owned by such Affiliates; and, will likely include the wind-up of such Affiliates.

16.    Accordingly, Seyfarth has, at least indirectly, represented the Debtor's Affiliates

with respect to the sale of their real property and will continue such representation through wind-

up.  Further, while it may be possible for the Trustee to commence Chapter 11 bankruptcy cases

for, and seek joint administration of, most, or all of the Debtor's Affiliates, the Trustee believes

the above described procedure best maximizes the Debtor's assets for creditors of the Estate.

17.    For the purposes of this Application and future applications, the Trustee, in his

role as agent in conjunction with all efforts to pursue Affiliate real property sales and wind-up

related affairs, shall specifically allocate to each real property, all fees and expenses so

attributable.

18.    In accordance with Section 504(b)(1) of the Bankruptcy Code and Rule 2016,

Seyfarth has received no promises for payment for services rendered or to be rendered in any

capacity whatsoever in connection with the Case, other than specifically provided for in the

Seyfarth Retention Orders.  Additionally, other than as permitted by Section 504(b)(1) of the

Bankruptcy Code and Rule 2016(a), no agreement or understanding exists between Seyfarth and

any other entity for a division of compensation and reimbursement received or to be received for services rendered in or in connection with the Case.

## IV.  SUMMARY OF SERVICES RENDERED, AND EXPENSES INCURRED, BY SEYFARTH

### A.  Overview

19.     This Application is the Fifth Interim application for compensation and expense reimbursement that Seyfarth has filed in this Case.

20.     On June 14, 2013, Seyfarth filed its First Interim Fee Application requesting $676,704.00 for legal services rendered, and reimbursement of expenses in the amount of $25,118.36.  *See* Dkt. No. 287.  On July 8, 2013, the Court awarded Seyfarth fees in the amount of $676,704.00 and reimbursement of expenses in the amount of $25,118.36.  *See* Dkt. No. 305.

21.     On October 2, 2013, Seyfarth filed its Second Interim Fee Application requesting $640,171.50 for legal services rendered, and reimbursement of expenses in the amount of $17,311.98.  *See* Dkt. No. 357.  On October 24, 2013, the Court awarded Seyfarth fees in the amount of $640,171.50 and reimbursement of expenses in the amount of $17,311.98.  *See* Dkt. No. 379.

22.     On April 11, 2014, Seyfarth filed its Third Interim Fee Application requesting $509,734.00 for legal services rendered, and reimbursement of expenses in the amount of $11,503.71.  *See* Dkt. No. 460.  On May 2, 2014, the Court awarded Seyfarth fees in the amount of $509,734.00 and reimbursement of expenses in the amount of $11,503.71.  *See* Dkt. No. 467.

23.     On August 4, 2014, Seyfarth filed its Fourth Interim Fee Application requesting $399,553.50 for legal services rendered, and reimbursement of expenses in the amount of $7,400.65.  *See* Dkt. No. 509.  On September 26, 2014, the Court awarded Seyfarth fees in the amount of $399,553.50 and reimbursement of expenses in the amount of $7,400.65.  *See* Dkt. No. 537.

24.     During the Application Period, Seyfarth has:  (i) provided legal services to the Trustee in the amount of $373,576.00 (the "Fees"), and (ii) advanced costs in the amount of $4,563.23 (the "Expenses") in connection with the legal services that it has provided to the Trustee.

25.     The following table consists of a breakdown of the amount of Fees incurred by each Seyfarth professional, including each such professional's: (i) title, (ii) hourly rate, (iii) total hours expended in providing legal services in the Case, and (iv) the value attributable to such legal services:

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | 2014 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $625.00 | $650.00 | 119.80 | $77,870.00 |
| Jerome F. Buch | Partner | $570.00 | $590.00 | 7.30 | $4,307.00 |
| Jay A. Gitles | Partner | $510.00 | $530.00 | 77.80 | $41,234.00 |
| James B. Sowka | Associate | $405.00 | $430.00 | 67.60 | $29,068.00 |
| Tobi L. Pinsky | Associate | $395.00 | $415.00 | 79.20 | $32,867.50 |
| Roberto Dall'Asta | Associate | $325.00 | $360.00 | 44.60 | $16,056.00 |
| Bret M. Harper | Associate | $305.00 | $330.00 | 258.30 | $85,239.00 |
| Christina Olson | Associate | n/a | $305.00 | 87.40 | $26,657.00 |
| Andrew A. Connor | Paralegal | $280.00 | $295.00 | 50.30 | $14,838.50 |
| Michael L. Whitchurch | Paralegal | n/a | $290.00 | .70 | $203.00 |
| Jennifer M. McManus | Paralegal | $270.00 | $285.00 | 114.90 | $32,746.50 |
| Cathy Jane | Paralegal | $195.00 | $205.00 | 56.60 | $11,603.00 |
| Julie Ziegler | Case Assistant | $90.00 | $100.00 | 6.90 | $690.00 |
| Ryann K. McAndrews | Case Assistant | $80.00 | $85.00 | 2.30 | $196.50 |

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | 2014 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| **TOTAL:** | | | | **973.70** | **$373,576.00** |

26.     Biographies for the attorneys listed above who performed the bulk of the services in this matter (and whose biographies were not previously submitted to the Court as part of the First, Second, Third or Fourth Application [see Dkt. Nos. 305, 379, 460 and 509 at Exhibit 1]) describing their qualifications and areas of expertise are attached hereto as **Exhibit 1**.

27.     During the Application Period, Seyfarth made every reasonable effort to have services that it rendered to the Trustee performed by those qualified professionals charging the lowest hourly rates consistent with the level of service, experience, and efficiency required of a given task.

28.     All of the compensation for which Seyfarth requests allowance and payment, and all of the expenses for which Seyfarth requests reimbursement, in this Application relate to the discharge of Seyfarth services, as requested by the Trustee, during the Application Period.

29.     Seyfarth respectfully submits that its services rendered to the Trustee and expenses incurred during the Application Period have, in all respects, been reasonable, necessary, and beneficial to the Estate, as further discussed herein.

30.     Seyfarth further submits that the total fees sought herein, for services rendered during the Application Period, have been voluntarily reduced in the aggregate amount of $7,498.64.

**B.  Time and Expense Records**

31.     Seyfarth maintains written records of the time expended by its professionals. These time records are maintained:  (i) contemporaneously with the rendition of services by each

8

Seyfarth professional, and (ii) separately from those of the Trustee, in accordance with established procedures within this District.

32.     Such records for the Case, copies of which are grouped and attached hereto as **Exhibit 2**[2] and which are incorporated herein by reference, set forth in detail:  (i) the services which Seyfarth rendered on behalf of the Trustee, (ii) the dates upon which such services were rendered, and (iii) the amount of time spent on the services in one-tenth of one hour increments.

