# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 12-31336-JBS |
| | ) | |
| DVORKIN HOLDINGS, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |
| | ) | Hearing Date: May 7, 2015 |
| | ) | Hearing Time: 9:30 a.m. |

**COVER SHEET FOR CARPENTER LIPPS & LELAND LLP'S SECOND AND FINAL
APPLICATION FOR COMPENSATION AND REIMBURSEMENT
OF EXPENSES AS SPECIAL COUNSEL TO CHAPTER 11 TRUSTEE
GUS A. PALOIAN FOR THE PERIOD OF SEPTEMBER 1, 2013 TO MARCH 1, 2015**

| | |
|---|---|
| <u>Name of Applicant</u>: | Carpenter Lipps & Leland LLP |
| Authorized to Provide <u>Professional Services to</u>: | Chapter 11 Trustee Gus A. Paloian |
| Date of Order Authorizing <u>Employment</u>: | February 1, 2013 (Dkt. 122) |
| Period for which Compensation <u>and Reimbursement is Sought</u>: | September 1, 2013 through March 1, 2015 |
| Amount of Interim Compensation <u>Sought</u>: | $ 98,919.00 |
| Amount of Interim Expense <u>Reimbursement Sought</u>: | $ 2,972.92 |
| <u>Amount of Final Compensation Sought</u>: | $155,022.00 |
| Amount of Final Expense <u>Reimbursement Sought</u>: | $ 11,348.64 |

This is an:  __X__ Final  ___ Interim Application.

<u>Prior Applications</u>:

On March 27, 2014, the Court granted the first interim fee application filed on behalf of
Carpenter Lipps & Leland LLP, and allowed $56,103.00 in interim fees and $8,375.72 in actual
and necessary costs incurred by Carpenter Lipps & Leland LLP through August 31, 2013.

| CARPENTER LIPPS & LELAND'S FIRST INTERIM FEE APPLICATION | | | | | |
|---|---|---|---|---|---|
| Filing Date & Docket Number | Interim Period Covered | Total Fees Requested & [Allowed] | Total Expenses Requested & [Allowed] | Aggregate Allowed Fees & Expenses | Fees & Expenses Paid to Date |
| 03/05/14 [447] | 02/01/13 to 08/31/13 | $56,103.00 [$56,103.00] | $8,375.72 [$8,375.72] | $64,478.72 | $64,478.72 |
| **TOTALS:** | | **$56,103.00** | **$8,375.72** | **$64,478.72** | **$64,478.72** |

Dated: April 14, 2015

CARPENTER LIPPS & LELAND LLP

By: /s/ Jonathan M. Cyrluk
Jonathan M. Cyrluk (Ill. Bar No. 6210250)
Joshua S. Goldberg (Ill. Bar No. 6277541)
Steven C. Moeller (Ill. Bar No. 6290263)
CARPENTER LIPPS & LELAND LLP
180 North LaSalle Street, Suite 2640
Chicago, Illinois 60601
(312) 777-4300 (phone)
cyrluk@carpenterlipps.com
goldberg@carpenterlipps.com
moeller@carpenterlipps.com

*Special Counsel to the Trustee*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-31336-JBS |
| | ) | |
| DVORKIN HOLDINGS, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |
| | ) | Hearing Date: May 7, 2015 |
| | ) | Hearing Time: 9:30 a.m. |

**NOTICE OF CARPENTER LIPPS & LELAND LLP'S SECOND AND FINAL
APPLICATION FOR COMPENSATION AND REIMBURSEMENT
OF EXPENSES AS SPECIAL COUNSEL TO CHAPTER 11 TRUSTEE
GUS A. PALOIAN FOR THE PERIOD OF SEPTEMBER 1, 2013 TO MARCH 1, 2015**

**TO:    PARTIES ON ATTACHED SERVICE LIST**

**PLEASE TAKE NOTICE** that on April 14, 2015 Carpenter Lipps & Leland LLP

("CLL") filed **Carpenter Lipps & Leland LLP's Second and Final Application for**

**Compensation and Reimbursement for Expenses as Special Counsel to Chapter 11 Trustee**

**Gus A. Paloian for the Period of September 1, 2013 to March 1, 2015** (the "Application")

with the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division

(the "Bankruptcy Court").  In the Application, Applicants seek final compensation of $98,919.00

and interim reimbursement of expenses in the amount of $2,972.92, and $56,103.00 in

previously awarded interim compensation as final compensation.  The Application is being

served contemporaneously with this Notice upon each party receiving notice in the above-

captioned cases pursuant to the Bankruptcy Court's CM/ECF system.  All other parties may

obtain copies of the Application upon request to:  Ms. Kimberly Haas, Carpenter Lipps & Leland

LLP, 180 North LaSalle Street, Suite 2640, Chicago, Illinois, 6060; haas@carpenterlipps.com.

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider the Application will

be held before the Honorable Jacqueline P. Cox, United States Bankruptcy Judge for the United

States Bankruptcy Court for the Northern District of Illinois, Eastern Division, in the courtroom

normally occupied by His Honor, Courtroom 680, located at 219 South Dearborn Street,

Chicago, Illinois 60604, on **Thursday, May 7, 2015, at 9:30 a.m., prevailing Central Time** or

as soon thereafter as the undersigned counsel may be heard.

Dated: April 14, 2015                    CARPENTER LIPPS & LELAND LLP

By: /s/ Jonathan M. Cyrluk
Jonathan M. Cyrluk (Ill. Bar No. 6210250)
Joshua S. Goldberg (Ill. Bar No. 6277541)
Steven C. Moeller (Ill. Bar No. 6290263)
CARPENTER LIPPS & LELAND LLP
180 North LaSalle Street, Suite 2640
Chicago, Illinois 60601
(312) 777-4300 (phone)
cyrluk@carpenterlipps.com
goldberg@carpenterlipps.com
moeller@carpenterlipps.com

*Special Counsel to the Trustee*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that on April 14, 2015, pursuant to Section II, B, 4 of the Administrative Procedures for the Case Management/Electronic Case Filing System and Fed. R. Civ. P. 5(a), he caused a copy of the attached:

1.       **Notice of Carpenter Lipps & Leland LLP's Second and Final Application for Compensation and Reimbursement for Expenses as Special Counsel to Chapter 11 Trustee Gus A. Paloian for the Period of September 1, 2013 to March 1, 2015** and **Carpenter Lipps & Leland LLP's Second and Final Application for Compensation and Reimbursement for Expenses as Special Counsel to Chapter 11 Trustee Gus A. Paloian for the Period of September 1, 2013 to March 1, 2015** to be served:  (A) electronically upon those parties who receive notice through the ECF system, which parties are so noted on the attached Service List; and (2) via First Class U.S. Mail, postage prepaid, upon Patrick S. Layng c/o Stephen G. Wolfe, Office of the U.S. Trustee, Region 11, 219 S. Dearborn Street, Room 873, Chicago, Illinois, 60604; and

2.       **Notice of Carpenter Lipps & Leland LLP's Second and Final Application for Compensation and Reimbursement for Expenses as Special Counsel to Chapter 11 Trustee Gus A. Paloian for the Period of September 1, 2013 to March 1, 2015** to be served via First Class U.S. Mail, postage prepaid, upon each of the parties so noted on the attached Service List.

