# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Dvorkin Holdings, LLC, | ) | Case No. 12-31336 |
| | ) | |
| Debtor. | ) | Honorable Jacqueline P. Cox |
| | ) | |
| _____ | ) | Hearing: July 2, 2015 at 3:00 p.m. |

## NOTICE OF MOTION

     PLEASE TAKE NOTICE that on **July 2, 2015 at 3:00 p.m**., or as soon thereafter as counsel may be heard, we shall appear before the **Honorable Eugene R. Wedoff** in the courtroom usually occupied by him, Courtroom No. 744, in the United States Bankruptcy Court, 219 South Dearborn Street, Chicago, Illinois, or before any judge who may be sitting in his place or stead, and shall then and there present **FirstMerit Bank, N.A.'s Emergency Motion for Limited Stay Pending Appeal**, a copy of which is attached hereto and hereby served upon you, at which time and place you may appear as you see fit.

Dated: July 2, 2015                                  **FIRSTMERIT BANK, N.A.**

                                                            By:  /s/ Forrest B. Lammiman
                                                                    One of Its Attorneys

Forrest B. Lammiman (ARDC No. 6208632)
David L. Kane (ARDC No. 6277758)
**MELTZER, PURTILL & STELLE LLC**
300 South Wacker Drive, Suite 2300
Chicago, Illinois 60606
(312) 987-9900
(312) 987-9854 (facsimile)

{32988: 045: 01660082.DOC : }

# CERTIFICATE OF SERVICE

I, Forrest B. Lammiman, an attorney, certify that on July 2, 2015, I caused copies of the attached **Notice of Motion** and **FirstMerit Bank, N.A.'s Emergency Motion for Limited Stay Pending Appeal** to be served (i) via electronic notice on the parties noted in the Court's CM/ECF system and (ii) via messenger:

**(i)    Via Electronic Notice**

- Jonathan E Aberman    jaberman@vedderprice.com, ecfdocket@vedderprice.com
- R Scott Alsterda    rsalsterda@nixonpeabody.com
- Samantha Babcock    sbabcock@chuhak.com, rsaldivar@chuhak.com
- Gary I Blackman    gblackman@lplegal.com, nbailey@lplegal.com;ikropiewnicka@lplegal.com
- Kurt M Carlson    kcarlson@carlsondash.com, knoonan@carlsondash.com
- David Chroust    david.chroust@icemiller.com, debra.dipisa@icemiller.com
- William J Connelly    wconnelly@hinshawlaw.com
- Jonathan M. Cyrluk    cyrluk@carpenterlipps.com, haas@carpenterlipps.com
- Michael J. Davis    mdavis@bknmurray.com, davislaw80@gmail.com;llarson@bknmurray.com
- Jason J DeJonker    jdejonker@seyfarth.com, kmccarthy@seyfarth.com;chidocket@seyfarth.com
- Jeffrey W Finke    jwfinke@mindspring.com
- Robert M Fishman    rfishman@shawfishman.com, kjanecki@shawfishman.com
- Whitney Fogelberg    wfogelberg@vedderprice.com
- Matthew T. Gensburg    MGensburg@dandgpc.com, chidocket@gtlaw.com;ChiBkyDocket@gtlaw.com
- Joshua D. Greene    jgreene@springerbrown.com, iprice@springerbrown.com
- Michael J Gunderson    bankruptcy@chicago.com
- Christopher J Harney    charney@seyfarth.com, ctholen@seyfarth.com;chidocket@seyfarth.com
- Bret Harper    bharper@seyfarth.com, chidocket@seyfarth.com
- David A. Kallick    dkallick@tishlerandwald.com
- Gina B Krol    gkrol@cohenandkrol.com, gkrol@cohenandkrol.com;trotman@cohenandkrol.com;jneiman@cohenandkrol.com
- Patrick S Layng    USTPRegion11.ES.ECF@usdoj.gov
- David P Leibowitz    dleibowitz@lakelaw.com, czuniga@lakelaw.com;jstorer@lakelaw.com;ECF@lakelaw.com
- Emily N Masalski    masalski@dlec.com, emasalski@yahoo.com
- Colleen E McManus    cmcmanus@carlsondash.com, knoonan@carlsondash.com;kcarlson@carlsondash.com;asharp@carlsondash.com
- Kevin H Morse    khmorse@arnstein.com
- Paul T Musser    paul.musser@kattenlaw.com
- Matthew A Olins    maolins@duanemorris.com
- Gus A Paloian    gpaloian@seyfarth.com, jmcmanus@seyfarth.com