33.      Seyfarth also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with its rendition of services to the Trustee.  A complete listing of the Expenses and the amounts for which reimbursement is sought is attached hereto as **Exhibit 3** and incorporated herein by reference.

## C. <u>Breakdown of Fees by Category of Services Rendered</u>

34.     For the Court's convenience, Seyfarth has categorized its services to the Trustee during the Application Period into seven (7) categories, as follows:  (i) Case Administration;  (ii) Corporate Entity Governance; (iii) Claims Administration and Analysis;  (iv) Investigation of Estate Claims/Adversary Proceedings/Litigation; (v) Sale of Assets; (vi) Affiliate Real Estate Marketing and Sales; and (vii) Fee Applications.

### CASE ADMINISTRATION (21.80  HOURS VALUED AT $10,447.50 )

35.      During the Application Period, Seyfarth performed 21.80 hours of services having a value of $10,447.50 on behalf of the Trustee on matters related to case administration including:

> A.     Preparation for and appearing in Court for hearings on certain claim
>
> resolution motions, the Fourth Fee Application and related supplement,

---

[2] Services related to the marketing and sale of the real property at  3325 W. Vollmer Rd. and 19850-70 Kedzie Ave., Flossmoor, IL; 3301 - 47 W. Vollmer Rd., Flossmoor, IL; 4949 - 5001 W. Oakton Street, Skokie, IL; 801 - 49 E. Roosevelt Rd., Lombard, IL; and 620 E. 22nd St. and 2170 S. Vista St., Lombard, IL; respectively, are assigned to the Affiliate Real Estate Marketing and Sales category, and the related time records are attached as Exhibit 2.1.

and other matters including, but not limited to, settlement motions, properties set for sale and chapter 11 plan status hearings;

B.    Conferences, teleconferences, and/or correspondence regarding assets and liabilities of the Estate, generally;

C.    Review and analysis of Estate books, records and various corporate and financial documentation recovered from the Debtor in order to determine veracity of same;

D.    Preparing and filing Debtor's monthly operating reports;

E.    Review of  Belmont Bank financial statements regarding conversion of debenture to common stock, preparation of analysis re same and communications with Belmont Bank regarding same and the negotiation of related proposed indemnity agreement;

F.    Communication with Insiders and Trustee's Accountant regarding tax issues of Debtor and related entities and treatment of Estate recoveries; and

G.    Performing general ministerial tasks necessary for effective case administration including, but not limited to attention to pending adversary proceedings and communication with creditors regarding potential distribution.

36.    A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | 2014 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $625.00 | $650.00 | 7.50 | $4,875.00 |
| James B. Sowka | Associate | $405.00 | $430.00 | 10.20 | $4,386.00 |

10

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | 2014 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Andrew A. Connor | Paralegal | $280.00 | $295.00 | 1.80 | $531.00 |
| Jennifer McManus | Paralegal | $270.00 | $285.00 | 2.30 | $655.50 |
| **TOTAL:** | | | | **21.80** | **$10,447.50** |

### CORPORATE ENTITY GOVERNANCE (13.60 HOURS VALUED AT $4,083.00)

37.     During the Application Period, Seyfarth performed 13.60 hours of services having a value of $4,083.00 on behalf of the Trustee on matters related to corporate entity governance including:

A.     Administration of affiliates, real property interests and attention to corporate governance matters:

Seyfarth and the Trustee oversee and administer the Estate's interests in numerous limited liability companies ("LLCs") and land trusts ("Trusts") that hold title to the real properties which are the Estate's primary assets and source of liabilities.  In order to properly oversee the LLCs and Land Trusts, Seyfarth and the Trustee have been involved in corporate management, real property management, and real property sales related to approximately 70 LLCs and Trusts, as well as any changes in ownership.  Seyfarth and the Trustee must also prepare and file annual reports with the Illinois Secretary of State for the LLCs.  Given the evolving status of the numerous LLCs and Trusts, Seyfarth and the Trustee must also keep accurate, centralized records in order to efficiently administer the Estate.

This includes the preparation and processing of documentation for changes in LLC and Land Trust management such as changes in LLC managers or the holder of power of direction for the Land Trusts, necessary to permit the Trustee to effectuate real property sales.  At times, this requires discreet research and review of the file or state records to reconcile incomplete

and/or conflicting information in the Debtor's records concerning ownership and other management/control issues. Below is a brief summary identifying the LLCs, Trusts and properties subject to such services during the Application Period along with a brief description of such services.

Flossmoor Commons (Professional), L.L.C./ Flossmoor-Plaza DH Holdings, L.L.C. - 3235 W. Vollmer Road and 19850 - 70 Kedzie Avenue, Flossmoor, IL 60422: Seyfarth attorneys and professionals investigated the Estate's interests in the ownership of the Vollmer Road property and management to determine the Estate's interests in the real property in light of a prior merger of LLCs. This was done in preparation for the sale of the related real property and involved the review of authority documentation and Illinois Secretary of State records.

Goldfarb Properties, LLC/Land Trust Nos. 43314, 42470 and 801- 49 East Roosevelt Road, Lombard, IL 60148: Seyfarth attorneys and professionals undertook the preparation and processing of relevant documentation amending power of direction for Trust 42470. Seyfarth attorneys and professionals also reviewed documentation in order to confirm the status of power of direction for Trust 43314 so that the sale of real property at 801-49 East Roosevelt Road could be consummated, pursuant to the settlement agreement between the Trustee and certain Dvorkin Individuals.

 Kinman Enterprises, LLC/620 East 22nd Street and 2170 S. Vista St., Lombard, IL 60148: Seyfarth attorneys and professionals conducted research as to whether it was necessary to change the management of Kinman Enterprises, LLC in order to sell the underlying real property.

4949 - 5001 W Oakton Retail (Skokie), LLC/4949-5001 West Oakton Avenue, Skokie, IL 60077: Seyfarth professionals prepared documents to change the LLC manager in order to list the property for sale.