<u>     /s/  Jonathan M. Cyrluk     </u>

**DVORKIN HOLDINGS, LLC**
**Case No.  12-31336**

## CM/ECF ELECTRONIC MAIL DISTRIBUTION

Samantha Babcock
sbabcock@chuhak.com;
rsaldivar@chuhak.com

Gary I. Blackman
Counsel for Michael Tuchman, Levenfeld
Pearlstein, LLC
gblackman@lplegal.com;
slevandowski@lplegal.com;
druiz@lplegal.com

Timothy W. Brink
Counsel for 444 Wabash Partners, LLC
timothy.brink@dlapiper.com;
docketingchicago@dlapiper.com;
william.guthrie@dlapiper.com

William J. Connelly
Peter D. Sullivan
Counsel for Michael Tuchman
wconnelly@hinshawlaw.com
psullivan@hinshawlaw.com

Jonathan M. Cyrluk
Counsel for Trustee, Gus A. Paloian
cyrluk@carpenterlipps.com;
haas@carpenterlipps.com

Jeffrey W. Finke
Counsel for Albany Bank &Trust N.A.
jwfinke@mindspring.com

David Chroust
Counsel for R.G. Construction Services, Inc.
david.chroust@icemiller.com

Michael J. Davis
Joshua D. Green
Counsel for Dvorkin Holdings, LLC
mdavis@archerbay.com;
davislaw80@gmail.com;
jgreene@archerbay.com;
llarson@archerbay.com

David A. Kallick
Counsel for First Nations Bank
dkallick@tishlerandwald.com

Patrick S. Layng
Office of the U.S. Trustee
USTPRegion11.ES.ECF@usdoj.gov

Gina B. Krol
Counsel for: Francine Dvorkin; Beverly
Dvorkin; Aaron Dvorkin
gkrol@cohenandkrol.com;
jhazdra@cohenandkrol.com;
pmchugh@cohenandkrol.com

Emily N. Masalski
Counsel for Centier Bank
masalski@dlec.com; Richards@dlec.com;
shump@dlec.com; emasalski@yahoo.com;
stein@dlec.com

4

Matthew T. Gensburg
Rebecca D. Rosenthal
Counsel for RiverSource Life Insurance Co.
gensburgm@gtlaw.com;
rosenthalr@gtlaw.com; chidocket@gtlaw.com;
ChiBkyDocket@gtlaw.com;
greenbergc@gtlaw.com;
sullivanka@gtlaw.com

David S. Makarski
Counsel for Ascher Brothers Company, Inc.
david.makarski@sfnr.com;
craig.coleman@sfnr.com;
george.sang@sfnr.com; seth.matus@sfnr.com

Michael J. Gunderson
Counsel for Focus VI, LLC
mgunderson@gundersontharp.com;
lopez@gundersontharp.com

Kevin H. Morse
Counsel for Chapter 7 Trustee Ilene F.
Goldstein
khmorse@arnstein.com

David L. Kane
Counsel for FirstMerit Bank N.A.
dkane@mpslaw.com; dnichols@mpslaw.com;
mpslawllc@gmail.com; jlitwin@mpslaw.com

Lawrence A. Stein
Counsel for Francine Dvorkin, Trustee of
Dvorkin Childrens' Trust; Francine Dvorkin,
Trustee of Francine Dvorkin Revocable Trust;
lstein@huckbouma.com;
lkoster@huckbouma.com

Forrest B. Lammiman
Steven R. Rogovin
Counsel for FirstMerit Bank, N.A.
flammiman@mpslaw.com;
dkane@mpslaw.com; srogovin@mpslaw.com;
dnichols@mpslaw.com;
mpslawllc@gmail.com; jlitwin@mpslaw.com

Jean Soh
Jerry L. Switzer
Counsel for ColFin Bulls Funding A, LLC
jsoh@polsinelli.com
jswitzer@polsinelli.com

David P. Leibowitz
Counsel for Bette Lynn Lavere, Frank Lavere
dleibowitz@lakelaw.com;
czuniga@lakelaw.com; jstorer@lakelaw.com;
ecf@lakelaw.com

Michael L. Tinaglia
Counsel for International Bank of Chicago
mltinaglia@tinaglialaw.com;
jmwretzky@tinaglialaw.com

Colleen E. McManus
Kurt M. Carlson
Counsel for BMO Harris Bank
cmcmanus@carlsondash.com;
kcarlson@carlsondash.com;
knoonan@carlsondash.com;
jbubacz@carlsondash.com

Stephen G. Wolfe
Office of the U.S. Trustee
steve.g.wolfe@usdoj.gov;
jennifer.r.toth@usdoj.gov

Jonathan N. Rogers
Counsel for Bayview Loan Servicing, LLC and
BMO Harris Bank, N.A.

William W. Thorsness
Counsel for Asset Liquidators, LLC
wthorsness@vedderprice.com;

jrogers@skdaglaw.com                    ecfdocket@vedderprice.com

John Robert Weiss
DUANE MORRIS LLP
Counsel for First Nations Bank
jrweiss@duanemorris.com

## SERVICE LIST

### VIA UNITED STATES MAIL

Patrick S. Layng
c/o Stephen G. Wolfe
Office of the U.S. Trustee, Region 11
219 S. Dearborn Street, Room 873
Chicago, IL  60604

Andrew Baumann
Tishler & Wald
200 S. Wacker Drive, Suite 3000
Chicago, IL  60606

North Shore Bank
7800 Lincoln Avenue
Skokie, IL  60077

Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

1 Transam Plaza (Oakbrook Terrace) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

1000 N. Halsted LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

1055 W 175th (Homewood) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

1101 Tower Rd (Schaumburg) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Dvorkin Holdings, LLC
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

A-Plus Plumbing, Inc.
733 W. Estes Avenue
Schaumburg, IL  60193

Blue Star Holdings LLC
c/o Michael Tuchman
2 N. LaSalle Street, Suite 1300
Chicago, IL  60602

Dahl & Bonadies, LLC
James E. Dahl
30 N. LaSalle Street, Suite 1500
Chicago, IL  60602

MB Financial Bank, N.A.
Attn:  Mark Kosminskas
6111 N. River Road
Rosemont, IL  60018

McGrath Lexus of Westmont
500 E Ogden Avenue
Westmont, IL  60559-1228

Toyota Motor Credit Corporation (TMCC)
P.O. Box 8026
Cedar Rapids, IA  52408-8026

Dan Air Holdings, L.L.C.
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

11824 S.W. Highway (Palos Heights) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

1203 Maple (Lisle), LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

1230 S. Highland (Lombard) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

125-165 W. Dundee Road (Buffalo Grove),
LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

1275 Davis (Elgin), L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

1611 Stewart Street LLC
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL  60602

1920 S. Highland (Lombard), L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

1941 Selmartin (Aurora), L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

2150 N. Clybourn (Chicago) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Daniel Dvorkin
1636 Highland Avenue
Lombard, IL  60148

Daniel G. Dvorkin Insurance Trust
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

Daniel G. Dvorkin Revocable Trust
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

Daniel Hyman
Millenium Properties
200 W. Madison Avenue, 36th Floor
Chicago, IL  60606

DDL Property Limited
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Debi Kight
DDL Property
One Trans Am Plaza Dr., Suite 120
Oakbrook Terrace, IL  60181

Department of the Treasury
Internal Revenue Service
P.O. Box  7346
Philadelphia, PA  19101-7346

DH-EK Management Corporation
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

Dupage Office Leasing, Inc.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL  60602

2200 South Main (Lombard) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

246 E. Janta (Lombard), LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

25210 W. Reed Street (Channahon), LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

328 S. Jefferson (Chicago) SG, L.L.C.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL  60602

3330-40 West Dundee (Northbrook) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

444 N. Wabash (Chicago), LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

4949-5001 W. Oakton Residential Financing
(Skokie) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

4949-5001 W. Oakton Retail (Skokie) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

560 West Washington (Chicago), L.L.C.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Dvorkin Children's Trust dated March 5, 1998
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

EIS Kalt LLC
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

Epaminodas Karvelas
Christopher Karvelas
Emersons Street Grill, Inc.
113 S. Emerson
Mt. Prospect, IL  60056

Esther Jackson
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Farnsworth (Aurora) Bisel, L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Farnsworth (Aurora) Lando LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Flossmoor - Plaza DH Holdings, L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Flossmoor Commons (Professional), L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Flossmoor Commons (Retail), L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