- Gus A Paloian   gpaloian@seyfarth.com, gpaloian@ecf.epiqsystems.com;gp@trustesolutions.net;jmcmanus@seyfarth.com
- Thomas M Paris   tp@tomparislaw.com
- Marc S Reiser   mreiser@shawfishman.com, mlites@shawfishman.com
- Jonathan N Rogers   jrogers@skdaglaw.com
- Rebecca D. Rosenthal   rosenthalr@gtlaw.com
- Peter A Siddiqui   peter.siddiqui@kattenlaw.com
- Jean Soh   jsoh@polsinelli.com, chicagodocketing@polsinelli.com
- James B. Sowka   jsowka@seyfarth.com, chidocket@seyfarth.com;ctholen@seyfarth.com
- Lawrence A. Stein   lstein@huckbouma.com, lkoster@huckbouma.com
- Peter D Sullivan   psullivan@hinshawlaw.com
- Jerry L Switzer   jswitzer@polsinelli.com, chicagodocketing@polsinelli.com
- William W Thorsness   wthorsness@vedderprice.com, ecfdocket@vedderprice.com;ahesla@vedderprice.com
- Michael Lee Tinaglia   mltinaglia@tinaglialaw.com, jmwretzky@tinaglialaw.com
- John R Weiss   jrweiss@duanemorris.com
- Stephen G Wolfe   steve.g.wolfe@usdoj.gov, jennifer.r.toth@usdoj.gov

(ii)   **Via Messenger**

| | |
|---|---|
| Gus A. Paloian<br>James B. Sowka<br>Bret Harper<br>Seyfarth Shaw LLP<br>131 S. Dearborn Street<br>Suite 2400<br>Chicago, IL 60603 | Gina B. Krol<br>Cohen & Krol<br>105 W. Madison Street<br>Suite 1100<br>Chicago, IL 60602 |

/s/ *Forrest B. Lammiman*

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Dvorkin Holdings, LLC, | ) | Case No. 12-31336 |
| | ) | |
| Debtor. | ) | Honorable Jacqueline P. Cox |
| | ) | |
| | ) | Hearing: July 2, 2015 at 3:00 p.m. |

### FIRSTMERIT BANK, N.A.'S EMERGENCY MOTION FOR LIMITED STAY PENDING APPEAL

FirstMerit Bank, N.A., by and through its undersigned attorneys, and pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby submits its motion for a limited stay pending its appeal of the Order Confirming Joint Amended Plan of Chapter 11 Trustee and Equity Interest Holders and Granting Related Relief (the "Confirmation Order") [Dkt. No. 787] entered on June 30, 2015, and in support thereof respectfully states as follows:

### INTRODUCTION

1. The Debtor commenced its Chapter 11 case by filing its voluntary petition for relief on August 7, 2012 (the "Petition Date") with the United States Bankruptcy Court for the Northern District of Illinois.

2. FirstMerit is a creditor of the Debtor by virtue of a series of commercial guaranties executed by the Debtor with respect to nine (9) arms-length commercial loans (collectively, the "FirstMerit Loans") made by FirstMerit and/or its predecessors in interest (collectively, "FirstMerit") to certain affiliates of the Debtor. The FirstMerit Loans were memorialized by, among other things, nine promissory notes executed by the respective

{32988: 045: 01660082.DOC : }

borrowers in favor of FirstMerit (collectively, the "Notes"). Pursuant to the contractual terms of the various documents memorializing the FirstMerit Loans, including, without limitation, the Notes, FirstMerit loaned the Debtor's affiliates the aggregate sum of at least $18,165,000.00.