12

38.     A breakdown of the professionals providing services in this category is as

follows:

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | 2014 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $625.00 | $650.00 | .20 | $130.00 |
| James B. Sowka | Associate | $405.00 | $430.00 | .20 | $86.00 |
| Bret M. Harper | Associate | $305.00 | $330.00 | .30 | $99.00 |
| Andrew A. Connor | Paralegal | $280.00 | $295.00 | 11.20 | $3,304.00 |
| Michael L. Whitchurch | Paralegal | n/a | $290.00 | .70 | $203.00 |
| Jennifer McManus | Paralegal | $270.00 | $285.00 | .70 | $199.50 |
| Cathy Jane | Paralegal | $195.00 | $205.00 | .30 | 61.50 |
| **TOTAL:** | | | | **13.60** | **$4,083.00** |

### CLAIMS ADMINISTRATION AND ANALYSIS (92.10 HOURS VALUED AT $34,246.50)

39.     During the Application Period, Seyfarth performed 92.10 hours of services having

a value of $34,246.50 on behalf of the Trustee on matters related to claims administration and

analysis, including:

A.     Conducting claims review and analysis.  Twenty-Nine claims have been filed in

the Case with a gross value of $64,966,667.88.  As of October 31, 2014, the gross value

of claims has been reduced to $40,048,353.83 with an estimated gross value of claims of

$19,793,002.71.  During the Application Period, Seyfarth negotiated (a) the reduction of

the amount of Claim No. 20 and (b) a fixed amount for Claim No. 28.  In addition, there

are seven (7) claims that (a) are subject to settlement and/or further review for allowance

or reduction of  amount, or (b) required post-settlement follow up.  A breakdown of the

claims reviewed, analyzed and/or resolved and the services performed relating to each

claim during the Application Period is set forth below.

| Claim No. | Creditor | Claim Amount | Claim Priority | Allowed | Services Performed - Claim Status/Resolution |
|---|---|---|---|---|---|
| 2a | Schaumburg Bank & Trust Company | $136,684.10 | Unsecured | $136,684.10 | Conduct follow up work in connection with settlement |
| 9 | ASM Capital IV, L.P. | $5,582,520.29 | Unsecured | TBD | Negotiations and discovery in process, preparation of related pleadings - claim amount to be reduced through sale of real property owned by LLC(s) and/or Trust(s) which Debtor pledged as collateral for loan(s) from Claimant |
| 12 | FirstMerit Bank, N.A. | $15,693,038.21 | Unsecured | TBD | Review of claim reduction through property sale - claim amount to be reduced through sale of real property owned by LLC(s) and/or Trust(s) which Debtor pledged as collateral for loan(s) from Claimant |
| 13 | BMO Harris Bank, N.A. | $3,793,265.24 | Secured | TBD | Negotiations and preparation of settlement pleadings filed on 09/02/14 (Dkt 517) - claim amount to be reduced through payment from funds from sale of real property in which Claimant held a security interest - Order entered on 09/26/14 (Dkt 538) |
| 14 | Colfin Bulls Funding A, LLC | $3,504,767.25 | Secured | TBD | Negotiations and preparation of settlement pleadings occurred prior to the Application Period - claim amount to be reduced through payment from funds from sale of real property in which Claimant held a security interest - Order entered on 07/01/14 (Dkt 496) |
| 17 | First Nations Bank | $2,507,562.97 | Unsecured | TBD | Review of claim and communications with claimant regarding potential reduction of amount. |

14

| Claim No. | Creditor | Claim Amount | Claim Priority | Allowed | Services Performed - Claim Status/Resolution |
|---|---|---|---|---|---|
| 20 | Eatman Holdings, LLC | $22,500.00 | Unsecured | $2,500.00 | Negotiations and preparation of pleadings with respect to reducing claim filed on 09/05/14 (Dkt 521) - Order reducing claim amount entered on 09/26/14 (Dkt. 535) |
| 25 | Frank and Bette Lynn LaVere | $228,000.00 | Unsecured | TBD | Review of claim and communications with claimant regarding potential reduction of amount, prepare draft pleadings. |
| 28 | Daniel J. Hyman | Unknown | Unsecured | $16,875.00 | Negotiations and preparation of pleadings with respect to fixing claim amount filed on 09/05/14 (Dkt 522) - Order fixing claim amount entered on 09/26/14 (Dkt.534) |

B.      Numerous conferences and communications with claimants regarding potential reduction of amounts to Claim Nos. 17 and 25;

C.      Preparing and filing claims objections and agreed motions to reduce, reclassify or amend Claim Nos. 20 and 28;

D.      Negotiating settlement of Trustee objections to Claim No. 13; and

E.      Negotiations, discovery and preparation of related pleadings with respect to Claim No. 9.

41.      A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | 2014 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $625.00 | $650.00 | 12.40 | $8,060.00 |
| James B. Sowka | Associate | $405.00 | $430.00 | 4.20 | $1,806.00 |

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | 2014 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Bret M. Harper | Associate | $305.00 | $330.00 | 64.00 | $21,120.00 |
| Andrew A. Connor | Paralegal | $280.00 | $295.00 | 2.00 | $590.00 |
| Jennifer M. McManus | Paralegal | $270.00 | $285.00 | 9.30 | $2,650.50 |
| Julie Ziegler | Case Assistant | $90.00 | $100.00 | .20 | $20.00 |
| TOTAL: | | | | 92.10 | $34,246.50 |

### INVESTIGATION OF ESTATE CLAIMS/ADVERSARY PROCEEDINGS/LITIGATION (232.10 HOURS VALUED AT $89,692.50)

42.    During the Application Period, Seyfarth performed 232.10 hours of services having a value of $89,692.50 on behalf of the Trustee on matters related to investigation of Estate claims and adversary proceedings and litigation.  The work performed by Seyfarth professionals in this category is primarily comprised of  the following

A.    Negotiation, preparation, and filing of settlement agreements with the Discovery Targets and bank creditors and motions to approve same:

Colfin - During the Application Period the Trustee prepared for the hearing on the Settlement Agreement with, among others, ColFin Bulls Funding A, LLC, which was negotiated and consummated prior to the Application Period.  The Settlement Motion was approved by the Court on July 1, 2014.

MB Financial - During the Application Period the Trustee prepared for the hearing on the Settlement Agreement with, among others, Settlement Agreement with MB Financial Bank, N.A., which was negotiated and consummated prior to the Application Period.  The Settlement Motion was approved by the Court on July 1, 2014.

16

Craig Golden - Seyfarth professionals negotiated a settlement and prepared related settlement documentation with Craig Golden who, through certain of his entities, co-owns certain limited liability companies with Debtor and others.  As a result of the settlement, the Estate will receive a total settlement amount of $8,250,000.00.  An initial non-refundable payment of $412,500.00 has been received by the Estate.  Through the settlement, the Estate also obtains the ability to market and sell property located at 1000 N. Halsted, Chicago, Illinois (the "Halsted Property") resulting in a benefit to the Estate of fifty percent (50%) of the sale proceeds.   The sale of the Halsted Property is currently in progress.

BMO Harris Bank - During the Application Period, Seyfarth professionals assisted the Trustee and special counsel in settlement negotiations and preparation of related settlement documentation with BMO Harris Bank in connection the Bank's secured proof claim in the amount of $3,793,265.24.

Auto Gallery - Seyfarth professionals conducted preliminary investigations regarding potential avoidance actions.