606 W. Roosevelt (Chicago), L.L.C.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

6200 N. Rockwell (Chicago) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

640-650 Lake Street, L.L.C.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

920 Roosevelt (West Chicago), L.L.C.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

956 N. Neltnor (West Chicago), L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

975 Nerge (Roselle) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

Aaron Trust
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL 60181

Aaron's Children's Trust
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL 60181

Ariel Weissberg
Weissberg & Associates, Ltd.
401 S. LaSalle St., Suite 403
Chicago, IL 60605

Francine Dvorkin Revocable Trust
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL 60181

Glenwood Residential, L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

Golden Holdings, L.L.C.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Goldfarb Properties, LLC
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL 60181

Greystone Associates, Inc.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Highland Avenue Qualified Personal
Residence Trust
One Trans Am Plaza Drive, Suite 120
Oakbrook Terrace, IL 60181

Inverarry Family Trust
1220 Rudolph Dr., Apt. 2F
Northbrook, IL 60062

Jackie Cullen
1 Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL 60181

Jackson Trust
Esther/Julianne Jackson
4075 W. Bonanza Drive
Beverly Hills, FL 34465

Auto Gallery Chicago, LLC
Peter Alvarez
12 W. Factory Road
Addison, IL  60101

Ambry Estates Joint Venture (Lynwood), LLC
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL  60602

American Equine Insurance Group, LTD.
Michael J. Morrisroe
114 S. Bloomingdale Road
Bloomingdale, IL  60108

Ameriprise Financial Services, Inc.
C T Corporation System
208 S. LaSalle Street, Suite 814
Chicago, IL  60604

Barone & Jenkins, P.C.
Anthony G. Barone
635 Butterfield Rd., Suite 145
Oakbrook Terrace, IL  60181

Barry Milowitz
The Milowitz Office
3 Wyldwood
Tarrytown, NY  10591

Beit Dan, L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Belmont Financial Group, Inc.
Belmont Bank & Trust
BFKPN Corporate Services Inc.
8250 W. Belmont Avenue
Chicago, IL  60634

Beverly Dvorkin
700 W. Grand Avenue, Apt. 5
Chicago, IL  60654-5173

Kinman Enterprises, L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Steve Kling
Colliers International
6250 N. River Road, Suite 11-100
Rosemont, IL  60018

Leah - Beverly Trust
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

Levenfeld Pearlstein
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL  60602

Lynwood DT Investors LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Lynwood Land Company, L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

M. Morgan Trust
23123 N. Cardenas
Sun City W, AZ  85375

Matteson, LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Midland Equities
Charles Hold
One Trans Am Plaza Drive
Suite 310
Oakbrook Terrace, IL  60181

Beverly Children's Trust
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL 60181

Blue Star Gearing, LLC
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Blue Star Properties, Inc.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Bruce Teitelbaum
Vision Realty
1240 Meadow Road
 Northbrook, IL 60062

BT Holdings, LLC
Rakik Boughadou
1200 Harger Road
Suite 325
Oak Brook, IL 60523

Caryn Kolton
c/o Keith Kolton
2929 W. Balmoral
Chicago, IL 60625

Channahon Plaza, L.L.C.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Chicago Commercial, L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

Nigel and Ellen Rhodes
1980 W. Downer Place
Aurora, IL  60508

North Shore Community Bank & Trust
c/o Robert J. Huguelet Jr., PC
10749 Winterset Drive
Orland Park, IL  60467

Northgate Plaza (Aurora), L.L.C.
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL 60181

Sharyl A. Ross, CPA
Silver, Lerner, Schwartz & Fertel
8707 Skokie Boulevard, Suite 400
Skokie, IL  60077

Oak West (Oakbrook Terrace) Office LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

Oxford Bank & Trust
Attn:  Devon J. Eggert
Freeborn & Peters LLP
311 S. Wacker Drive, Suite 3000
Chicago, IL  60606

Plaza (Arlington Heights) Office LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

Private Bank & Trust Co.
PrivateBank Corp.
James Thompson, Managing Director
The Private Bank and Trust Company
70 W. Madison, Suite 200
Chicago, IL 60602

Craig Golden
Blue Star Properties, Inc.
600 W. Van Buren Street, Suite 1000
Chicago, IL 60607

Craig Yale
2801 Lakeside Drive
Suite 207
Bannockburn, IL  60015

Texas 1845 LLC
Michael Mulcaby
Vedder Price P.C.
222 North LaSalle Street, Suite 2600
Chicago, IL  60601

Star Park LLC
c/o Richard M. Goldwasser
Schoenberg Finkel Newman & Rosenberg
222 S. Riverside Plaza, Suite 2100
Chicago, IL  60606

Schaumburg Bank & Trust Company
c/o Samantha Licker
Garfield & Merel, Ltd.
180 N. Stetson, Suite 1300
Chicago, IL  60601

Dyek-O'Neal, Inc.
P.O. Box 13370
Arlington, TX  76094

Rachel Dvorkin
1653 Pebblebeach Circle
Elgin, IL 60123

Sterling 18th Street LLC
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Sierra Office Solutions LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

Stoller-Lieberman Holdings
James Stoller
The Building Group
1045 W. Lawrence Avenue
Chicago, IL 60640

Zifco Corporation
Ed Zifkin
513 Central Avenue, Suite 400
Highland Park, IL  60035

David D. O'Sullivan
Springer, Brown, Covey, Gaertner & Davis,
LLC
1755 S. Naperville Road, Suite 200
Wheaton, IL  60189

13

Chicago Title Land Trust Company as Trustee
for Trusts
C T Corporation System
208 S. LaSalle Street, Suite 814
Chicago, IL 60604
and
Robert Kuzma
10 S. LaSalle, Suite 2750
Chicago, IL 60603

Re:
Land Trust 34383
Land Trust 1636-Y
Land Trust 42470
Land Trust 43314
Land Trust 44203
Land Trust 44204
Land Trust 94-6075
Land Trust 95-6296

Eatman Holdings, L.L.C.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602
and
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

Re:
Chicago Commercial
Cross Creek Office Center
Flossmoor Commons (Professional), L.L.C.
Flossmoor Commons (Retail), L.L.C.
Glen Ellyn Venture Trust 37330
1920 Highland
Matteson
Palos Heights
Selmarten
Trans Am Plaza

14

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 12-31336-JBS |
| | ) | |
| DVORKIN HOLDINGS, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |
| | ) | Hearing Date: May 7, 2015 |
| | ) | Hearing Time: 9:30 a.m. |

### CARPENTER LIPPS & LELAND LLP'S SECOND AND FINAL
### APPLICATION FOR COMPENSATION AND REIMBURSEMENT
### OF EXPENSES AS SPECIAL COUNSEL TO CHAPTER 11 TRUSTEE
### GUS A. PALOIAN FOR THE PERIOD OF SEPTEMBER 1, 2013 TO MARCH 1, 2015

Pursuant to Sections 105(a) and 330 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 through 1330, as amended (the "Bankruptcy Code"), Carpenter Lipps & Leland LLP ("CLL"), as Special Counsel to Gus A. Paloian, not individually or personally, but solely in his capacity as the duly-appointed Chapter 11 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of the above-captioned debtor (the "Debtor"), hereby submits its Second and Final Application for Compensation and Reimbursement of Expenses as Special Counsel to Chapter 11 Trustee Gus A. Paloian for the Period of September 1, 2013 to March 1, 2015 (the "Application") for legal services performed, and expenses incurred, during the period from September 1, 2013 through March 1, 2015 (the "Application Period"). In support of this Application, CLL respectfully states as follows:

### I.  INTRODUCTION

1.     CLL makes this Application pursuant to: (A) Sections 105(a) and 330 of the Bankruptcy Code; (B) Rule 2016 of the Federal Rules of Bankruptcy Procedure (singularly, a "Rule"; collectively, the "Rules"); (C) certain applicable provisions of the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. § 330, adopted by the Office of the United States Trustee (the "Guidelines"); (D) Rule

5082-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern

District of Illinois (the "Court"); (E) the Court's order, in the above-captioned case (the "Case"),

of February 1, 2013 (Dkt. 198), authorizing CLL's retention as Special Counsel to the Trustee;

and (F) other applicable case law.