3. In return for loaning these substantial sums, FirstMerit and the Debtor's affiliates contractually agreed that FirstMerit would be entitled to interest on the FirstMerit Loans at agreed-upon rates as reflected in the Notes. Specifically, with reference to the Notes as specifically identified in FirstMerit's initial and amended Proofs of Claim in this proceeding [Claim Nos. 12-1, 12-2], FirstMerit and the Debtor's affiliates agreed to the following contractual interest rates:

    a. Note #1: Initial variable interest rate of 5.12% with additional 6.00% default rate.

    b. Note #2: 4.00% interest rate with additional 5.00% default rate.

    c. Note #3: 5.50% interest rate with additional 5.00% default rate.

    d. Note #4: 5.50% interest rate with additional 5.00% default rate.

    e. Note #5: 5.50% interest rate with additional 5.00% default rate.

    f. Note #6: 5.50% interest rate with additional 5.00% default rate.

    g. Note #7: 5.50% interest rate with additional 5.00% default rate.

    h. Note #8: 5.50% interest rate with additional 5.00% default rate.

    i. Note #9: 5.50% interest rate with additional 5.00% default rate.

4. As of the Petition Date, FirstMerit was owed at least approximately $19,000,000.00 in connection with the FirstMerit Loans, of which at least approximately $15,693,038.21 was subject to guaranties executed by Debtor [Claim 12-1].

5. On March 31, 2015, Gus A. Paloian, not individually or personally, but solely in his capacity as the Chapter 11 Trustee of the Debtor's estate (the "Trustee"), and Francine Dvorkin, Beverly Dvorkin and Aaron Dvorkin (the "Equity Interest Holders," and together with

the Trustee, the "Plan Proponents") filed their joint amended Chapter 11 plan of reorganization (the "Joint Plan") [Dkt. 659].

6. Notably, the Joint Plan proposes to pay FirstMerit and creditors at the federal judgment rate of just 0.17%. By applying the federal judgment rate in the Joint Plan rather than the contractual rate of interest bargained for by FirstMerit, the Plan Proponents seek to wrongfully divert nearly $1.9 million from FirstMerit to the Equity Interest Holders. Specifically, FirstMerit is entitled to interest payments of at least $1,925,476 under the default rate of interest, or a minimum of $981,269 under the contract rate, of the Notes, but the Joint Plan proposes to pay a mere $48,709 in interest to FirstMerit. Simply put, despite a substantial surplus of funds in the Debtor's estate, the Joint Plan aims to deprive FirstMerit of somewhere between approximately $932,000 and $1.87 million.

7. On April 16, 2015, FirstMerit filed its Limited Objection of FirstMerit Bank, N.A. to (A) Amended Joint Chapter 11 Plan of Reorganization of Chapter 11 Trustee and Equity Interest Holders, and (B) the Proposed Disclosure Statement of Chapter 11 Trustee and Equity Interest Holders [Dkt. No. 685] (the "Limited Objection").[1] The Limited Objection objects to the Plan on the basis that it provides for the improper rate interest on FirstMerit's claims and therefore fails to satisfy the "best interests of creditors" tests codified by section 1129(a)(7) of the Bankruptcy Code.

8. On June 30, 2015, the Court overruled FirstMerit's Limited Objection and entered the Confirmation Order confirming the Joint Plan.

9. On July 2, 2015 FirstMerit filed its Notice of Appeal from the Confirmation Order pursuant to 28 U.S.C. § 158(a)(1) and Bankruptcy Rule 8001(a).