Asset Liquidators - Seyfarth professionals conducted preliminary investigations regarding potential avoidance actions, prepared related complaint and filed same commencing avoidance action.

Levenfeld Pearlstein - Seyfarth professionals worked with Trustee's special counsel to investigate, negotiate and settle a damages claim against Levenfeld Pearlstein.

444 North Wabash - Seyfarth professionals assisted the Trustee in settling the mechanic's lien claim of A-Plus Plumbing in connection with the sale of the 444 North Wabash property.

Albany Bank and ASM Capital - During the Application Period, Seyfarth documents produced by Albany and investigated claim reduction arising from collateral liquidation.

BT Holdings - Seyfarth professionals negotiated a settlement and prepared related settlement documentation with the Trustee of the bankruptcy estate of Bruce Teitelbaum

17

regarding the disputed claims of BT Holdings which, co-owns certain limited liability companies

with Debtor and others.

42. A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | 2014 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $625.00 | $650.00 | 29.60 | $19,240.00 |
| Jerome F. Buch | Partner | $570.00 | $590.00 | 7.30 | $4,307.00 |
| James B. Sowka | Associate | $405.00 | $430.00 | 20.30 | $8,729.00 |
| Bret M. Harper | Associate | $305.00 | $330.00 | 166.80 | $55,044.00 |
| Andrew A. Connor | Paralegal | $280.00 | $295.00 | 6.40 | $1,888.00 |
| Jennifer M. McManus | Paralegal | $270.00 | $285.00 | 1.70 | $484.50 |
| TOTAL: | | | | **232.10** | **$89,692.50** |

### SALE OF ASSETS (178.00 HOURS VALUED AT $82,558.00)

43.     During the Application Period, Seyfarth performed 178.00 hours of services

having a value of 82,558.00 on behalf of the Trustee for the Estate on matters related to the sale

of assets owned or controlled directly by the bankruptcy estate, including:

A.     Conferences, teleconferences, and/or correspondence regarding strategizing and

negotiating potential Affiliate real property sales process:

Includes preparation of Purchase and Sale Agreements for  4949-5001 W. Oakton Street,

Skokie, IL, and 801-849 W. Roosevelt Road, West Chicago, IL,  and preparation and filing of

Sixth , Seventh and Eighth Notices of Trustee's Intent to List Additional Properties for Sale

listing the following properties:

> 2200 S. Main Street, Lombard, IL
> 975 Nerge Road, Roselle, IL
> 920-962 W. Roosevelt Road, West Chicago, IL

1000 N. Halsted Street, Chicago, IL

B.   Communications with prospective buyers regarding purchase offers, sales

mechanics and potential issues and impediments related to marketing and sale of affiliates' real

property for the following properties:

> 1611 Stewart, Chicago, IL
> 975 Nerge Road, Roselle, IL
> 890-8 E. Roosevelt Road, Lombard, IL
> 1203-1231 W Maple Ave, Lisle, IL
> 1000 N. Halsted Street, Chicago, IL

C.   Preparation, filing and presentation of sale motions for the following properties:

| Properties | Sale Price |
|---|---|
| 4949-5001 W. Oakton Street, Skokie, IL | $  650,000.00 |
| 801-849 W. Roosevelt Road, West Chicago, IL | $2,230,000.00 |

44.   A breakdown of the professionals providing services in this category is as

follows:

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | 2014 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $625.00 | $650.00 | 65.70 | $42,705.00 |
| Jay A. Gitles | Partner | $510.00 | $530.00 | 7.20 | $3,816.00 |
| James B. Sowka | Associate | $405.00 | $430.00 | 28.20 | $12,126.00 |
| Tobi L. Pinsky | Associate | $395.00 | $415.00 | 8.20 | $3,403.00 |
| Roberto Dall'Asta | Associate | $325.00 | $360.00 | .50 | $180.00 |
| Bret M. Harper | Associate | $305.00 | $330.00 | 27.20 | $8,976.00 |
| Christina Olson | Associate | n/a | $305.00 | 4.60 | $1,403.00 |
| Andrew A. Connor | Paralegal | $280.00 | $295.00 | 2.40 | $708.00 |
| Jennifer M. McManus | Paralegal | $270.00 | $285.00 | 29.70 | $8,464.50 |
| Cathy Jane | Paralegal | $195.00 | $205.00 | 3.30 | $676.50 |

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | 2014 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Julie Ziegler | Case Assistant | $90.00 | $100.00 | 1.00 | $100.00 |
| **TOTAL:** | | | | **178.00** | **$82,558.00** |

## Affiliate Real Estate Marketing and Sales (324.10 hours valued at $119,160.00)

45.     For the purposes of the Application the Trustee, in his role as agent in conjunction with all efforts to pursue affiliate real property sales and wind-up related affairs, has specifically allocated to each real property closing, all fees and expenses so attributable.

46.     During the Application Period, Seyfarth performed 324.10 hours of services having a value of $119,160.00[3] on behalf of the Trustee as manager of the selling LLC entity with respect to the real estate closings for: 3325 W. Vollmer Rd. and 19850-70 Kedzie Ave., Flossmoor, IL; 3301 - 47 W. Vollmer Rd., Flossmoor, IL; 4949 - 5001 W. Oakton Street, Skokie, IL; 801 - 49 E. Roosevelt Rd., Lombard, IL; and 620 E. 22nd St. and 2170 S. Vista St., Lombard, IL, including:

A.     Coordinating the negotiation, marketing and sale of five (5) of the affiliates' real properties:

---

[3] Fees held in escrow from sale closings and are thus paid from non-debtor funds.

A breakdown of the sale proceeds for the sale of each property sold during the

Application Period is as follows:

| Property | Purchase Price | Net Proceeds to Estate |
|---|---|---|
| 3325 W. Vollmer Rd. and 19850-70 Kedzie Ave., Flossmoor, IL | $1,325,000.00 | N/A |
| 3301 - 47 W. Vollmer Rd., Flossmoor, IL | $3,295,000.00 | N/A |
| 4949 - 5001 W. Oakton Street, Skokie, IL | $650,000.00 | $37,485.28 |
| 801 - 49 E. Roosevelt Rd., Lombard, IL | $2,230,000.00 | $747,738.99 |
| 620 E. 22nd St. and 2170 S. Vista St., Lombard, IL | $135,000.00 | N/A |

Included in completing the sale of each of the properties are the following tasks:

B.     Research and analysis of title commitment and property valuation;

C.     Preparation of sales contract and related closing documents necessary to

effectuate sale; and

D.     Preparation of closing documents and attending closing.

47.     A breakdown of the professionals providing services related to the marketing and

sale of 3325 W. Vollmer Rd. and 19850-70 Kedzie Ave., Flossmoor, IL; 3301 - 47 W. Vollmer