2.      In making this Application, CLL respectfully seeks an Order of this Court

awarding and directing payment from the Estate of:  (1) final compensation in the amount of

$99,919.00 for professional services rendered by CLL to the Trustee during the Application

Period; and (2) final reimbursement of actual and necessary expenses in the amount of $2,972.92

incurred by CLL in rendering such professional services to the Trustee in the Case.  To date,

CLL has assisted the Trustee in two matters:  (1) investigating, pursuing, and settling the Estate's

against, among others, the Debtor's former counsel Michael J. Tuchman ("Tuchman") Levenfeld

Pearlstein, LLC ("Levenfeld" and collectively with Tuchman, the "Levenfeld Parties"); and (2)

defending against, objecting to, and settling claims against the Estate by BMO Harris Bank,

N.A.("BMO").

## II.  JURISDICTION

3.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is before the Court pursuant to 28 U.S.C. § 157 and Internal Operating

Procedure 15(a) of the United States District Court for the Northern District of Illinois.  Venue of

this Case and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and

(b)(2)(A) and/or (O).

## III.  BACKGROUND

2

4.      On August 7, 2012, the Debtor initiated this case by filing a voluntary petition for relief under Chapter 11 of the Code and, during the onset of the case, remained in possession and control of its assets and operated its business under §§ 1107 and 1108 of the Code as a debtor-in-possession.

5.      Loran Eatman ("Mr. Eatman"), vice president of DH-EK Management Corp., ("DHEK") signed the petition as the Debtor's authorized individual.

6.      On August 17, 2012, the Debtor filed its schedules of assets and liabilities and its statement of financial affairs. See Dkt. 11. Five days after that, the Debtor filed a set of amended schedules and an amended statement of financial affairs. See Dkt. Nos. 20, 21 and 22. According to the amended statement of financial affairs, Francine Dvorkin ("Mrs. Dvorkin") and several Dvorkin family entities own a controlling interest in the Debtor.  Mrs. Dvorkin is married to Daniel Dvorkin ("Mr. Dvorkin").

7.      The Debtor, through its subsidiaries or related entities, is primarily involved in commercial real estate investment and management. The Debtor, through one or more limited liability companies and land trusts, possesses or possessed ownership interests in approximately seventy (70) parcels of real property. These real properties include developed and undeveloped parcels. The developed parcels consist of office, retail, industrial, and residential properties in Chicago and the surrounding suburbs.

8.      The Debtor lists ownership interests in more than 40 partnerships and joint ventures, all of which are limited liability companies (the "Nondebtor LLCs") in its amended Schedule B. The Debtor also discloses beneficial interests in 14 land trusts ("Land Trusts"). According to its amended Schedule H, the Debtor is a codebtor or guarantor of the debt for at least 44 entities, most of which appear to be Non-Debtor LLCs or Land Trusts.

3

9.      In addition to the Dvorkin family's ownership interests in the Debtor, public records and documents produced by Levenfeld indicate Mrs. Dvorkin occupies a significant management position in DH-EK.  According to the Illinois Secretary of State's website, Mrs. Dvorkin is the president of DH-EK, the company which employs Mr. Eaton and is managing member of the Debtor. The Secretary of State's website also indicates that Mr. Dvorkin serves as registered agent for both DH-EK and the Debtor.  Upon information and belief, Mr. Dvorkin played a role in managing the Debtor's business affairs prior to the commencement of this case.

10.     Mr. Dvorkin was indicted and convicted in a proceeding pending in the United States District Court for the Northern District of Illinois for his alleged involvement in a murder-for-hire plot. *See* Case No. 12 CR 00500, *United States v. Dvorkin.*  The alleged intended victim was involved in a DuPage County lawsuit captioned *Texas 1845, LLC v. Dvorkin Holdings, LLC, et al.*, Case No. 10-L-1249, which resulted in a multimillion dollar judgment against the Debtor and Mr. Dvorkin in February of 2012.[1]  The Debtor's counsel has represented that Mrs. Dvorkin terminated Mr. Dvorkin's relationship with the Debtor approximately two weeks after his arrest, and then put Mr. Eatman in control of the Debtor shortly before the filing of this case.

11.     On August 24, 2012, the U.S. Trustee filed a Motion to Appoint Chapter 11 Trustee. (Dkt. 29.)  On August 29, 2012, creditor First Merit Bank, N.A. filed its Motion to Appoint Chapter 11 Trustee. (Dkt. 32.)  On April 1, 2013, the Court granted the U.S. Trustee's Motion to Appoint a Chapter 11 Trustee. (Dkt. 80.)

12.     On April 1, 2013, the U.S. Trustee filed its Motion for Approval of the Appointment of Gus A. Paloian as Chapter 11 Trustee. See Dkt. 83. On October 16, 2012, the

---

[1] The list of twenty largest creditors attached to the Debtor's petition includes an entity named Texas 1845 LLC holding a disputed $8,259,250.00 claim arising from a judgment entered on February 24, 2012.  It appears that the Debtor may have begun considering relief under the Bankruptcy Code following the entry of that judgment.  The judgment was unsuccessfully appealed. *Texas 1845, LLC v. Dvorkin*, 2013 IL App. (2d) 120330-U.

4

Bankruptcy Court entered the Order approving the appointment of Gus A. Paloian as Chapter 11 Trustee. (Dkt. 96.)

13.     On January 24, 2013, the Trustee filed his Application for Order Authorizing Chapter 11 Trustee, Gus A. Paloian, to Retain and Employ Carpenter Lipps & Leland LLP as Conflicts Counsel (the "CLL Application"). (Dkt. 190.) The terms of CLL's employment are memorialized in the CLL Application. (*Id.*)

14.     On February 1, 2013, the Court entered its order authorizing the employment of CLL to render services to the Trustee that are necessary and beneficial to administering the Estate (the "Retention Order"). (Dkt. 122.)

15.     Pursuant to the Retention Order, CLL represented the Estate in connection with two matters. *First*, CLL represented the Trustee in the investigation, prosecution, and settlement of causes of action against the Levenfeld Parties concerning two sets of alleged fraudulent transfers known as the "Goldfarb Transfers" and the "Blue Star Transfers," pursuant to which the Debtor transferred interests in real estate worth millions of dollars to insiders of the Debtor. CLL investigated whether the Levenfeld Parties' involvement in the transactions gave rise to claims for breach of fiduciary duty, conspiracy, and aiding and abetting. While the investigation was pending, the Trustee, at considerable expense to the Estate, obtained the return of the assets allegedly fraudulently transferred.

16.     CLL drafted a complaint against the Levenfeld Parties and negotiated a settlement of the Estate's claims against the Levenfeld Parties. Ultimately, the Levenfeld Parties paid $285,000 to the Estate. This amount resulted in: (1) full recovery of the fees incurred in investigating the Levenfeld Parties' conduct; (2) the fees and costs incurred by the Estate to

unwind the Goldfarb and Blue Star Transfers; and (3) an additional amount predicated on exemplary damages.

17.     *Second*, CLL represented the Trustee in investigating and ultimately resolving potential claims by BMO against the Estate.  Specifically, on November 15, 2012, BMO filed its one and only claim against the Estate, asserting a claims in the total amount of $3,793,265.24 as a result of various promissory notes secured solely by various cross-collateralized mortgages. *See* Claim No. 13.

18.     Notwithstanding this single claim of mortgage interests in the Estate, BMO contacted the Trustee in May 2014 and, for the first time, asserted an additional secured interest in the Estate as the result of BMO's possession of a purported collateral assignment of the beneficial interest ("CABI") in a land trust of which the Debtor owned a 100% beneficial interest.  If allowed, this newly asserted claim would have resulted in millions of dollars owed by the Estate to BMO.