---

[1] The Limited Objection incorporates the arguments set forth in the ASM Capital IV, L.P. and ASM Capital V, L.P.'s Memorandum of Law Regarding Post-Petition Interest [Dkt. 684].

{32988: 045: 01660082.DOC : }    3

**RELIEF SOUGHT**

10. FirstMerit seeks the entry of an Order from this Court staying any distributions to or retention of assets by the Equity Interest Holders under the Joint Plan until the adjudication of its appeal of the Confirmation Order. Specifically, FirstMerit does not seek to stay distributions to creditors on their allowed claims. Rather, FirstMerit seeks only a limited stay to prevent the Trustee from distributing surplus funds in the Debtor's estate to the Equity Interest Holders or allowing them to retain assets until the FirstMerit appeal is decided.

**BASIS FOR RELIEF**

11. Pursuant to Bankruptcy Rule 8005:

> [T]he bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest.

Fed. R. Bankr. P. 8005.

12. In determining whether a stay is appropriate pending appeal, courts employ a four-part test: (1) whether the movant has demonstrated a significant probability of success on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether issuing the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Local 727, Int'l Bhd. of Teamsters v. Metro. Pier & Exposition Auth.*, No. 10 C 3484, 2011 U.S. Dist. LEXIS 66408, at *2 (N.D. Ill. June 22, 2011) (internal quotations omitted); *In re Mader*, 100 B.R. 989, 990 (N.D. Ill. 1989). "[A]nalysis of the four factors governing these stays is necessarily case-specific." *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999).

13. In determining the relative weight to be given to each of the four factors, the Seventh Circuit employs a "sliding scale approach" to the analysis, weighing the appeal's merit

against the harm issuing or denying the stay will inflict. *Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547 (7th Cir. 2007). Thus, analysis of the four factors is a balancing test of the equities, "weighting harm to a party by the merit of his case." *Id*. As the Seventh Circuit explained in *Sofinet*,

> These factors do not have absolute weights. Instead, this court uses a sliding scale approach, under which the more likely it is that plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh towards its side; the less likely it is the plaintiff will succeed, the more the balance need weigh towards its side. *Although there is thus a minimum threshold for likelihood of success, we held in Roland Machinery that it is a low one: it is enough that the plaintiff's chances are better than negligible . . . .* That does not mean, of course, that applicants for interim injunctive relief with relatively weak cases will always obtain injunctions. The less compelling the case on the merits, the greater the showing of irreparable harm must be.

*Sofinet*, 188 F.3d at, 707 (emphasis added) (internal citations omitted).[2] Thus, where a movant seeking stay has a weaker case under one of the factors, a stronger showing is required in the others. *See, e.g., Doe v. Cook County*, No. 99 C 3945, 2010 U.S. Dist. LEXIS 117086, at *5 (N.D. Ill. Nov. 3, 2010) ("The greater the harm, the less need to demonstrate a strong likelihood of success on the merits."); *Washington Metro. Area Transit Comm'n. v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977) ("the necessary showing on the merits is governed by the balance of equities as revealed through an examination of the other three factors.").

    A.    <u>Likelihood of Success on the Merits</u>

14. Under section 1129(a)(7)(A)(ii), the holder of an allowed claim that has elected not to accept the Joint Plan, as FirstMerit did not accept here, must receive on its claim not less than it would have received on its claim in a chapter 7 liquidation. In order to meet this requirement, creditors of a solvent estate must receive interest at the "legal rate" on their claims

---

[2] The sliding scale approach is the same for injunctive relief as it is for stays pending appeal. *Cavel*, 500 F.3d at 547.