Rd., Flossmoor, IL; 4949 - 5001 W. Oakton Street, Skokie, IL; 801 - 49 E. Roosevelt Rd.,

Lombard, IL; and 620 E. 22nd St. and 2170 S. Vista St., Lombard, IL is as follows:

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | 2014 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Jay A. Gitles | Partner | $510.00 | $530.00 | 70.60 | $37,418.00 |
| James B. Sowka | Associate | $405.00 | $430.00 | .20 | $86.00 |
| Tobi L. Pinsky | Associate | $395.00 | $415.00 | 71.00 | $29,464.50 |
| Roberto Dall'Asta | Associate | $325.00 | $360.00 | 44.10 | $15,876.00 |
| Christina Olson | Associate | n/a | $305.00 | 82.90 | $25,254.00 |

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | 2014 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Cathy Jane | Paralegal | $195.00 | $205.00 | 53.00 | $10,865.00 |
| Ryann McAndrews | Case Assistant | $80.00 | $85.00 | 2.30 | $196.50 |
| **TOTAL:** | | | | **324.10** | **$119,160.00** |

### FEE APPLICATIONS (112.10 HOURS VALUED AT $33,388.50)

48.    During the Application Period, Seyfarth performed 112.10 hours of services worth a value of $33,388.50 in preparing its Fourth Interim Fee Application, the related Supplement to its Fourth Interim Fee Application and its Fifth Interim Fee Application.

49.    In this Application, Seyfarth spent 35.20 hours for a total of $10,208.00 in connection with preparing, reviewing and revising its Fourth Interim Fee Application. Based upon the total fees requested herein, the value of time recorded for the preparation of Seyfarth's Fourth Interim Fee Application represents less than 2.60 percent (2.60%) of the total fees sought for services rendered during the Application Period.

50.    Based upon the total fees requested in Seyfarth's Fourth Interim Fee Application, the value of time recorded for the preparation of that fee application represents less than 3.95 percent (3.95%) of the total fees requested therein.

51.    Seyfarth spent 41.10 hours for a total of $11,342.50 in connection with preparing, reviewing and revising this Application. Based upon the total fees requested herein, the value of time recorded for the preparation of Seyfarth's Fifth Interim Fee Application represents 3 percent (3%) of the total fees sought for services rendered during the Application Period.

52.    A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | 2014 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $570.00 | $650.00 | 4.40 | $2,860.00 |
| James B. Sowka | Associate | $405.00 | $430.00 | 4.30 | $1,849.00 |
| Andrew A. Connor | Paralegal | $280.00 | $295.00 | 26.50 | $7,817.50 |
| Jennifer McManus | Paralegal | $270.00 | $285.00 | 71.20 | $20,292.00 |
| Julie Ziegler | Case Assistant | $90.00 | $100.00 | 5.70 | $570.00 |
| **TOTAL:** | | | | **112.10** | **$33,388.50** |

### D.  Incurred Expenses

53.     As set forth in attached **Exhibit 3**, Seyfarth advanced $4,563.23 in Expenses on behalf of the Estate during the Application Period.

54.     A portion of the Expenses consists of in-house photocopying charges, which Seyfarth has voluntarily reduced to $0.10 per page.

55.     Additionally, Seyfarth advanced out-of-pocket expenses on behalf of the Estate for online legal research conducted through [LEXIS and WESTLAW].  The charges for these expenses are *actual and at cost*.

56.     In this respect, there is no mark-up of the online legal research charges and no profit derived by Seyfarth from them.  Seyfarth ordinarily and customarily passes its discount on such services *through to the client*—in this instance, the Estate—billing the client only what Seyfarth is actually charged for use of the online resources.

57.     The expenses for which Seyfarth seeks reimbursement are representative and typical of the types of expenses that Seyfarth ordinarily and customarily charges its non-bankruptcy clients.  Such expenses are neither taken into consideration in determining, nor built as "overhead" into, Seyfarth's hourly rates.

23

58.     Instead, Seyfarth generally adheres to the so-called "user fee" billing system for out-of-pocket expenses—that is, Seyfarth charges expenses to the particular clients who use them, in this instance the Estate at cost.

59.     During this Application Period, Seyfarth voluntarily reduced its expenses by $1,834.70.

## V.  **RELIEF REQUESTED**

60.     Seyfarth respectfully requests that the Court:  (i) allow and award it on an interim basis (1) the Fees, consisting of $373,576.00 for legal services rendered to the Trustee, and (2) the Expenses, in the amount of $4,563.23, incurred in relation to such services (collectively, the "Requested Fees and Expenses");  and (ii) authorize and direct the Trustee to make prompt payment of the Requested Fees and Expenses to Seyfarth from the Estate.

61.     A proposed order providing for the requested relief is attached hereto for the Court's consideration.

## VI.  **BASIS FOR THE REQUESTED RELIEF**

### A.  **Compensation Standards**

62.     Pursuant to Section 331 of the Bankruptcy Code, a professional person employed under Section 327 may generally apply for interim compensation from a bankruptcy court.  See 11 U.S.C. § 331.  Under Section 330(a)(1)(A), the Court may then award the professional person "reasonable compensation for actual, necessary services rendered[.]" 11 U.S.C. § 330(a)(1)(A).

63.     In determining the "extent and value of compensation," this Court has endorsed and applied the "'lodestar' approach—multiplying the number of actual and necessary hours reasonably expended by a reasonable hourly rate[.]" In re Wildman, 72 B.R. 700, 712 (Bankr. N.D. Ill. 1987) (Schmetterer, J.);  accord In re UNR Indus., Inc., 986 F.2d 207, 210-11 (7th Cir. 1993) (lodestar approach provides fair compensation under Section 330);  see also City of Burlington v. Dague, 505 U.S. 557, 562, 112 S. Ct. 2638, 2641, 120 L. Ed. 2d 449 (1992) ("The

24

'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting

jurisprudence.  We have established a 'strong presumption' that the lodestar represents the

'reasonable' fee[.]").

64.     To arrive at an attorney's reasonable hourly rate, the Seventh Circuit has

"emphasize[d] that section 330 . . . *requires* lawyers in bankruptcy matters to receive the same

compensation as they would earn in performing similar services outside the context of

bankruptcy."[4]  *In re* UNR Indus., Inc., 986 F.2d at 210 (emphasis added).  The statutory aim is

twofold:  (A) "that attorneys be reasonably compensated," and (B) "that future attorneys not be

deterred from taking bankruptcy cases due to a failure to pay adequate compensation."  UNR

Indus., Inc., supra;  see also *In re* Farley, Inc., 156 B.R. at 210 ("The purpose of § 330 was to

encourage bankruptcy practitioners not to leave the field in favor of more lucrative areas of the

law.") (citing legislative history to Section 330).