19.     CLL represented the Trustee in investigating BMO's newly asserted claim, ultimately preparing an adversarial complaint that would have sought to invalidate BMO's new claim under the CABI.  CLL also represented the Trustee in negotiating a settlement of BMO's claims prior to the filing of the adversary proceeding, which settlement resulted in BMO withdrawing its newly asserted claims and reducing its existing claim to approximately $530,000.00.

20.     In accordance with Section 504(b)(1) of the Bankruptcy Code and Rule 2016, CLL has received no promises for payment for services rendered or to be rendered in any capacity whatsoever in connection with the Case, other than specifically provided for in the CLL Retention Order. Additionally, other than as permitted by Section 504(b)(1) of the Bankruptcy

Code and Rule 2016(a), no agreement or understanding exists between CLL and any other entity for a division of compensation and reimbursement received or to be received for services rendered in or in connection with the Case.

### IV.  SUMMARY OF SERVICES
### RENDERED, AND EXPENSES INCURRED, BY CLL

**A.**     **Overview.**

21.     This Application is the Second and Final application for compensation and expense reimbursement that CLL has filed in this Case.

22.     On March 5, 2014, CLL filed its first application for compensation and expense reimbursement as counsel to the chapter 11 Trustee [see Dkt. No. 447] in which CLL sought $56,103.00 in interim fees and $8,375.72 in actual and necessary costs incurred by CLL through August 31, 2013.   On March 24, 2014, the Court entered an order awarding CLL interim compensation in the amount of $56,103.00 in interim fees and expense reimbursement in the amount of $8,375.72 [see Dkt. No. 453].

23.     CLL's services to the Estate include the following:  (1) extensive motion practice to enforce Rule 2004 subpoenas (the "Rule 2004 subpoenas") issued to Tuchman and Levenfeld pursuant to the Court's order of January 8, 2013 (Dkt. 181); (2) reviewing 20,000 electronically stored documents and 64 banker's boxes of documents produced by Tuchman and Levenfeld pursuant to the Rule 2004 Subpoenas; (3) taking two sessions of Tuchman's Rule 2004 examination, including motion practice to compel the second session of the examination; (4) interviewing other witnesses; (5) preparing a draft complaint against the Levenfeld Parties; (6) negotiating and documenting a settlement with the Levenfeld Parties; (6) investigating BMO's potential claims against the Estate as a result of its claimed possession of the CABI; (7) preparing an adversary complaint against BMO to avoid the potential claim under the CABI; (8)

7

negotiating a settlement with BMO; and (9) providing other miscellaneous services within the scope of CLL's agreement with the Trustee.

24.     During the Application Period, CLL has: (i) provided legal services to the Trustee in the amount of $98,919.00 (the "Fees"), and (ii) advanced costs in the amount of $2,972.92 (the "Expenses") in connection with the legal services that it has provided to the Trustee.

25.     The following table consists of a breakdown of the amount of Fees incurred by each CLL professional, including each such professional's: (i) title, (ii) hourly rate, (iii) total hours expended in providing legal services in the Case, and (iv) the value attributable to such legal services:

| Professional | Title | Hourly rate | Total hours | Value of services |
|---|---|---|---|---|
| Jonathan M. Cyrluk | Partner | $450 | 89.5 | $40,275.00 |
| Joshua S. Goldberg | Of Counsel | $350 | 71.80 | $25,130.00 |
| Steven C. Moeller | Associate | $260 | 128.90 | $33,514.00 |
| **Total** | | | 290.2 | $98,919.00 |

26.     Biographies for the attorneys listed above who performed the services in this Case are attached hereto as **Exhibit 1**.  During the Application Period, CLL made every reasonable effort to have services that it rendered to the Trustee performed by those qualified professionals charging the lowest hourly rates consistent with the level of service, experience, and efficiency required of a given task.

27.     All of the compensation for which CLL requests allowance and payment, and all of the expenses for which CLL requests reimbursement, in this Application relate to the discharge of CLL services, as requested by the Trustee, during the Application Period.

28.     CLL respectfully submits that its services rendered to the Trustee and expenses incurred during the Application Period have, in all respects, been reasonable, necessary, and beneficial to the Estate, as further discussed herein.

**B.     Time and Expense Records.**

29.     CLL maintains written records of the time expended by its professionals.  These time records are maintained:  (i) contemporaneously with the rendition of services by each CLL professional;  and (ii) separately from those of the Trustee, in accordance with established procedures within this District.

30.     Such time and expense records for the Case, copies of which are grouped and attached hereto as **Exhibits 2(a) and 2(b)** and which are incorporated herein by reference, set forth in detail: (i) the services which CLL rendered on behalf of the Trustee; (ii) the dates upon which such services were rendered; and (iii) the amount of time spent on the services in one-tenth of one hour increments.

31.     CLL also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with rendering services to the Trustee. A complete listing of the Expenses and the amounts for which reimbursement is sought is contained in **Exhibit 2(a)** and incorporated herein by reference.

**C.     Breakdown of Fees by Category of Services Rendered.**

32.     For the Court's convenience, CLL has categorized its services to the Trustee during the Application Period into four (4) categories, as follows:  (1) investigation of claims

9

against Levenfeld Parties; (2) preparing draft complaint and settling claims against the Levenfeld Parties; (3) BMO claim investigation and settlement; and (4) fee application preparation.

1.     **Investigation of Claims Against Levenfeld Parties.**

33.     During the Application Period, CLL performed 140.2 hours of services having a value of $49,942.00 on behalf of the Trustee related to the investigation of the Estate's claims against the Levenfeld Parties.  These services included:  (1) review of voluminous paper and electronic document productions; (2) preparing for and taking the Rule 2004 examination of Tuchman; (3) compelling Tuchman's attendance at a second examination session; and (4) interviewing other witnesses.

34.     A breakdown of the professionals providing services in this category is as follows:

| Professional | Title | Hourly rate | Total hours | Value of services |
|---|---|---|---|---|
| Jonathan M. Cyrluk | Partner | $450 | 71 | $31,950 |
| Steven C. Moeller | Associate | $260 | 69.2 | $17,992 |
| **Total** | | | 140.2 | $49,942.00 |

2.     **Preparation of Draft Complaint and Settlement With the Levenfeld Parties.**

35.     During the Application Period, CLL performed 56.7 hours of services having a value of $17,552.00 on behalf of the Trustee related to the preparation of a draft complaint against the Levenfeld Parties and ultimately negotiating and documenting a settlement with the Levenfeld Parties.  These services included:  (1) legal research regarding damages issues; (2) legal research regarding potential defenses; (3) preparing a draft complaint; (4) Preparing

10

settlement communications; (5) preparing tolling agreements; and (6) preparing final settlement documents.

36.     A breakdown of the professionals providing services in this category is as follows:

| Professional | Title | Hourly rate | Total hours | Value of services |
|---|---|---|---|---|
| Jonathan M. Cyrluk | Partner | $450 | 14.6 | $6,570.00 |
| Steven C. Moeller | Associate | $260 | 41.7 | $10,842.00 |
| Joshua S. Goldberg | Of Counsel | $350 | .4 | $140.00 |
| **Total** | | | 56.7 | $17,552.00 |

**3.     Investigation and Resolution of Potential BMO Claim Against the Estate.**

37.     In this Application Period, CLL performed 74.30 hours of services having a total of $26,295.00 investigating and resolving the potential claim by BMO against the Estate relating to the CABI. Those services included: (1) investigating BMO's original claim of mortgage interests in the Estate; (2) reviewing BMO's newly asserted claim of a secured interest by virtue of the CABI; (3) reviewing the public record to confirm BMO's releases of its mortgages after the Trustee sold various real property owned by the Debtor and satisfied portions of the Debtor's debt to BMO; (4) conducting legal research relating to CABIs; (5) preparing an adversarial complaint seeking to invalidate BMO's untimely claim under the CABI; and (6) negotiating a settlement of BMO's claims against the Estate.