{32988: 045: 01660082.DOC : }    5

pursuant to section 726(a)(5) of the Bankruptcy Code. This is a case of first impression in the Seventh Circuit, and authorities are generally split on the appropriate rate of interest to be applied in such circumstances. *See, e.g., In re Dow Corning Corp.*, 456 F. 3d 668 (6th Cir. 2006) (default rate); *In re Schoeneberg*, 156 B.R. 963 (Bankr. W.D. Texas 1993 (contract rate); *In re Shaffer Furniture Co.*, 68 B.R. 827 (Bankr. E.D. Pa. 1987) (state statutory rate); *but see In re Cardelucci,* 285 F.3d 1231 (9th Circuit 2002) (federal judgment rate).

15. A case of first impression provides no standard against which a court can determine the likelihood of success on the merits. In cases of first impression, therefore, the first factor of likelihood of success on the merits is afforded less weight than the other three factors, and is at best neutral. As explained by the *Mader* court:

> Suffice it to say, however, that we have not found, nor been cited to, any controlling authority on this precise question, and the novel legal issue presented is not one in which the debtor has no likelihood of success. This case will likely present an issue of first impression and, on balance, the likelihood of success on the merits does not appear to weigh too heavily in favor of, or against, any of the parties to this proceeding.

*Mader*, 100 B.R. at 991.

16. There is no controlling precedent in the Seventh Circuit that dictates which rate of interest must be applied to the claims of FirstMerit. Although the FirstMerit recognize that this Bankruptcy Court previously ruled against it on this issue, such ruling should not affect this Court's application of the "sliding scale" to the four factors. Indeed, courts in the Seventh Circuit facing similar analysis on a matter of first impression or important legal issue have declined to allow their prior rulings to color their determination of the "likelihood of success" factor:

> [T]he Court does not believe the appeal will succeed or it would not have ruled as it did. That does not mean, however, that the

> Court wholly discounts defendants' chances of succeeding … Given this unique factual scenario and the dearth of analogous cases, the Court acknowledges that defendants have some chance of success on appeal.

*Local 727*, 2011 U.S. Dist. LEXIS 66408, at *3.

> This case raises issues of first impression … The court of appeals may not perceive and analyze these issues in the same manner as this court. Although this court does not find a substantial likelihood that the [Appellant] will prevail on the merits, it recognizes that there is a distinct possibility its final judgment order may be reversed or modified on appeal.

*Jones v. Sullivan*, No. 87C7419, 1990 U.S. Dist. LEXIS 10559, at *5 (N.D. Ill. Aug. 13, 1990).

> We do not suggest that [the appellant] has a winning case or even a good case ((the Fifth Circuit in *Empacadora de Carnes de Fresnillo, S.A. de C.V. v. Curry*, 476 F.3d 326, 336-37 (5th Cir. 2007), recently upheld a similar Texas law against a challenge based on the commerce clause), but only that it has a good enough case on the merits for the balance of harms to entitle it to an injunction pending an expedited appeal that will enable the merits to be fully briefed and argued. It is important to note in this regard that the sliding-scale approach that governs [the appellant's] request for an injunction pending appeal does not require a "strong showing" that the applicant will win his appeal. The Supreme Court was precise in stating in *Hilton v. Braunskill*, *supra*, 481 U.S. at 776, 107 S. Ct. 2113, that among "the factors regulating the issuance of a stay are . . . whether the stay applicant has made a strong showing that he is likely to succeed on the merits." Certainly that is one of the factors to be considered, but it has to be balanced against the harms to the parties of granting or denying the injunction.

*Cavel,* 500 F.3d at 549; *see also Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979) ("Our reading of the district court's opinions and of the briefs indicates that there are serious legal questions presented. The district court itself stated, 'this is a case of initial impression wherein respectable minds might differ...'").

17. Indeed, as long as it is possible that FirstMerit's position has at least "some" merit, the Court <u>must</u> turn its consideration to the other three factors. *Doe v. Cook County*, 2010

U.S. Dist. LEXIS 117086 at *4-5; *Cavel*, 500 F.3d at 547 (7th Cir. 2007) (appeal must have "some though not necessarily great merit").