65.     As a cornerstone of this market rate approach, the Seventh Circuit has repeatedly

"stressed that the best measure of the cost of an attorney's time is what that attorney could earn

from paying clients"—that is, the attorney's "standard hourly rate."  Gusman v. Unisys Corp.,

986 F.2d 1146, 1150 (7th Cir. 1993);  see Small v. Richard Wolf Med. Instruments Corp., 264

F.3d 702, 707 (7th Cir. 2001) ("The attorney is entitled to his market rate and not some

'medieval just price' determined by the court.") (quoting Steinlauf v. Continental Ill. Corp. (*In re*

Continental Ill. Sec. Litig.), 962 F.2d 566, 568 (7th Cir. 1992)).

66.     Therefore, the Seventh Circuit has mandated that an "attorney's actual billing rate

. . . is considered to be the presumptive market rate."  Small, 264 F.3d at 707.  Moreover, "[t]he

lawyer's regular rate is *strongly presumed* to be the market rate for his or her services."  Moriarty

---

[4] "In section 330 and its legislative history Congress expressed its intent that compensation in bankruptcy
matters be commensurate with the fees awarded for comparable services in non-bankruptcy cases."  In re
UNR Indus., Inc., 986 F.2d at 208-09;  see In re Farley, Inc., 156 B.R. 203, 210 (Bankr. N.D. Ill. 1993)
(Schmetterer, J.) (quoting same).

v. Svec, 233 F.3d 955, 965 (7th Cir. 2000) (emphasis added), cert. denied, 532 U.S. 1066, 121 S.

Ct. 2216, 150 L. Ed. 2d 209 (2001);  see Moriarty v. Svec, 429 F.3d 710, 718 (7th Cir. 2005)

(quoting same);  see also Central States, S.E. & S.W. Areas Pension Fund v. Central Cartage Co.,

76 F.3d 114, 116 (7th Cir.) ("[A] lawyer's regular hourly fee, one counsel would charge 'to the

meanest villain', *is* the market rate for that lawyer's services.") (emphasis added and quoting

Barrow v. Falck, 977 F.2d 1100, 1106 (7th Cir. 1992)), cert. denied sub nom. Mason & Dixon

Lines v. Central States, S.E. & S.W. Areas Pension Fund, 519 U.S. 811, 117 S. Ct. 56, 136 L.

Ed. 2d 19 (1996).

67.    Under this principle, "lawyers who fetch above-average rates are presumptively

entitled to them, rather than to some rate devised by the court."  Gusman, 986 F.2d at 1150;

accord *In re* Spanjer Bros., Inc., 191 B.R. 738, 755 (Bankr. N.D. Ill. 1996) (Squires, J.)

("Generally, so long as the rates being charged are the applicant's normal rates charged in

bankruptcy and non-bankruptcy matters alike, they will be afforded a presumption of

reasonableness.").

68.    "Only if an attorney is unable to provide evidence of her actual billing rates

should a [ ] court look to other evidence, including 'rates similar experienced attorneys in the

community charge paying clients for similar work.'"  Mathur v. Board of Trs. of S. Ill. Univ.,

317 F.3d 738, 743 (7th Cir. 2003) (quoting Spegon v. Catholic Bishop of Chicago, 175 F.3d 544,

555 (7th Cir. 1999));  see also Gusman, 986 F.2d at 1151 ("the ability to identify a different

average rate in the community" is an impermissible reason to depart from an attorney's billing

rate).

69.    Accordingly, because Seyfarth bills the vast majority of its time at a set rate for

paying clients and spends only a very small percentage of time on cases covered by fee-shifting

statutes, "there is a strong presumption that such counsel could have billed out remaining time at

the rate normally charged."  *In re* Farley, Inc., 156 B.R. at 211.

70.     Additionally, under generally accepted standards, if the services of an attorney employed under Section 327 are reasonably likely to benefit a debtor's estate, they should be compensable.  See Andrews & Kurth L.L.P. v. Family Snacks, Inc. (In re Pro-Snax Distributors, Inc.),157 F.3d 414, 421 (5th Cir. 1998); In re Ames Dep't Stores, Inc., 76 F.3d 66, 71 (2d Cir. 1996);  2 Lawrence P. King, Collier on Bankruptcy ¶ 330.04 at 330-43 (15th ed. rev. 1999);  cf. 11 U.S.C. § 330(a)(4)(A)(ii)(I).  In this same context, "[n]ecessary services are those that aid the professional's client in fulfilling its duties under the Code."  In re Ben Franklin Retail Store, Inc., 227 B.R. 268, 270 (Bankr. N.D. Ill. 1998) (Barliant, J.).

71.     Thus, the determination of benefit to the Estate is not constrained to a dollar-for-dollar measurement, such that each dollar's worth of legal services must bring a cash dollar into the Estate in order to justify equivalent compensation to counsel.  See In re Lifschultz Fast Freight, Inc., 140 B.R. 482, 488 (Bankr. N.D. Ill. 1992) (Barliant, J.) ("Necessary services have always included services that aid in the administration of the case and help the client fulfill duties under bankruptcy law, whether or not those services result in a monetary benefit to the estate."); accord In re Rite Way Reproductions, Inc., 1998 Bankr. LEXIS 1080, at *6-*7 (Bankr. N.D. Ill. Aug. 27, 1998) (Squires, J.) (concurring and further observing that "factors other than the economic impact on the estate of actions taken should be considered in the 'benefit to the estate' analysis"); In re Caribou P'ship III, 152 B.R. 733, 742 (Bankr. N.D. Ind. 1993) (same); see, e.g., Ben Franklin Retail Store, Inc., supra ("[A] trustee (or interim trustee) performs necessary services when he carries out the duties set forth in § 704 of the Code."); JMP-Newcor Int'l, Inc. v. Seyfarth, Shaw, Fairweather & Geraldson (In re JMP-Newcor Int'l, Inc.), 1998 U.S. Dist. LEXIS 987, at *13 (N.D. Ill. Jan. 23, 1998) (affirming bankruptcy court's award of fees to firm for advising committee in reasonable way and in good faith despite lack of direct monetary benefit to debtor and estate).

27

72.     Instead, other factors, such as "whether the services rendered promoted the bankruptcy process or administration of the estate in accordance with the practice and procedures provided under the Bankruptcy Code and Rules for the orderly and prompt disposition of bankruptcy case and related adversary proceedings," also support awards of compensation. *In re Spanjer Bros., Inc.*, 191 B.R. at 748.