38.     A breakdown of the professionals providing services in this category is as follows:

| Professional | Title | Hourly rate | Total hours | Value of services |
|---|---|---|---|---|
| Jonathan M. Cyrluk | Partner | $450 | 2.9 | $1,305.00 |
| Joshua S. Goldberg | Of Counsel | $350 | 71.40 | $24,990.00 |
| **Total** | | | 74.30 | $26,295 |

4. <u>**Fee Applications.**</u>

39.     In this Application Period, CLL performed 19 hours of services in connection with drafting and filing the Carpenter Lipps & Leland LLP's First Interim Application and this fee application for total value of $5,310.00.

40.     A breakdown of the professionals providing services in this category is as follows:

| Professional | Title | Hourly rate | Total hours | Value of services |
|---|---|---|---|---|
| Jonathan M. Cyrluk | Partner | $450 | 1 | $450.00 |
| Steven C. Moeller | Associate | $260 | 18 | $4,680.00 |
| **Total** | | | 19 | $5,310.00 |

D.     <u>**Expenses ($2,972.92).**</u>

41.     In this Application Period, CLL incurred $2,972.92 in expenses on the Trustee's behalf, mostly relating to the copying of the Estate's documents obtained from Levenfeld and the transcript fees  The Expenses are itemized in <u>**Exhibit 2(a)**</u>.

* * * * *

12

42.     For all of the foregoing reasons, CLL respectfully requests that the Court: (i) allow and award it:  (1) the Fees, consisting of $98,919.00 for legal services rendered to the Trustee, and (2) the Expenses, in the amount of $2,972.92, incurred in relation to such services (collectively, the "Requested Fees and Expenses"); and (ii) authorize and direct the Trustee to make prompt payment of the Requested Fees and Expenses to CLL from the Estate.

43.     A proposed order providing for the requested relief has been contemporaneously filed herewith.

## VI.  BASIS FOR THE REQUESTED RELIEF

### A.     Compensation Standards.

44.     Pursuant to Section 331 of the Bankruptcy Code, a professional person employed under Section 327 may generally apply for interim compensation from a bankruptcy court. *See* 11 U.S.C. § 331. Under Section 330(a)(1)(A), the Court may then award the professional person "reasonable compensation for actual, necessary services rendered[.]"  11 U.S.C. § 330(a)(1)(A).

45.     In determining the "extent and value of compensation," this Court has endorsed and applied the "'lodestar' approach—multiplying the number of actual and necessary hours reasonably expended by a reasonable hourly rate[.]"  *In re Wildman*, 72 B.R. 700, 712 (Bankr. N.D. Ill. 1987) (Schmetterer, J.); *accord In re UNR Indus., Inc.*, 986 F.2d 207, 210-11 (7th Cir. 1993) (lodestar approach provides fair compensation under Section 330); *see also City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S. Ct. 2638, 2641, 120 L. Ed. 2d 449 (1992) ("The 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence. We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee[.]").

46.     To arrive at an attorney's reasonable hourly rate, the Seventh Circuit has "emphasize[d] that section 330 . . . requires lawyers in bankruptcy matters to receive the same compensation as they would earn in performing similar services outside the context of bankruptcy."[2] *In re UNR Indus., Inc.*, 986 F.2d at 210 (emphasis added). The statutory aim is twofold:  (A) "that attorneys be reasonably compensated," and (B) "that future attorneys not be deterred from taking bankruptcy cases due to a failure to pay adequate compensation."  *UNR Indus., Inc.*, *supra*; *see also In re Farley, Inc.*, 156 B.R. at 210 ("The purpose of § 330 was to encourage bankruptcy practitioners not to leave the field in favor of more lucrative areas of the law.") (citing legislative history to Section 330).

47.     As a cornerstone of this market rate approach, the Seventh Circuit has repeatedly "stressed that the best measure of the cost of an attorney's time is what that attorney could earn from paying clients"—that is, the attorney's "standard hourly rate."  *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993); *see Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001) ("The attorney is entitled to his market rate and not some 'medieval just price' determined by the court.") (*quoting Steinlauf v. Continental Ill. Corp.* (*In re Continental Ill. Sec. Litig.*), 962 F.2d 566, 568 (7th Cir. 1992)).

48.     Therefore, the Seventh Circuit has mandated that an "attorney's actual billing rate . . . is considered to be the presumptive market rate."  *Small*, 264 F.3d at 707. Moreover, "[t]he lawyer's regular rate is strongly presumed to be the market rate for his or her services."  *Moriarty v. Svec*, 233 F.3d 955, 965 (7th Cir. 2000) (emphasis added), *cert. denied*, 532 U.S. 1066, 121 S. Ct. 2216, 150 L. Ed. 2d 209 (2001); *see Moriarty v. Svec*, 429 F.3d 710, 718 (7th

---

[2] "In section 330 and its legislative history Congress expressed its intent that compensation in bankruptcy matters be commensurate with the fees awarded for comparable services in non-bankruptcy cases." *In re UNR Indus., Inc.*, 986 F.2d at 208-09; *see In re Farley, Inc.*, 156 B.R. 203, 210 (Bankr. N.D. Ill. 1993) (Schmetterer, J.) (quoting same).

14

Cir. 2005) (quoting same); *see also Central States, S.E. & S.W. Areas Pension Fund v. Central Cartage Co.*, 76 F.3d 114, 116 (7th Cir. 1996) ("[A] lawyer's regular hourly fee, one counsel would charge 'to the meanest villain', is the market rate for that lawyer's services.") (emphasis added and quoting *Barrow v. Falck*, 977 F.2d 1100, 1106 (7th Cir. 1992)), *cert. denied sub nom. Mason & Dixon Lines v. Central States, S.E. & S.W. Areas Pension Fund*, 519 U.S. 811, 117 S. Ct. 56, 136 L. Ed. 2d 19 (1996).

49.     Under this principle, "lawyers who fetch above-average rates are presumptively entitled to them, rather than to some rate devised by the court." *Gusman*, 986 F.2d at 1150; *accord In re Spanjer Bros., Inc.*, 191 B.R. 738, 755 (Bankr. N.D. Ill. 1996) (Squires, J.) ("Generally, so long as the rates being charged are the applicant's normal rates charged in bankruptcy and non-bankruptcy matters alike, they will be afforded a presumption of reasonableness.").

50.     "Only if an attorney is unable to provide evidence of her actual billing rates should a [ ] court look to other evidence, including 'rates similar experienced attorneys in the community charge paying clients for similar work.'" *Mathur v. Board of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743 (7th Cir. 2003) (*quoting Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999)); *see also Gusman*, 986 F.2d at 1151 ("the ability to identify a different average rate in the community" is an impermissible reason to depart from an attorney's billing rate).

51.     Accordingly, because CLL bills the vast majority of its time at a set rate for paying clients and spends only a very small percentage of time on cases covered by fee-shifting statutes, "there is a strong presumption that such counsel could have billed out remaining time at the rate normally charged." *In re Farley, Inc.*, 156 B.R. at 211.

15

52.     Additionally, under generally accepted standards, if the services of an attorney employed under Section 327 are reasonably likely to benefit a debtor's estate, they should be compensable. *See Andrews & Kurth L.L.P. v. Family Snacks, Inc.* (*In re Pro-Snax Distributors, Inc.*), 157 F.3d 414, 421 (5th Cir. 1998); *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 71 (2d Cir. 1996); 2 Lawrence P. King, Collier on Bankruptcy ¶ 330.04 at 330-43 (15th ed. rev. 1999); *cf.* 11 U.S.C. § 330(a)(4)(A)(ii)(I). In this same context, "[n]ecessary services are those that aid the professional's client in fulfilling its duties under the Code." *In re Ben Franklin Retail Store, Inc.*, 227 B.R. 268, 270 (Bankr. N.D. Ill. 1998) (Barliant, J.).