18. Even if this Court were to give substantial weight to the "likelihood of success" prong of the four-factor test, Appellants would still satisfy this element. Specifically, the inadequate and artificially low federal judgment rate of just 0.17% approved in the Joint Plan by the Confirmation Order is neither supported by applicable law nor by equity, and, vitally, provides a windfall to the Equity Interest Holders at the direct expense of FirstMerit.

19. Compliance with section 1129(b) requires a solvent debtor's plan to provide post-petition interest at the contract rate. The same "fair and equitable" standard that mandates the payment of post-petition interest to unsecured creditors in a solvent estate also dictates that it must be paid at the contract rate. A plan may be "crammed down" on a dissenting class of creditors only if it is "fair and equitable" as to that class of creditors. 11 U.S.C. § 1129(b)(2). With respect to unsecured creditors, the requirement that the plan be "fair and equitable" includes the mandate that the plan not violate the Absolute Priority Rule. 11 U.S.C. § 1129(b)(2)(B)(ii). As the Sixth Circuit noted, "the absolute priority rule applies with equal force when the debtor is solvent." *Dow Corning*, 456 F.3d at 678 (citing *Consol. Rock Prods. Co. v. DuBois*, 312 U.S. 510, 527 (1941)).

20. In applying the "fair and equitable" rule in a solvent debtor case, the Sixth Circuit held that a plan that does not recognize and enforce a creditor's contractual rights, including the right to receive interest at the contract rate, violates section 1129(b). *Id.*, 456 F.3d at 679. In the *Dow Corning* line of cases, the dissenting creditor class argued that a plan providing for post-petition interest at the federal judgment rate was not fair and equitable under section 1129(b) because it did not provide for interest at the contractual rates. *See Dow Corning*, 456 F.3d at 671.

The bankruptcy court found, and the Sixth Circuit affirmed, that a plan that did not provide for post-petition interest at the contract rate violated section 1129(b), reasoning that Congress did not intend to preclude creditors from being paid at the contract rate. *See Dow Corning*, 244 B.R. at 695 (concluding that "a plan which would pay the dissenting class pendency interest at the minimum rate pursuant to §§ 1129(a)(7)(ii)/726(a)(5) is not "fair and equitable" for purposes of § 1129(b).").

21. Federal courts have clearly recognized that, where, as here, there is a solvent estate, creditors are entitled to recover post-petition interest at their contractual rates. *See, e.g., In re Dow Corning Corp.*, 456 F. 3d 668, 680 (6th Cir. 2006) ("Courts in solvent debtor cases have *overwhelmingly concluded* that there is a presumption that the default interest rate should be allowed. We conclude, like the other courts to have considered this issue, that there is a presumption that default interest should be paid to unsecured claim holders in a solvent debtor case.") (emphasis added) (citations omitted); *In re Terry Limited Partnership*, 27 F. 3d 241, 243 (7th Cir. 1994) ("Creditors have a right to bargained-for post-petition interest and 'bankruptcy judges are not empowered to dissolve rights in the name of equity.'"); *Ruskin v. Griffiths*, 269 F.2d 827, 832 (2d Cir. 1959) (it is "the opposite of equity to allow the debtor to escape the expressly-bargained-for result of its act."); *Urban Comms. PCS Ltd. Partnership v. Gabriel Capital, L.P.*, 394 B.R. 325, 338-342 (S.D.N.Y. 2008) ("Debtors have failed to cite any case in which a court has found an equitable basis for reducing a lawful contractual rate prescribed by a contract where a debtor was able to pay all of its unsecured creditors.").

22. There is no dispute that the Debtor voluntarily agreed in its guaranties of the FirstMerit Loans to guarantee repayment thereof (in full or in part), including interest accruing on the Notes pursuant to their terms. Had the Debtor not filed its voluntary petition in this

action, FirstMerit would have been able to enforce its rights under the FirstMerit Loans, the Notes, and the Debtor's guaranties thereof in the Illinois circuit courts. In that scenario, FirstMerit would have been entitled to recovery of the amounts owed to it and all contractually-provided interest.