73.     As previously stated, the legal services for which Seyfarth requests allowance and payment of compensation relate to the Application Period, and were rendered in connection with the Case and in the discharge of Seyfarth's professional responsibilities as counsel to the Trustee during that time.

74.     Seyfarth respectfully submits that such legal services have, in all respects, been reasonable, necessary, and beneficial to the Estate.  In this connection, these services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the matters which they concerned.

75.     Further, they promoted the bankruptcy process and the administration of the Estate and supported the Trustee in fulfilling his statutory duties, all in accordance with the Bankruptcy Code and Rules.

76.     For purposes of this Application, Seyfarth has computed the Fees on the basis of its discounted hourly rates applicable to the performance of bankruptcy legal services unrelated to the Case at the time that such services were rendered.

77.     Seyfarth's average hourly billing rate for its attorneys—that is, its "lodestar" rate—during the Application Period was $422.24.

78.     During the Application Period, Seyfarth's discounted hourly billing rates for professionals providing services in the Case ranged from:  (A) $305.00 to $650.00 for attorneys, and (B) $85.00 to $295.00 for paralegals or para-professionals.  Based upon all of the foregoing,

28

Seyfarth respectfully submits that the fair and reasonable value of the legal services that it

rendered during the Application Period is $373,576.00.

79.     In all these respects, the compensation which Seyfarth has requested herein is

reasonable based upon the customary compensation charged by comparably-skilled practitioners

in either non-bankruptcy or bankruptcy cases.

80.     Moreover, it is less than the fees which Seyfarth would have received for

providing legal services to its non-bankruptcy clients, and thus represents even less than its lost

opportunity costs for such non-bankruptcy services because Seyfarth's acceptance of

employment by the Trustee in the Case precluded such employment.

81.     In rendering legal services to the Trustee, and in making this Application,

Seyfarth respectfully submits that it has exercised its good faith billing judgment, and has not

sought compensation for "excessive, redundant, or otherwise unnecessary" time.  Hensley v.

Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40, 76 L. Ed. 2d 40 (1983).

82.     Finally, and with respect to whether Seyfarth has demonstrated skill and

experience in the bankruptcy field pursuant to 11 U.S.C. § 330(a)(3)(E) (2006), Seyfarth has

attached its Attorney Biographical Information as Exhibit 1.  The Attorney Biographical

Information sets forth the qualifications of the Seyfarth attorneys listed herein, including their

demonstrated skill and experience in the bankruptcy field, both in the local Chicago market and

in representation of clients in matters nationwide.

**B.  Expense Reimbursement Standards**

83.      With respect to reimbursing expenses, the Court may award a professional person

"reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1)(B).

84.     "An expense is necessary if it was incurred because it was required to accomplish

the proper representation of the client."  In re Spanjer Bros., Inc., 191 B.R. at 749;  see In re

Wildman, 72 B.R. at 731.

29

85.     In this connection, Seyfarth has requested reimbursement only for actual and necessary expenses incurred on the Trustee's behalf.  Seyfarth respectfully submits that these expenses were incurred because they were required to accomplish the proper representation of the Trustee and the furtherance of the Estate's interests in the Case.  As previously indicated, Seyfarth voluntarily reduced and limited its costs for photocopy expenses.

86.     Seyfarth submits that the Expenses are reimbursable and do not constitute "overhead," which the Court discussed and described, as follows:

> Expenses which are overhead are not compensable because they are not built into the normal hourly rate charged by the billing professional.  Convent Guardian, 103 Bankr. at 939;  Wildman, 72 Bankr. at 731.  Overhead expenses include "all continuous administrative or general costs or expenses incident to the operation of the firm which cannot be attributed to a particular client or cost."  In re Thacker, 48 Bankr. 161, 164 (Bankr. N.D. Ill. 1985) (quoting Jensen-Farley Pictures, 47 Bankr. at 584)[5].

87.     In contrast, Seyfarth charges for its out-of-pocket expenses only, including the incurred Expenses, to the particular clients who use them—in this instance, the Estate.  As previously discussed, the incurred Expenses included herein are neither taken into consideration in determining, nor built as "overhead" into, Seyfarth's hourly rates.

88.     Such "user fee" expense billing closely adheres to the Seventh Circuit's market rate billing approach.  In this respect, the Seventh Circuit's market approach to compensation extends equally to the reimbursement of expenses, including those for online research.  See In re Hunt's Health Care, Inc., 161 B.R. 971, 978 (Bankr. N.D. Ind. 1993);  accord In re Hillsborough

---

[5] In re GSB Liquidating Corp., 1995 Bankr. LEXIS 1245, at *41 (Bankr. N.D. Ill. Aug. 21, 1995) (Squires, J.);  see In re Adventist Living Ctrs., Inc., 137 B.R. 701, 719 (Bankr. N.D. Ill. 1991) (Sonderby, J.) ("Expenses which are overhead and which are included in the hourly rate are not compensable.");  see also 2 Lawrence P. King, Collier on Bankruptcy ¶ 330.05 at 3-330 (15th ed. rev. LEXIS 2006) ("Nonreimbursable overhead has been defined as regular administrative and general expenses incident to the operation of a business that cannot be attributed to a particular client or cost.");  see, e.g., Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.), 127 F.3d 1398, 1402 (11th Cir. 1997) ("We accept that true 'overhead' costs—the ordinary operating costs of a firm, such as rent, heat, and the like, that cannot readily be attributed to a particular case—are not separately compensable as reimbursable expenses.") (emphasis added)

30

Holdings Corp., 127 F.3d at 1403-04 ("[I]f the cost of comparable services is a relevant factor in

setting compensation for services under [330](a)(1), it would logically seem also to be a relevant

factor in determining what categories to treat as reimbursable expenses under (a)(2).").

89.     For example, in Continental Illinois Securities, supra, the Seventh Circuit

reversed, and markedly criticized, the district court for disallowing online research expenses:

> The judge refused to allow the lawyers to bill any of their out-of-pocket
> expenses of using a computerized legal research service (LEXIS). He thought
> those expenses should be part of the lawyers' overhead. This was another clear
> error. If computerized research expenses were customarily treated in this fashion,
> lawyers' hourly rates would be even higher than they are, requiring an adjustment
> in the lodestar. *But the more important point is that the market—the paying,
> arms' length market—reimburses lawyers' LEXIS and WESTLAW expenses, just
> as it reimburses their paralegal expenses, rather than requiring that these items
> be folded into overhead.* Markets know market values better than judges do. And
> as with paralegals, so with computerized research: if reimbursement at market
> rates is disallowed, the effect will be to induce lawyers to substitute their own,
> more expensive time for that of the paralegal or the computer, 962 F.2d at 570
> (emphasis added); accord Harman v. Lyphomed, Inc., 945 F.2d 969, 976 (7th Cir.
> 1991) ("The attorneys also claim that the court erred in excluding the roughly
> $10,000 expended in computer-assisted research. The court felt that the expense
> 'is part of the amount allowed for attorney's fees.' *We must reverse the district
> court here.* Computer-assisted research fees—so long as reasonably incurred—in
> theory reduce the number of attorney hours otherwise needed for (presumably)
> more time-consuming manual research and are therefore compensable[. . . . as]
> expenses[.]") (emphasis added).