53.     Thus, the determination of benefit to the Estate is not constrained to a dollar-for-dollar measurement, such that each dollar's worth of legal services must bring a cash dollar into the Estate in order to justify equivalent compensation to counsel. *See In re Lifschultz Fast Freight, Inc.*, 140 B.R. 482, 488 (Bankr. N.D. Ill. 1992) (Barliant, J.) ("Necessary services have always included services that aid in the administration of the case and help the client fulfill duties under bankruptcy law, whether or not those services result in a monetary benefit to the estate."); *accord In re Rite Way Reproductions, Inc.*, 1998 Bankr. LEXIS 1080, at *6-*7 (Bankr. N.D. Ill. Aug. 27, 1998) (Squires, J.) (concurring and further observing that "factors other than the economic impact on the estate of actions taken should be considered in the 'benefit to the estate' analysis"); *In re Caribou P'ship III*, 152 B.R. 733, 742 (Bankr. N.D. Ind. 1993) (same); *see, e.g., Ben Franklin Retail Store, Inc.*, *supra* ("[A] trustee (or interim trustee) performs necessary services when he carries out the duties set forth in § 704 of the Code."); *JMP-Newcor Int'l, Inc. v. CLL, Shaw, Fairweather & Geraldson* (*In re JMP-Newcor Int'l, Inc.*), 1998 U.S. Dist. LEXIS 987, at *13 (N.D. Ill. Jan. 23, 1998) (affirming bankruptcy court's award of fees to firm for

16

advising committee in reasonable way and in good faith despite lack of direct monetary benefit to debtor and estate).

54.     Instead, other factors, such as "whether the services rendered promoted the bankruptcy process or administration of the estate in accordance with the practice and procedures provided under the Bankruptcy Code and Rules for the orderly and prompt disposition of bankruptcy case and related adversary proceedings," also support awards of compensation. *In re Spanjer Bros., Inc.*, 191 B.R. at 748.

55.     As previously stated, the legal services for which CLL requests allowance and payment of compensation relate to the Application Period, and were rendered in connection with the Case and in the discharge of CLL's professional responsibilities as counsel to the Trustee during that time.

56.     CLL respectfully submits that such legal services have, in all respects, been reasonable, necessary, and beneficial to the Estate. In this connection, these services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the matters which they concerned.

57.     Further, they promoted the bankruptcy process and the administration of the Estate and supported the Trustee in fulfilling his statutory duties, all in accordance with the Bankruptcy Code and Rules.

58.     For purposes of this Application, CLL has computed the Fees on the basis of its discounted hourly rates applicable to the performance of bankruptcy legal services unrelated to the Case at the time that such services were rendered.

59.     CLL's average hourly billing rate for its attorneys—that is, its "lodestar" rate—
during the Application Period was $353.33.  The average amount billed per hour for all hours is
$340.86.

60.     During the Application Period, CLL's hourly billing rates for professionals
providing services in the Case ranged from $210 to $450. Based upon all of the foregoing, CLL
respectfully submits that the fair and reasonable value of the legal services that it rendered during
the Application Period is $98,919.00.

61.     In all these respects, the compensation that CLL has requested herein is
reasonable based upon the customary compensation charged by comparably-skilled practitioners
in either non-bankruptcy or bankruptcy cases.

62.     In rendering legal services to the Trustee, and in making this Application, CLL
respectfully submits that it has exercised its good faith billing judgment, and has not sought
compensation for "excessive, redundant, or otherwise unnecessary" time. *Hensley v. Eckerhart*,
461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40, 76 L. Ed. 2d 40 (1983).

63.     Finally, and with respect to whether CLL has demonstrated skill and experience
in the bankruptcy field pursuant to 11 U.S.C. § 330(a)(3)(E) (2006), CLL has attached its
attorneys' biographical information as **Exhibit 1**. The biographical information sets forth the
qualifications of the CLL attorneys listed herein, including their demonstrated skill and
experience in the bankruptcy field, both in the local Chicago market and in representation of
clients in matters nationwide.

**B.     Expense Reimbursement Standards.**

64.     With respect to reimbursing expenses, the Court may award a professional person
"reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(B).

18

65.    "An expense is necessary if it was incurred because it was required to accomplish the proper representation of the client." *In re Spanjer Bros., Inc.*, 191 B.R. at 749; *see In re Wildman*, 72 B.R. at 731.

66.    In this connection, CLL has requested reimbursement only for actual and necessary expenses incurred on the Trustee's behalf. CLL respectfully submits that these expenses were incurred because they were required to accomplish the proper representation of the Trustee and the furtherance of the Estate's interests in the Case. As previously indicated, CLL voluntarily reduced and limited its costs for photocopy expenses.

67.    CLL submits that the Expenses are reimbursable and do not constitute "overhead." Expenses which are overhead are not compensable because they are not built into the normal hourly rate charged by the billing professional. Convent Guardian, 03 Bankr. at 939; *Wildman*, 72 Bankr. at 731. Overhead expenses include "all continuous administrative or general costs or expenses incident to the operation of the firm which cannot be attributed to a particular client or cost." *In re Thacker*, 48 Bankr. 161, 164 (Bankr. N.D. Ill. 1985) (*quoting Jensen-Farley Pictures*, 47 Bankr. at 584).[3]

68.    In contrast, CLL charges for its out-of-pocket expenses only, including the incurred Expenses, to the particular clients who use them—in this instance, the Estate. As previously discussed, the incurred Expenses included herein are neither taken into consideration in determining, nor built as "overhead" into, CLL's hourly rates.

---

[3] *In re GSB Liquidating Corp.*, 1995 Bankr. LEXIS 1245, at *41 (Bankr. N.D. Ill. Aug. 21, 1995) (Squires, J.); *see In re Adventist Living Ctrs., Inc.*, 137 B.R. 701, 719 (Bankr. N.D. Ill. 1991) (Sonderby, J.) ("Expenses which are overhead and which are included in the hourly rate are not compensable."); *see also* 2 Lawrence P. King, Collier on Bankruptcy ¶ 330.05 at 3-330 (15th ed. rev. LEXIS 2006) ("Nonreimbursable overhead has been defined as regular administrative and general expenses incident to the operation of a business that cannot be attributed to a particular client or cost."); *see, e.g.*, *Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 127 F.3d 1398, 1402 (11th Cir. 1997) ("We accept that true 'overhead' costs—the ordinary operating costs of a firm, such as rent, heat, and the like, that cannot readily be attributed to a particular case—are not separately compensable as reimbursable expenses.") (emphasis added).

69.     Such "user fee" expense billing closely adheres to the Seventh Circuit's market

rate billing approach. In this respect, the Seventh Circuit's market approach to compensation

extends equally to the reimbursement of expenses, including those for online research. *See In re*

*Hunt's Health Care, Inc.*, 161 B.R. 971, 978 (Bankr. N.D. Ind. 1993); *accord In re Hillsborough*

*Holdings Corp.*, 127 F.3d at 1403-04 ("[I]f the cost of comparable services is a relevant factor in

setting compensation for services under [330](a)(1), it would logically seem also to be a relevant

factor in determining what categories to treat as reimbursable expenses under (a)(2).").

70.     For example, in *Continental Illinois Securities*, *supra*, the Seventh Circuit

reversed, and markedly criticized, the district court for disallowing online research expenses:

> The judge refused to allow the lawyers to bill any of their out-of-pocket expenses
> of using a computerized legal research service (LEXIS). He thought those
> expenses should be part of the lawyers' overhead. This was another clear error. If
> computerized research expenses were customarily treated in this fashion, lawyers'
> hourly rates would be even higher than they are, requiring an adjustment in the
> lodestar. But the more important point is that the market—the paying, arms'
> length market—reimburses lawyers' LEXIS and WESTLAW expenses, just as it
> reimburses their paralegal expenses, rather than requiring that these items be
> folded into overhead. Markets know market values better than judges do. And as
> with paralegals, so with computerized research: if reimbursement at market rates
> is disallowed, the effect will be to induce lawyers to substitute their own, more
> expensive time for that of the paralegal or the computer.