23. Alternatively, while FirstMerit believes that applicable law provides that it is entitled to recover post-petition interest at its contractual rates, to the extent that the Court believes that a single, consistent interest rate is necessary and/or appropriate for the efficient administration of the Debtor's estate, FirstMerit respectfully submits that the Illinois judgment rate of nine percent (9.0%) per annum, 735 ILCS 5/2-1303, would provide a substantially fairer outcome to creditors than the *de minimis* interest rate of 0.17% approved in the Joint Plan by the Confirmation Order.

24. As Plan Proponents, it is Debtor's Equity Interest Holders, and they alone, who benefit from decreasing FirstMerit's rate of post-petition interest from the contractual default rate of approximately 10.50% to the *de minimis* federal judgment rate of 0.17%. Equity should not be permitted to elevate itself above the contractual rights of creditors by obtaining a windfall merely because the Debtor opted to proceed in the Bankruptcy Court rather than the state courts.

25. Indeed, FirstMerit estimates that the 0.17% interest rate being urged by the Equity Interest Holders would deprive FirstMerit of nearly $1.9 million in post-petition interest that it would otherwise be entitled to pursuant to the terms of the Notes – with that value accruing instead to the benefit of the Equity Holders. There is simply no legal or equitable basis for FirstMerit to effectively having nearly $1.9 million stripped from its allowed claim merely so that the Debtor's Equity Holders may obtain a higher return from this bankruptcy proceeding.

26. As a case of first impression in the Seventh Circuit, the first factor of likelihood of success on the merits should be accorded minimal weight. That said, based upon the equities and the multitude of case law that conflicts with the Court's decision upholding the minimal interest rate of just 0.17% set forth in the Joint Plan instead of the negotiated contract rate, FirstMerit has a strong likelihood of success on the merits of its appeal.

B. Analysis of the Other Three Factors Under the Sliding Scale Approach Strongly Favors Imposition of a Stay

27. A movant is entitled to imposition of a stay where the factors other than "likelihood of success" weigh in its favor. As the *Mader* court held,

> While the "likelihood of success" factor does not appear to strongly weigh in favor of any of the instant litigants, the other three factors do weigh in favor of the debtor in varying degrees. There will be irreparable harm occasioned by the denial of issuance of this stay, no substantial harm will be suffered by other parties if the stay is issued, and there will be no harm to the public interest if the stay is granted.

*Mader*, 100 B.R. at 991; *see also Washington Metro. Area Transit*, 559 F.2d at 844 ("An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant.").

28. FirstMerit will suffer irreparable harm if the Court does not impose a limited stay pending appeal. By applying the federal judgment rate in the Joint Plan rather than the contractual rate of interest bargained for by FirstMerit, the Plan Proponents seek to wrongfully divert nearly $1.9 million from FirstMerit to the Equity Interest Holders. Once distributions under the Joint Plan are commenced, it will be near impossible to recoup the funds necessary to pay FirstMerit the contractual rate of interest on its claim to which it is entitled. Indeed, the Trustee has indicated that he plans to begin making distributions immediately – likely as soon as

today, July 2, 2015 – apparently in an effort to make "unscrambling the egg" impossible for FirstMerit. The Trustee's plans to immediately distribute the estate's funds – the very funds needed to pay FirstMerit's claims in full – constitute irreparable harm to FirstMerit on their face. *See, e.g., In re Tribune Co.*, 477 B.R. 465, 477 (Bankr. D. Del. 2012) (showing that if confirmation order is not stayed, distributions would be made and appeal would be equitably moot qualified as irreparable harm); *Rubin v. Pringle* (*In re Focus Media, Inc*.), 387 F.3d 1077, 1086 (9th Cir. 2004) (holding that bankruptcy court did not abuse its discretion by granting a preliminary injunction where the "specter" of irreparable harm existed if funds were dissipated); *In re Netia Holdings, S.A.,* 278 B.R. 344, 357 (Bankr. S.D.N.Y. 2002) (finding balance of hardships weighed in favor of granting a preliminary injunction and stating that "if the funds leave State Street, they will be distributed to diverse parties and be difficult or impossible to recover. This is of course a concrete example exemplifying the well-established principle that piecemeal distribution of the debtor's estate constitutes irreparable harm."); see also *Cavel*, 500 F.3d at 546 (the loss of one's primary business asset is sufficient to satisfy the "irreparable harm" factor).