90.     The Seventh Circuit has remained consistent on this subject and has repeatedly

required attorney reimbursement for computerized legal research charges. See, e.g., Uniroyal

Goodrich Tire Co. v. Mutual Trading Corp., 63 F.3d 516, 526 (7th Cir. 1995) ("Before we turn

our attention to the award of costs, we consider MTC's request that the costs of computerized

legal research be subtracted from the award. *MTC claims that these expenses are better

characterized as overhead in the same way that maintenance of a law firm library is. We reject

this claim.*") (emphasis added), cert. denied, 516 U.S. 1115, 116 S. Ct. 916, 133 L. Ed. 2d 846

(1996).

91.     Accordingly, lower courts in this District—including numerous judges of this

Court—have adhered to this controlling precedent. See, e.g., Shula v. Lawent, 2004 U.S. Dist.

LEXIS 17662, at *7-*8 (N.D. Ill. Sept. 2, 2004) (Keys, J.) (fully allowing "computerized legal research charges" as "costs" that were "both reasonable and necessary"); Stamm v. Provident Life & Accident Ins. Co., 2000 U.S. Dist. LEXIS 5521, at *6 (N.D. Ill. Apr. 7, 2000) (Plunkett, J.) ("The Seventh Circuit has held that computerized legal research is reimbursable as a reasonable expense of litigation."); In re Price, 143 B.R. 190, 199 (Bankr. N.D. Ill. 1992) (Squires, J.) (allowing full reimbursement of Lexis expense), aff'd sub nom. Price v. United States (In re Price), 42 F.3d 1068 (7th Cir. 1994); In re Met-L-Wood Corp., 103 B.R. 972, 977 (Bankr. N.D. Ill. 1989) (Coar, J.) (allowing full reimbursement of computer research charges as "'actual and necessary' expenses"), aff'd, 115 B.R. 133 (N.D. Ill. 1990); In re Prairie Cent. Ry. Co., 87 B.R. 952, 960 (Bankr. N.D. Ill. 1988) (Squires, J.) (following earlier opinions of the Court to allow reimbursement of Lexis  and Westlaw research charges); In re Wildman, 72 B.R. at 732 ("This Court adopts the view that computer research time that is both necessary and attributable to a particular client or case is reimbursable under Section 330(a)(2).") (emphasis in the original); In re UAL Corp., Case No. 02-48191-ERW (Wedoff, C.J.), Order Approving Quarterly Application Of Vedder, Price, Kaufman & Kammholz, P.C. For Allowance And Payment Of Compensation And Reimbursement Of Expenses (Docket No. 15670) (allowing full reimbursement of $8,085.93 in online legal research charges); In re Eagle Food Centers, Inc., Case No. 03-15299-CAD (Doyle, J.), Order Approving Fourth And Final Application Of Skadden, Arps, Slate, Meagher & Flom LLP Seeking Final Allowance And Payment Of Compensation And Reimbursement Of Expenses (Docket No. 1136) (allowing full expense reimbursement of $21,888 in "Computer Legal Research" during case period) (unpublished decision); In re Conseco, Inc., Case No. 02-49672-CAD (Doyle, J.), Order Approving Final Application Of Jenner & Block LLP For Allowance Of Administrative Claim For Compensation And Reimbursement Of Expenses (Docket No. 6987) (allowing expense reimbursement of $139,934.07, including Westlaw and Lexis charges); In re Wickes, Inc., Case No. 04-02221-

BWB (Black, J.), *Findings Of Fact And Conclusions Of Law In Support Of Order Awarding To DLA Piper Rudnick Gray Cary US LLP, Attorneys For Wickes, Inc., For Allowance And Payment Of Interim Compensation And Reimbursement Of Expenses* (Docket No. 2935) (allowing expense reimbursement of $15,505.32, including Westlaw and Lexis charges).

92.     Finally, in seeking reimbursement for such costs, the Seventh Circuit has laid down guidelines, and cautioned, that an applicant "[is] not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover [ ] costs[, but] [r]ather [  ] [is] required to provide the best breakdown obtainable from retained records." Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co., 924 F.2d 633, 643 (7th Cir. 1991).

93.     In seeking reimbursement for the Expenses herein, Seyfarth has made every attempt to fully comply with these dictates.

## VII.  **NOTICE**

94.     Twenty-one days' notice of this Application, and service of the Application, has been provided to the Office of the United States Trustee, in care of Patrick S. Layng.

95.     Pursuant to Bankruptcy Rule 2002(a)(2) and (a)(6), and due to the expense that would be incurred by the Estate in serving this Application upon all creditors in the Case, Seyfarth respectfully submits that sufficient cause exists to limit mail service of:  (A) the Application to the parties on the Special Service List, and (B) the Notice of Application to the General Service List, in both regards considering that all other entities requesting notices in the Case will receive notice of, and access to, the Application via CM/ECF.

96.     Seyfarth respectfully requests that the above-notice (the "Notice") be deemed adequate and that the Court find that no other or further notice is necessary.

33

## VIII.  **NO PRIOR REQUEST**

97.     No prior request for the relief requested by this Application has been made to this

Court or to any other court.

WHEREFORE Seyfarth Shaw LLP respectfully requests that the Court enter an Order:

A.      Finding Notice of the Application sufficient as given and that no other or

further notice is necessary;

B.      Allowing and awarding Seyfarth on an interim basis the Requested Fees

and Expenses;

C.      Authorizing the Trustee to make payment of such Fees and Expenses to

Seyfarth from the Estate, and

D.      Granting such other and further relief as this Court deems just and

appropriate.

Dated:  November 26, 2014

Respectfully submitted,

GUS A. PALOIAN, not individually or
personally, but solely in his capacity as the
Chapter 11 Trustee of Debtor's Estate

By:/s/ James B. Sowka
    Gus A. Paloian (6188186)
    gpaloian@seyfarth.com
    James B. Sowka (6291998)
    jsowka@seyfarth.com
    Bret M. Harper (6299968)
    bharper@seyfarth.com
    SEYFARTH SHAW LLP
    131 South Dearborn Street
    Suite 2400
    Chicago, Illinois 60603
    Telephone:  (312) 460-5000
    *Counsel to Chapter 11 Trustee Gus A.*
    *Paloian*