962 F.2d at 570 (emphasis added); *accord Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th

Cir. 1991) ("The attorneys also claim that the court erred in excluding the roughly $10,000

expended in computer-assisted research. The court felt that the expense 'is part of the amount

allowed for attorney's fees.' We must reverse the district court here. Computer-assisted research

fees—so long as reasonably incurred—in theory reduce the number of attorney hours otherwise

needed for (presumably) more time-consuming manual research and are therefore compensable[.

. . . as] expenses[.]").

20

71.    The Seventh Circuit has remained consistent on this subject and has repeatedly

required attorney reimbursement for computerized legal research charges. *See, e.g.*, *Uniroyal*

*Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516, 526 (7th Cir. 1995) ("Before we turn

our attention to the award of costs, we consider MTC's request that the costs of computerized

legal research be subtracted from the award. MTC claims that these expenses are better

characterized as overhead in the same way that maintenance of a law firm library is. We reject

this claim.") (emphasis added), *cert. denied*, 516 U.S. 1115, 116 S. Ct. 916, 133 L. Ed. 2d 846

(1996).

72.    Accordingly, lower courts in this District—including numerous judges of the

Bankruptcy Court—have adhered to this controlling precedent. *See, e.g.*, *Shula v. Lawent*, 2004

U.S. Dist. LEXIS 17662, at *7-*8 (N.D. Ill. Sept. 2, 2004) (Keys, J.) (fully allowing

"computerized legal research charges" as "costs" that were "both reasonable and necessary");

*Stamm v. Provident Life & Accident Ins. Co.*, 2000 U.S. Dist. LEXIS 5521, at *6 (N.D. Ill. Apr.

7, 2000) (Plunkett, J.) ("The Seventh Circuit has held that computerized legal research is

reimbursable as a reasonable expense of litigation."); *In re Price*, 143 B.R. 190, 199 (Bankr.

N.D. Ill. 1992) (Squires, J.) (allowing full reimbursement of Lexis expense), *aff'd sub nom. Price*

*v. United States* (*In re Price*), 42 F.3d 1068 (7th Cir. 1994); *In re Met-L-Wood Corp.*, 103 B.R.

972, 977 (Bankr. N.D. Ill. 1989) (Coar, J.) (allowing full reimbursement of computer research

charges as "'actual and necessary' expenses"), *aff'd*, 115 B.R. 133 (N.D. Ill. 1990); *In re Prairie*

*Cent. Ry. Co.*, 87 B.R. 952, 960 (Bankr. N.D. Ill. 1988) (Squires, J.) (following earlier opinions

of the Court to allow reimbursement of Lexis and Westlaw research charges); *In re Wildman*, 72

B.R. at 732 ("This Court adopts the view that computer research time that is both necessary and

attributable to a particular client or case is reimbursable under Section 330(a)(2).") (emphasis in

the original); *In re UAL Corp.*, Case No. 02-48191-ERW (Wedoff, C.J.), Order Approving

Quarterly Application Of Vedder, Price, Kaufman & Kammholz, P.C. For Allowance And

Payment Of Compensation And Reimbursement Of Expenses (Docket No. 15670) (allowing full

reimbursement of $8,085.93 in online legal research charges); *In re Eagle Food Centers, Inc.*,

Case No. 03-15299-CAD (Doyle, J.), Order Approving Third And Final Application Of

Skadden, Arps, Slate, Meagher & Flom LLP Seeking Final Allowance And Payment Of

Compensation And Reimbursement Of Expenses (Docket No. 1136) (allowing full expense

reimbursement of $21,888 in "Computer Legal Research" during case period) (unpublished

decision); *In re Conseco, Inc.*, Case No. 02-49672-CAD (Doyle, J.), Order Approving Final

Application Of Jenner & Block LLP For Allowance Of Administrative Claim For Compensation

And Reimbursement Of Expenses (Docket No. 6987) (allowing expense reimbursement of

$139,934.07, including Westlaw and Lexis charges); *In re Wickes, Inc.*, Case No. 04-02221-

BWB (Black, J.), Findings Of Fact And Conclusions Of Law In Support Of Order Awarding To

DLA Piper Rudnick Gray Cary US LLP, Attorneys For Wickes, Inc., For Allowance And

Payment Of Interim Compensation And Reimbursement Of Expenses (Docket No. 2935)

(allowing expense reimbursement of $15,505.32, including Westlaw and Lexis charges).

    73.    Finally, in seeking reimbursement for such costs, the Seventh Circuit has laid

down guidelines, and cautioned, that an applicant "[is] not required to submit a bill of costs

containing a description so detailed as to make it impossible economically to recover [ ] costs[,

but] [r]ather [ ] [is] required to provide the best breakdown obtainable from retained records."

*Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir.

1991).

74.     In seeking reimbursement for the Expenses herein, CLL has made every attempt to fully comply with these dictates.

## VII.  NOTICE

75.     Twenty-one days' notice of this Application, and service of the Application, has been provided to Patrick S. Layng of the Office of the United States Trustee, in care of Stephen G. Wolfe.

76.     Pursuant to Bankruptcy Rule 2002(a)(2) and (a)(6), and due to the expense that would be incurred by the Estate in serving this Application upon all creditors in the Case, CLL respectfully submits that sufficient cause exists to limit service of the Application to those parties registered for electronic service via the Court's CM/ECF system and Patrick S. Layng of the Office of the United States Trustee, in care of Stephen G. Wolfe, which parties are identified on the Certificate of Service ("Certificate") attached to the Notice of Carpenter Lipps & Leland LLP's Second and Final Application for Compensation and Reimbursement for Expenses as Special Counsel to Chapter 11 Trustee Gus A. Paloian for the Period of September 1, 2013 to March 1, 2015 (the "Notice").  All other parties who would normally be served are identified on the Service List attached to the Certificate and will receive a copy of the Notice via First Class U.S. Mail, postage prepaid.  As stated in the Notice, CLL will provide a copy of the Application to any party identified on the Service List who requests such a copy.  In addition, all other persons and entities requesting notices in the Case will receive notice of, and access to, the Application via CM/ECF.

77.     CLL respectfully requests that the above-described notice be deemed adequate and that the Court find that no other or further notice is necessary.

23

78.     For all the foregoing reasons, CLL respectfully submits that its requests that the Court:  (A) allow and award CLL on an interim basis the Fees and Expenses;  and (B) authorize the Trustee to make payment of such Fees and Expenses—and all previously-allowed-but-unpaid fees and expenses—to CLL from the Estate.

## VIII.  NO PRIOR REQUEST

79.     No prior request for the relief requested by this Application has been made to this Court or to any other court.

WHEREFORE Carpenter Lipps & Leland LLP respectfully requests that the Court enter an Order: (1) finding notice of the Application sufficient as given and that no other or further notice is necessary; (2) allowing and awarding CLL the requested Fees and Expenses; (3) authorizing the Trustee to make payment of such Fees and Expenses to CLL from the Estate; and (4) granting such other and further relief as this Court deems just and proper.

Dated:  April 14, 2015                    Respectfully submitted,

                                          GUS A. PALOIAN, not individually,
                                          but solely as the Chapter 11 Trustee of
                                          Dvorkin Holdings, LLC


                                          By:_____/s/ Jonathan M. Cyrluk_____
                                                  One of His Attorneys

Jonathan M. Cyrluk (Ill. Bar No. 6210250)
Joshua S. Goldberg (Ill. Bar No. 6277541)
Steven C. Moeller (Ill. Bar No. 6290263)
CARPENTER LIPPS & LELAND LLP
180 North LaSalle Street, Suite 2640
Chicago, Illinois 60601
(312) 777-4300 (phone)
cyrluk@carpenterlipps.com
goldberg@carpenterlipps.com
moeller@carpenterlipps.com

*Special Counsel to the Trustee*

24