29. By applying the federal judgment rate in the Joint Plan rather than the contractual rate of interest bargained for by FirstMerit, the Plan Proponents seek to wrongfully divert nearly $1.9 million from FirstMerit to the Equity Interest Holders. Specifically, FirstMerit is entitled to interest payments of at least $1,925,476 under the default rate of interest, or a minimum of $981,269 under the contract rate, of the Notes, but the Joint Plan proposes to pay a mere $48,709 in interest to FirstMerit. Simply put, despite a substantial surplus of funds in the Debtor's estate, the Joint Plan aims to deprive FirstMerit of somewhere between $932,000 and $1.87 million.

30. With respect to the third factor, the Trustee and the Debtor's estate will suffer literally no injury by the imposition of the stay. FirstMerit does not wish to prevent in any way the Trustee's distributions to creditors on their allowed claims. Indeed, FirstMerit supports the Trustee's plans to make immediate distributions of the principle balance owed to the holders of the allowed claims. The limited stay sought by FirstMerit herein is narrow: FirstMerit seeks imposition of a limited stay only to the extent necessary to prevent the Trustee from making distributions to the Equity Interest Holders or allowing them to retain assets on account of their interests. FirstMerit only seeks the imposition of a limited stay that requires the Trustee to retain a sufficient surplus of funds in the Debtor's estate to pay the full amount of FirstMerit's contractual interest claim, that is, roughly, $1.9 million.

31. Finally, the fourth factor of public interest weighs in favor of FirstMerit because the imposition of the stay will not harm the public interest. Indeed, a compelling public interest need not be shown – only that a stay will not harm the public interest. *Mader*, 100 B.R. at 991 ("this Court holds that no harm to the public interest would appear to flow from the issuance of this stay pending appeal, and on balance this factor would weigh in favor of the [party seeking the stay]"). Importantly, however, a significant public interest exists in upholding and honoring the very contractual rights that FirstMerit seeks to uphold here. *See, e.g.*, *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934) ("The occasion and general purpose of the contract clause are summed up in the terse statement of Chief Justice Marshall in *Ogden v. Saunders*, 12 Wheat. 213, 354, 355, 6 L.Ed. 606: 'The power of changing the relative situation of debtor and creditor, of interfering with contracts, a power which comes home to every man, touches the interest of all.") There can therefore be no doubt that the fourth public interest factor unequivocally favors FirstMerit.

32. Accordingly, because each the four factors used to evaluate whether a stay should be granted weigh heavily in favor of the FirstMerit, this Court should impose a narrow and limited stay to prevent distributions to the Equity Interest Holders and maintain the estate's surplus of funds pending the appeal.

WHEREFORE, FirstMerit seeks the entry of an Order from this Court staying any distributions to the Equity Interest Holders or allowing them to retain assets under the Joint Plan until the adjudication of its appeal of the Confirmation Order.

Dated: July 2, 2015               **FIRSTMERIT BANK, N.A.**

By:   /s/ *Forrest B. Lammiman*
        One of Its Attorneys

Forrest B. Lammiman (ARDC No. 6208632)
David L. Kane (ARDC No. 6277758)
**MELTZER, PURTILL & STELLE LLC**
300 South Wacker Drive, Suite 2300
Chicago, IL 60606
(312) 987-9900
(312) 987-9854 (facsimile)