**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-31336-JPC |
| | ) | |
| **DVORKIN HOLDINGS, LLC,** | ) | Chapter 11 |
| | ) | |
| | ) | Hon. Jacqueline P. Cox |
| **Debtor.** | ) | Hearing Date:  November 30, 2017 |
| | ) | Hearing Time: 9:30 a.m. |

**COVER SHEET FOR ELEVENTH AND FINAL APPLICATION OF
SEYFARTH SHAW LLP FOR COMPENSATION AND REIMBURSEMENT
OF EXPENSES AS COUNSEL TO CHAPTER 11 TRUSTEE GUS A. PALOIAN
FOR THE PERIOD OF NOVEMBER 1, 2016 THROUGH NOVEMBER 6, 2017**

Name of Applicant:                          Seyfarth Shaw LLP

Authorized to Provide
Professional Services to:                   Chapter 11 Trustee Gus A. Paloian

Date of Appointment:                        November 5, 2012, retroactive to October 3, 2012

Period for which Compensation
and Reimbursement is Sought:                November 1, 2016 through November 6, 2017

Amount of Interim Compensation
Sought:                                     $  114,063.50

Amount of Interim Expense
Reimbursement Sought:                       $        606.72

Amount of Final Compensation Sought:        $4,460,843.50

Amount of Final Expense
Reimbursement Sought:                       $    93,995.74

This is an:          Final     _X_     Interim Application.     Prior Applications:

**SEYFARTH'S PRIOR INTERIM FEE APPLICATIONS IN CHAPTER 11 CASE**

| Interim App. | Filing Date & Docket Number(s) | Interim Period Covered | Total Fees Requested & [Allowed] | Total Expenses Requested & [Allowed] | Aggregate Allowed Fees & Expenses | Fees & Expenses Paid to Date |
|---|---|---|---|---|---|---|
| 1st | 4/14/13 [287] | 10/3/12 - 3/31/13 | $676,704.00 [$676,704.00] | $25,118.36 [25,118.36] | $701,822.36 | $701,822.36 |
| 2nd | 10/2/13 [357] | 4/1/13 - 8/31/13 | $640,171.50 [$640,171.50] | $17,311.98 [$17,311.98] | $657,483.48 | $657,483.48 |
| 3rd | 4/11/14 [460] | 9/1/13 - 2/28/14 | $509,734.00 [$509,734.00] | $11,503.71 [$11,503.71] | $521,237.71 | $521,237.71 |
| 4th | 8/4/14 [509] | 3/1/14 - 6/30/14 | $399,553.50 [$399,553.50] | $7,400.65 [$7,400.65] | $406,954.15 | $406,954.15 |
| 5th | 11/26/14 [549] | 7/01/14 - 10/31/14 | $373,576.00 [$373,576.00] | $4,563.23 [$4,563.23] | $378,139.23 | $378,139.23 |
| 6th | 4/13/15 [675] | 11/1/14 - 2/28/15 | $ 313,154.00 [$313,154.00] | $ 4,683.48 [$4,683.48] | $317,837.48 | $317,837.48 |
| 7th | 7/8/15 [809] | 3/1/15 - 6/30/15 | $655,424.50 [$655,361.50] | $4,271.59 [4,271.59] | $659,633.09 | $659,633.09 |
| 8th | 11/25/15 [912] | 7/1/2015 - 10/31/15 | $191,316.50 [$191,316.50] | $2,052.12 [$2,052.12] | $193,368.62 | $193,368.62 |
| 9th | 4/12/16 [961] | 11/1/15 - 3/31/16 | $272,030.00 [$272,030.00] | $5,449.46 [$5,449.46] | $277,479.46 | $277,479.46 |
| 10th | 11/16/16 [994] | 4/1/16 - 10/31/16 | $315,255.50 [$315,179.00] | $11,034.44 [$11,034.44] | $326,213.44 | $326,213.44 |
| | | | | **TOTAL** | **$4,440,169.02** | **$4,440,169.02** |

Dated: November 9, 2017

Respectfully submitted,

GUS A. PALOIAN, not individually or personally, but solely in his capacity as the Chapter 11 Trustee of Debtor's Estate

By:/s/ Bret M. Harper
   Gus A. Paloian (6188186)
   Bret M. Harper (6299968)
   SEYFARTH SHAW LLP

41199155v.1

233 South Wacker Drive
Suite 8000
Chicago, Illinois 60606
Telephone:  (312) 460-5000
*Counsel to Chapter 11 Trustee Gus A. Paloian*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 12-31336-JPC |
| | ) | |
| **DVORKIN HOLDINGS, LLC,** | ) | Chapter 11 |
| | ) | |
| **Debtor.** | ) | Hon. Jacqueline P. Cox |
| | ) | Hearing Date:  November 30, 2017 |
| | ) | Hearing Time: 9:30 a.m. |

## NOTICE OF ELEVENTH AND FINAL APPLICATION FOR COMPENSATION AND EXPENSE REIMBURSEMENT OF SEYFARTH SHAW LLP AND HEARING

**TO:     PARTIES ON ATTACHED SERVICE LIST**

**PLEASE TAKE NOTICE** that on November 9, 2017, Seyfarth Shaw LLP (the

"Applicant") filed its **Eleventh and Final Application for Compensation and Reimbursement**

**of Expenses of Seyfarth Shaw LLP as Counsel to Chapter 11 Trustee Gus A. Paloian for**

**the Period of November 1, 2016 through November 6, 2017** (the "Application") with the

United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the

"Bankruptcy Court").  In the Application, Applicant seeks final compensation in the amount of

$114,063.50 and final reimbursement of expenses in the amount of $606.72. The Application is

being served contemporaneously with this Notice upon each party receiving notice in the above-

captioned case pursuant to the Bankruptcy Court's CM/ECF system.  All other parties may

obtain copies of the Application upon request to: Ms. Jennifer M. McManus, Seyfarth Shaw

LLP, 233 South Wacker Drive, Suite 8000, Chicago, Illinois 60606; jmcmanus@seyfarth.com.

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider the Application will

be held before the Honorable Jacqueline P. Cox, United States Bankruptcy Judge for the United

States Bankruptcy Court for the Northern District of Illinois, Eastern Division, in the courtroom

normally occupied by Her Honor, Courtroom 680, located at 219 South Dearborn Street,

Chicago, Illinois 60604, on **November 30, 2017, at 9:30 a.m. prevailing Central Time**, or as

soon thereafter as the undersigned counsel may be heard.

Dated:  November 9, 2017

Respectfully submitted,

GUS A. PALOIAN, not individually or
personally, but solely in his capacity as the
Chapter 11 Trustee of Debtor's Estate

By:/s/ Bret M. Harper                        

    Gus A. Paloian (6188186)
    gpaloian@seyfarth.com
    Bret M. Harper (6299968)
    bharper@seyfarth.com
    SEYFARTH SHAW LLP
    233 South Wacker Drive
    Suite 8000
    Chicago, Illinois 60606
    Telephone:  (312) 460-5000

    *Counsel to Chapter 11 Trustee Gus A.*
    *Paloian*

2

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on this 9th day of November, 2017, pursuant to Section II, B, 4 of the Administrative Procedures for the Case Management/Electronic Case Filing System and Fed.R.Civ.P. 5(a), he caused a copy of the attached:

1.      **Notice of Eleventh and Final Application for Compensation and Expense Reimbursement and Hearing** and **Eleventh and Final Application for Compensation and Reimbursement of Expenses of Seyfarth Shaw LLP as Counsel to Chapter 11 Trustee Gus A. Paloian for the Period for November 1, 2016 through November 6, 2017** to be served (1) electronically upon those parties who receive notice through the ECF system, which parties are so noted on the attached Service List; and (2) via First Class U.S. Mail, postage prepaid, upon Patrick S. Layng, Office of the U.S. Trustee, Region 11, 219 S. Dearborn Street, Room 873, Chicago, IL  60604; and

2.      **Notice of Eleventh and Final Application for Compensation and Expense Reimbursement of  Seyfarth Shaw LLP and Hearing** to be served via First Class U.S. Mail, postage prepaid, upon each of the parties so noted on the attached Service List.


/s/ Bret M. Harper
Bret M. Harper

41199155v.1

**DVORKIN HOLDINGS, LLC**
**Case No. 12-31336**

## CM/ECF ELECTRONIC MAIL DISTRIBUTION

| | |
|---|---|
| Jonathan E. Aberman | jaberman@vedderprice.com, ecfdocket@vedderprice.com |
| R. Scott Alsterda | rsalsterda@nixonpeabody.com |
| Samantha Babcock | sbabcock@chuhak.com; rsaldivar@chuhak.com |
| Gary I. Blackman | gblackman@lplegal.com; slevandowski@lplegal.com; druiz@lplegal.com |
| Timothy W. Brink | timothy.brink@dlapiper.com; docketingchicago@dlapiper.com; william.guthrie@dlaiper.com |
| Kurt M. Carlson | kcarlson@carlsondash.com, knoonan@carlsondash.com |
| David Chroust | david.chroust@icemiller.com |
| William J. Connelly | wconnelly@hinshawlaw.com; psullivan@hinshawlaw.com |
| Jonathan M. Cyrluk | cyrluk@carpenterlipps.com; haas@carpenterlipps.com |
| Michael J. Davis | mdavis@archerbay.com; davislaw80@gmail.com; jgreene@archerbay.com; llarson@archerbay.com |
| Jeffrey W. Finke | jwfinke@mindspring.com |
| Robert M. Fishman | rfishman@shawfishman.com |
| Whitney Fogelberg | wfogelberg@vedderprice.com |
| Matthew T. Gensburg | gensburgm@gtlaw.com; rosenthalr@gtlaw.com chidocket@gtlaw.com; ChiBkyDocket@gtlaw.com; greenbergc@gtlaw.com; sullivanka@gtlaw.com |
| Joshua D. Greene | jgreene@davisgreenelaw.com |
| Michael J. Gunderson | mgunderson@gundersontharp.com; lopez@gundersontharp.com |
| David A. Kallick | dkallick@tishlerandwald.com |
| Robin K. Kish | rkish@kdaolaw.com |
| David L. Kane | dkane@mpslaw.com; dnichols@mpslaw.com; mpslawllc@gmail.com; jlitwin@mpslaw.com |
| Gina B. Krol | gkrol@cohenandkrol.com; jhazdra@cohenandkrol.com; pmchugh@cohenandkrol.com |
| Forrest B. Lammiman | flammiman@mpslaw.com; dkane@mpslaw.com; srogovin@mpslaw.com; dnichols@mpslaw.com; mpslawllc@gmail.com; jlitwin@mpslaw.com |
| Patrick S. Layng | USTPRegion11.ES.ECF@usdoj.gov |
| David P. Leibowitz | dleibowitz@lakelaw.com; czuniga@lakelaw.com; jstorer@lakelaw.com; ecf@lakelaw.com |
| Emily N. Masalski | masalski@dlec.com, emasalski@yahoo.com |
| Colleen E. McManus | cmcmanus@carlsondash.com; kcarlson@carlsondash.com; knoonan@carlsondash.com; jbubacz@carlsondash.com |
| Kevin H. Morse | khmorse@arnstein.com |
| Paul T. Musser | paul.musser@kattenlaw.com |
| Matthew A. Olins | maolins@duanemorris.com |
| Marc S. Reiser | mreiser@shawfishman.com; jhampton@shawfishman.com |
| Thomas M. Paris | tp@tomparislaw.com |
| Rebecca D. Rosenthal | rosenthalr@gtlaw.com |
| Peter A. Siddiqui | peter.siddiqui@kattenlaw.com |
| Jean Soh | jsoh@polsinelli.com; jswitzer@polsinelli.com |
| Lawrence A. Stein | lstein@huckbouma.com; lkoster@huckbouma.com |

| | |
|---|---|
| Peter D. Sullivan | psullivan@hinshawlaw.com |
| Jerry L. Switzer | jswitzer@polsinelli.com, chicagodocketing@polsinelli.com |
| William W. Thorsness | wthorsness@vedderprice.com; ecfdocket@vedderprice.com |
| Michael L. Tinaglia | mltinaglia@tinaglialaw.com; jmwretzky@tinaglialaw.com |
| John R. Weiss | jrweiss@duanemorris.com |
| Stephen G. Wolfe | steve.g.wolfe@usdoj.gov; jennifer.r.toth@usdoj.gov |

41199155v.1

## SERVICE LIST

### VIA UNITED STATES MAIL

Patrick S. Layng
c/o Stephen G. Wolfe
Office of the U.S. Trustee, Region 11
219 S. Dearborn Street, Room 873
Chicago, IL  60604

Tishler & Wald (not deliverable at this address)
200 S. Wacker Drive, Suite 3000
Chicago, IL  60606

North Shore Bank
7800 Lincoln Avenue
Skokie, IL  60077

Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

1 Transam Plaza (Oakbrook Terrace) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

1000 N. Halsted LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

1055 W 175th (Homewood) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

1101 Tower Rd (Schaumburg) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

11824 S.W. Highway (Palos Heights) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Dvorkin Holdings, LLC
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

A-Plus Plumbing, Inc.
733 W. Estes Avenue
Schaumburg, IL  60193

Blue Star Holdings LLC
c/o Michael Tuchman
2 N. LaSalle Street, Suite 1300
Chicago, IL  60602

Dahl & Bonadies, LLC
James E. Dahl
30 N. LaSalle Street, Suite 1500
Chicago, IL  60602

MB Financial Bank, N.A.
Attn:  Mark Kosminskas
6111 N. River Road
Rosemont, IL  60018

McGrath Lexus of Westmont
500 E Ogden Avenue
Westmont, IL  60559-1228

Toyota Motor Credit Corporation (TMCC)
P.O. Box 8026
Cedar Rapids, IA  52408-8026

Dan Air Holdings, L.L.C.
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

Daniel Dvorkin
1636 Highland Avenue
Lombard, IL  60148

1203 Maple (Lisle), LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

1230 S. Highland (Lombard) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

125-165 W. Dundee Road (Buffalo Grove),
LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

1275 Davis (Elgin), L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

1611 Stewart Street LLC
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL  60602

1920 S. Highland (Lombard), L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

1941 Selmartin (Aurora), L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

2150 N. Clybourn (Chicago) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

2200 South Main (Lombard) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Daniel G. Dvorkin Insurance Trust
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

Daniel G. Dvorkin Revocable Trust
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

Daniel Hyman
Millenium Properties
200 W. Madison Avenue, 36th Floor
Chicago, IL  60606

DDL Property Limited
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Debi Kight
DDL Property
One Trans Am Plaza Dr., Suite 120
Oakbrook Terrace, IL  60181

Department of the Treasury
Internal Revenue Service
P.O. Box  7346
Philadelphia, PA  19101-7346

DH-EK Management Corporation
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

Dupage Office Leasing, Inc.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL  60602

Dvorkin Children's Trust dated March 5, 1998
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

41199155v.1

246 E. Janta (Lombard), LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

EIS Kalt LLC
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

25210 W. Reed Street (Channahon), LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Epaminodas Karvelas
Christopher Karvelas
Emersons Street Grill, Inc.
113 S. Emerson
Mt. Prospect, IL  60056

328 S. Jefferson (Chicago) SG, L.L.C.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Esther Jackson
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

3330-40 West Dundee (Northbrook) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Farnsworth (Aurora) Bisel, L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

444 N. Wabash (Chicago), LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Farnsworth (Aurora) Lando LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

4949-5001 W. Oakton Residential Financing
(Skokie) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Flossmoor - Plaza DH Holdings, L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

4949-5001 W. Oakton Retail (Skokie) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Flossmoor Commons (Professional), L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

560 West Washington (Chicago), L.L.C.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Flossmoor Commons (Retail), L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

606 W. Roosevelt (Chicago), L.L.C.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Francine Dvorkin Revocable Trust
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

3

6200 N. Rockwell (Chicago) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

Glenwood Residential, L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

640-650 Lake Street, L.L.C.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Golden Holdings, L.L.C.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

920 Roosevelt (West Chicago), L.L.C.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Goldfarb Properties, LLC
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL 60181

956 N. Neltnor (West Chicago), L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

Greystone Associates, Inc.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

975 Nerge (Roselle) LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

Highland Avenue Qualified Personal
Residence Trust
One Trans Am Plaza Drive, Suite 120
Oakbrook Terrace, IL 60181

Aaron Trust
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL 60181

Inverarry Family Trust
1220 Rudolph Dr., Apt. 2F
Northbrook, IL 60062

Aaron's Children's Trust
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL 60181

Jackie Cullen
1 Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL 60181

Ariel Weissberg
Weissberg & Associates, Ltd.
401 S. LaSalle St., Suite 403
Chicago, IL 60605

Jackson Trust
Esther/Julianne Jackson
4075 W. Bonanza Drive
Beverly Hills, FL 34465

Auto Gallery Chicago, LLC
Peter Alvarez
12 W. Factory Road
Addison, IL 60101

Kinman Enterprises, L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

Ambry Estates Joint Venture (Lynwood), LLC
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Steve Kling
Colliers International
6250 N. River Road, Suite 11-100
Rosemont, IL 60018

4

American Equine Insurance Group, LTD.
Michael J. Morrisroe
114 S. Bloomingdale Road
Bloomingdale, IL  60108

Ameriprise Financial Services, Inc.
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE  19801

Barone & Jenkins, P.C.
Anthony G. Barone
635 Butterfield Rd., Suite 145
Oakbrook Terrace, IL  60181

Barry Milowitz
The Milowitz Office
3 Wyldwood
Tarrytown, NY  10591

Beit Dan, L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Belmont Financial Group, Inc.
Belmont Bank & Trust
BFKPN Corporate Services Inc.
8250 W. Belmont Avenue
Chicago, IL  60634

Beverly Dvorkin
700 W. Grand Avenue, Apt. 5
Chicago, IL  60654-5173

Beverly Children's Trust
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL 60181

Blue Star Gearing, LLC
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Leah - Beverly Trust
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

Levenfeld Pearlstein
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL  60602

- Lynwood DT Investors LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Lynwood Land Company, L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

M. Morgan Trust
23123 N. Cardenas
Sun City W, AZ  85375

Matteson, LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL  60505

Midland Equities
Charles Hold
One Trans Am Plaza Drive
Suite 310
Oakbrook Terrace, IL  60181

Nigel and Ellen Rhodes
1980 W. Downer Place
Aurora, IL  60508

North Shore Community Bank & Trust
c/o Robert J. Huguelet Jr., PC
10749 Winterset Drive
Orland Park, IL  60467

41199155v.1

Blue Star Properties, Inc.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Bruce Teitelbaum
1363 Shermer Rd., Ste. 212
Northbrook, IL 60062

BT Holdings, LLC
Rakik Boughadou
1200 Harger Road
Suite 325
Oak Brook, IL 60523

Caryn Kolton
c/o Keith Kolton
2929 W. Balmoral
Chicago, IL 60625

Channahon Plaza, L.L.C.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Chicago Commercial, L.L.C.
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

Craig Golden
Blue Star Properties, Inc.
600 W. Van Buren Street, Suite 1000
Chicago, IL 60607

Craig Yale
2801 Lakeside Drive
Suite 207
Bannockburn, IL 60015

Texas 1845 LLC
Michael Mulcaby
Vedder Price P.C.
222 North LaSalle Street, Suite 2600
Chicago, IL 60601

Northgate Plaza (Aurora), L.L.C.
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL 60181

BDO USA LLP
Sharyl A. Ross, CPA
9500 Bryn Mawr Ave., Suite 300
Rosemont, IL 6018-5257

Oak West (Oakbrook Terrace) Office LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

Oxford Bank & Trust
Attn: Devon J. Eggert
Freeborn & Peters LLP
311 S. Wacker Drive, Suite 3000
Chicago, IL 60606

Plaza (Arlington Heights) Office LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

Private Bank & Trust Co.
PrivateBank Corp.
James Thompson, Managing Director
The Private Bank and Trust Company
70 W. Madison, Suite 200
Chicago, IL 60602

Rachel Dvorkin
undeliverable as addressed
1653 Pebblebeach Circle
Elgin, IL 60123

Sterling 18th Street LLC
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Sierra Office Solutions LLC
Steven D. Titiner
1700 N. Farnsworth Avenue, Suite 11
Aurora, IL 60505

Star Park LLC
c/o Richard M. Goldwasser
Schoenberg Finkel Newman & Rosenberg
222 S. Riverside Plaza, Suite 2100
Chicago, IL  60606


Schaumburg Bank & Trust Company
c/o Samantha Licker
Garfield & Merel, Ltd.
180 N. Stetson, Suite 1300
Chicago, IL 60601

Dyek-O'Neal, Inc. returned undel. as addressed
P.O. Box 13370
Arlington, TX  76094


Chicago Title Land Trust Company as Trustee
for Trusts
C T Corporation System
208 S. LaSalle Street, Suite 814
Chicago, IL 60604
and
Robert Kuzma
10 S. LaSalle, Suite 2750
Chicago, IL 60603

Re:
Land Trust 34383
Land Trust 1636-Y
Land Trust 42470
Land Trust 43314
Land Trust 44203
Land Trust 44204
Land Trust 94-6075
Land Trust 95-6296


John Robert Weiss
DUANE MORRIS LLP
190 S. LaSalle St., Suite 3700
Chicago, IL 60603-3433

Stoller-Lieberman Holdings
undeliverable as addressed
James Stoller
The Building Group
1045 W. Lawrence Avenue
Chicago, IL 60640


Zifco Corporation
Ed Zifkin
513 Central Avenue, Suite 400
Highland Park, IL  60035


David D. O'Sullivan
Springer, Brown, Covey, Gaertner & Davis,
LLC
1755 S. Naperville Road, Suite 200
Wheaton, IL  60189


Eatman Holdings, L.L.C.
Michael J. Tuchman
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602
and
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL  60181

Re:
Chicago Commercial
Cross Creek Office Center
Flossmoor Commons (Professional), L.L.C.
Flossmoor Commons (Retail), L.L.C.
Glen Ellyn Venture Trust 37330
1920 Highland
Matteson
Palos Heights
Selmarten
Trans Am Plaza


Loran Eatman
Dvorkin Holdings, LLC
One Trans Am Plaza Drive
Suite 120
Oakbrook Terrace, IL 60181

41199155v.1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-31336-JPC |
| | ) | |
| **DVORKIN HOLDINGS, LLC,** | ) | Chapter 11 |
| | ) | |
| **Debtor.** | ) | Hon. Jacqueline P. Cox |
| | ) | Hearing Date:  November 30, 2017 |
| | ) | Hearing Time: 9:30 a.m. |

**ELEVENTH AND FINAL APPLICATION FOR COMPENSATION
AND REIMBURSEMENT OF EXPENSES AS  COUNSEL TO
CHAPTER 11 TRUSTEE GUS A. PALOIAN FOR THE PERIOD
<u>FROM NOVEMBER 1, 2016 THROUGH NOVEMBER 6, 2017</u>**

Pursuant to Sections 105(a), 330 and 331 of the United States Bankruptcy Code, 11

U.S.C. §§ 101 through 1330, *as amended* (the "<u>Bankruptcy Code</u>"), Seyfarth Shaw LLP

("<u>Seyfarth</u>"), as counsel to Gus A. Paloian, not individually or personally, but solely in his

capacity as the duly-appointed Chapter 11 Trustee (the "<u>Trustee</u>") of the bankruptcy estate (the

"<u>Estate</u>") of the above-captioned debtor (the "<u>Debtor</u>"), hereby submits its Eleventh and Final

Application for Compensation and Reimbursement of Expenses (the "<u>Application</u>") for legal

services performed, and expenses incurred, during the period from November 1, 2016 through

November 6, 2017 (the "<u>Application Period</u>").  In support of this Application, Seyfarth

respectfully represents, as follows:

## I.  <u>INTRODUCTION</u>

1.     Seyfarth makes this Application pursuant to:  (A) Sections 105(a), 330 and 331 of

the Bankruptcy Code;  (B) Rule 2016 of the Federal Rules of Bankruptcy Procedure

(singularly, a "<u>Rule</u>";  collectively, the "<u>Rules</u>");  (C) certain applicable provisions of the

Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses

Filed Under 11 U.S.C. § 330, adopted by the Office of the United States Trustee (the

"<u>Guidelines</u>");  (D) Rule 5082-1 of the Local Bankruptcy Rules for the United States

Bankruptcy Court for the Northern District of Illinois (the "<u>Court</u>");  (E) that certain Order of

the Court entered in the above-captioned case (the "Case") on November 5, 2012, authorizing

Seyfarth's retention as counsel to the Trustee retroactive to October 3, 2012;  and (F) other

applicable case law.

2.      In making this Application, Seyfarth respectfully seeks an Order of this Court

awarding and directing payment from the Estate of:  (1) final allowance of compensation in the

amount of $114,063.50 for professional services rendered by Seyfarth on behalf of the Trustee

during the Application Period;  and (2) final reimbursement of actual and necessary expenses

in the amount of $606.72 incurred by Seyfarth in rendering such professional services to the

Trustee in the Case.  To date, the Trustee has collected $32,795,217.86, for the benefit of the

Estate, in addition to certain other valuable assets including notes, mortgages, and ownership

interests in certain related entities which own real property, and as of November 9, 2017 holds

$1,551,481.89.

## II.  JURISDICTION

3.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is before the Court pursuant to 28 U.S.C. § 157 and Internal Operating

Procedure 15(a) of the United States District Court for the Northern District of Illinois.  Venue

of this Case and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and

1409. Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(1)

and (b)(2)(A) and/or (O).

## III.  BACKGROUND

4.      On August 7, 2012, the Debtor initiated this case by filing a voluntary petition for

relief under Chapter 11 of the Code and, during the onset of the case, remained in possession

and control of its assets and operated its business under §§ 1107 and 1108 of the Code as

debtor-in-possession.  Loran Eatman ("Mr. Eatman"), vice president of DH-EK Management

Corp., ("DH-EK") signed the petition as the Debtor's authorized individual.

2

5.      On August 17, 2012, the Debtor filed its schedules of assets and liabilities and its statement of financial affairs.  *See* Dkt. No. 11.  Five days after that, the Debtor filed a set of amended schedules and an amended statement of financial affairs.  *See* Dkt. Nos. 20, 21 and 22.  According to the amended statement of financial affairs, Francine Dvorkin ("Mrs. Dvorkin") and several Dvorkin family entities own a controlling interest in the Debtor as more fully described below.  Mrs. Dvorkin is married to Daniel Dvorkin ("Mr. Dvorkin").

6.      The Debtor, through its subsidiaries or related entities, is primarily involved in commercial real estate investment and management. The Debtor, through one or more limited liability companies and land trusts, at one time possessed ownership interests in approximately seventy (70) parcels of real property.  These real properties include developed and undeveloped parcels.  The developed parcels consist of office, retail, industrial, and residential properties in Chicago and the surrounding suburbs.

7.      The Debtor listed in its amended Schedule B ownership interests in more than 40 partnerships and joint ventures, all of which are limited liability companies (the "Nondebtor LLCs").  The Debtor also disclosed beneficial interests in 14 land trusts ("Land Trusts"). According to its amended Schedule H, the Debtor was a co-debtor or guarantor of the debt for at least 44 entities, most of which appear to be Non-Debtor LLCs or Land Trusts.

8.      In addition to the Dvorkin family's ownership interests in the Debtor, public records indicate Mrs. Dvorkin occupies a significant management position in DH-EK. According to the Illinois Secretary of State's website, Mrs. Dvorkin is the president of DH-EK, the company which employs Mr. Eatman and is managing member of the Debtor.  The Secretary of State's website also indicates that Mr. Eatman serves as registered agent for both DH-EK and the Debtor.  Upon information and belief, Mr. Dvorkin played a role in managing the Debtor's business affairs prior to the commencement of this case.

3

9.     Mr. Dvorkin was indicted and convicted in a proceeding pending in the United States District Court for the Northern District of Illinois for his alleged involvement in a murder for hire plot. *See* Case No. 12 CR 00500, *USA V. Dvorkin.* The Debtor's counsel has represented that Mrs. Dvorkin terminated Mr. Dvorkin's relationship with the Debtor approximately two weeks after his arrest, and then put Mr. Eatman in control of the Debtor shortly before the filing of this case.

10.     In its Statement of Financial Affairs, the Debtor listed the following members ("Members") with ownership interests in the Debtor: (i) EISKALT, LLC with a 27.778% ownership interest; (ii) Francine Dvorkin Irrevocable Trust with a 5% ownership interest; (iii) Beverly Trust with a 33.6111% ownership interest; and (iv) Aaron Trust with a 33.6111% ownership interest. *See* Dkt. No. 11, at p. 38. The Members of the Debtor are owned, or otherwise controlled by Francine Dvorkin, Aaron Dvorkin, and Beverly Dvorkin (the "Equity Interest Holders").

11.     On August 24, 2012, the U.S. Trustee filed a Motion to Appoint Chapter 11 Trustee. *See* Dkt. No. 29. On August 29, 2012, creditor FirstMerit Bank, N.A. filed its Motion to Appoint Chapter 11 Trustee. *See* Dkt. No. 32. On October 1, 2012, the Court granted the U.S. Trustee's Motion to Appoint a Chapter 11 Trustee. *See* Dkt. No. 80.

12.     On October 3, 2012, the U.S. Trustee filed its Motion for Approval of the Appointment of Gus A. Paloian as Chapter 11 Trustee. *See* Dkt. No. 83. On October 16, 2012, the Bankruptcy Court entered the Order approving the appointment of Gus A. Paloian as Chapter 11 Trustee. *See* Dkt. No. 96.

13.     On October 18, 2012, the Trustee filed the Application of Chapter 11 Trustee Gus A. Paloian to Employ Seyfarth Shaw LLP as His Counsel Retroactively (the "Employment Application"). The terms of Seyfarth's employment are memorialized in the Employment Application. *See* Dkt. No. 104.

4

14.    On November 5, 2012, the Court entered its order authorizing the employment of Seyfarth to render services to the Trustee that are necessary and beneficial to administering the Estate (the "Retention Order").  *See* Dkt. No. 122.  On February 15, 2013, the Trustee filed his Amended Application to Clarify Scope of Employment of Seyfarth Shaw LLP (the "Amended Employment Application"), which the Court approved on February 28, 2013 (the "Amended Retention Order" and, with the Retention Order, collectively the "Seyfarth Retention Orders"). *See* Dkt. No. 215.

15.    As more fully set forth in the Amended Employment Application, Seyfarth's representation of the Trustee and the Estate in their capacity as agent for the various Land Trusts under powers of direction, the Nondebtor LLCs as manager thereof, and other entities (collectively referred to as the "Affiliates") owned or controlled, in whole or in part, by the Estate as disclosed in the amended bankruptcy schedules and statement of financial affairs or as otherwise indicated by the Trustee has included, but is not limited to the sale of assets, including real property, owned by such Affiliates; and, will likely include the wind-up of such Affiliates.

16.    Since the Petition Date, certain creditors of the Debtor or creditors of Affiliates of the Debtor moved for and obtained relief from the automatic stay in order to foreclose upon real property.  In addition, the Chapter 11 Trustee filed numerous motions for the approval of the sale of real property, whether owned directly by the Debtor or by the Debtor's Affiliates. These sales benefitted the Debtor's Estate in two ways.  First, the real property sales resulted in the payment of mortgages against the real properties which reduced related secured claims and/or guaranty claims against the Estate.   Second, the Debtor's Estate sale proceeds from the sales of the real properties.

17.    The Chapter 11 Trustee also settled several adversary proceedings which resulted in the collection of settlement proceeds for the Estate and reductions of liabilities against the Estate.

18.    On March 31, 2015, the Trustee and the Equity Interest Holders (collectively, the "Plan Proponents") filed their Amended Joint Chapter 11 Plan of Reorganization  (*see* Dkt. No. 659) (the "Plan"), and on June 26, 2015, the Plan Proponents filed an amendment to the Plan. *See* Dkt. No. 778.

19.    The Plan provides for 100% distributions to general unsecured creditors and allows holders of equity interests to retain their interests in the Debtor.

20.    On April 20, 2015, ColFin Bulls Funding A, LLC ("Lender") filed an adversary complaint against Chapter 11 Trustee, Adv. No. 15-00264 (the "Adversary Proceeding") seeking a declaration that, among other things, Chapter 11 Trustee breached an earlier agreement to sell certain property.  Thereafter, Chapter 11 Trustee filed a counterclaim against Lender seeking a declaration that, among other things, Lender is obligated to consensually release a mortgage.  Chapter 11 Trustee and Lender thereafter filed cross-motions for partial summary judgment in the Adversary Proceeding.  On November 25, 2015, the Bankruptcy Court entered a Memorandum Decision denying Lender's motion for partial summary judgment, granting Chapter 11 Trustee's motion for partial summary judgment in part, and staying the remainder of Chapter 11 Trustee's motion pending the completion of discovery. On August 24, 2016, after completion of discovery and supplemental briefing, the Bankruptcy Court heard argument on Chapter 11 Trustee's motion for partial summary judgment and then took the matter under advisement

21.    On May 7, 2015, over the objections of Lender and other creditors, the Bankruptcy Court entered an order approving the amended disclosure statement filed by Chapter 11 Trustee and the Equity Interest Holders in support of the Plan

22.     On June 30, 2015, over the objections of Lender and other creditors, the Bankruptcy Court entered an order (the "Confirmation Order") confirming the Plan.  On July 9, 2015, Lender filed an appeal of the Confirmation Order.  On March 29, 2016, the District Court entered a Memorandum Opinion (the "Confirmation Appellate Order") reversing the Confirmation Order in part and remanding the matter to the Bankruptcy Court for further proceedings to determine, among other things, the appropriate rate of post-petition interest to be awarded to Lender in light of its opinion (the "Confirmation Order Remand Proceeding" and, together with the Purchase Approval Order Remand Proceeding, the "Remand Proceedings").  On April 28, 2016, Chapter 11 Trustee filed a motion to certify (the "Motion to Certify") the Confirmation Appellate Order for an interlocutory appeal to the U.S. Circuit Court of Appeals for the Seventh Circuit (the "Seventh Circuit").  After briefing by Chapter 11 Trustee and Lender, the District Court took the Motion to Certify under advisement.

23.     On November 19, 2015, over the objection of Lender, the Bankruptcy Court entered an order (the "Claim Objection Order") sustaining Chapter 11 Trustee's objection to the portion of Lender's Amended Proof of Claim consisting of post-petition interest.  On November 20, 2015, Lender filed an appeal of the Claim Objection Order, Appellate Case No. 1:15-cv-10512, to the District Court.  On August 23, 2016, the District Court entered an Order (the "Claim Objection Appellate Order") sustaining the Claim Objection Order.  On September 23, 2016, Lender filed an appeal of the Claim Objection Appellate Order, Appellate Case No. 16-3512 (the "Claim Objection Appellate Order Appeal"), to the Seventh Circuit.  The Claim Objection Appellate Order Appeal remains pending.

24.     On November 25, 2015, the Bankruptcy Court entered an order (the "ASM Claim Objection Order") overruling Lender's objection to proof of claim no. 14 filed by ASM (the "ASM Claim").  On December 8, 2015, Lender filed an appeal of the ASM Claim Objection Order.  On April 26, 2016, the District Court entered a Memorandum Opinion and Order and

7

related Order (collectively, the "ASM Claim Objection Appellate Order") reversing the ASM

Claim Objection Order as set forth therein.  On May 24, 2016, Chapter 11 Trustee filed an

appeal of the ASM Claim Objection Appellate Order, to the Seventh Circuit.

25.    On January 26, 2017, the Chapter 11 Trustee and Lender entered into a settlement

agreement to resolve all claims between Lender, the Estate, and Affiliates.  The settlement

agreement required that numerous conditions be fulfilled before effectiveness, including

vacating orders on appeal, dismissing appeals, escrowing settlement funds, and releasing

mortgages.  The settlement agreement has been fully implemented.

26.    In accordance with Section 504(b)(1) of the Bankruptcy Code and Rule 2016,

Seyfarth has received no promises for payment for services rendered or to be rendered in any

capacity whatsoever in connection with the Case, other than specifically provided for in the

Seyfarth Retention Orders.  Additionally, other than as permitted by Section 504(b)(1) of the

Bankruptcy Code and Rule 2016(a), no agreement or understanding exists between Seyfarth

and any other entity for a division of compensation and reimbursement received or to be

received for services rendered in or in connection with the Case.

## IV.  SUMMARY OF SERVICES RENDERED, AND EXPENSES INCURRED, BY SEYFARTH

### A.  Overview

27.    This Application is the Eleventh and Final application for compensation and

expense reimbursement that Seyfarth has filed in this Case.

28.    On June 14, 2013, Seyfarth filed its First Interim Fee Application requesting

$676,704.00 for legal services rendered, and reimbursement of expenses in the amount of

$25,118.36.  *See* Dkt. No. 287.  On July 8, 2013, the Court awarded Seyfarth fees in the

amount of $676,704.00 and reimbursement of expenses in the amount of $25,118.36.  *See* Dkt.

No. 305.

8

29.    On October 2, 2013, Seyfarth filed its Second Interim Fee Application requesting $640,171.50 for legal services rendered, and reimbursement of expenses in the amount of $17,311.98. *See* Dkt. No. 357.  On October 24, 2013, the Court awarded Seyfarth fees in the amount of $640,171.50 and reimbursement of expenses in the amount of $17,311.98. *See* Dkt. No. 379.

30.    On April 11, 2014, Seyfarth filed its Third Interim Fee Application requesting $509,734.00 for legal services rendered, and reimbursement of expenses in the amount of $11,503.71. *See* Dkt. No. 460.  On May 2, 2014, the Court awarded Seyfarth fees in the amount of $509,734.00 and reimbursement of expenses in the amount of $11,503.71. *See* Dkt. No. 467.

31.    On August 4, 2014, Seyfarth filed its Fourth Interim Fee Application requesting $399,553.50 for legal services rendered, and reimbursement of expenses in the amount of $7,400.65. *See* Dkt. No. 509.  On September 26, 2014, the Court awarded Seyfarth fees in the amount of $399,553.50 and reimbursement of expenses in the amount of $7,400.65. *See* Dkt. No. 537.

32.    On November 26, 2014, Seyfarth filed its Fifth Interim Fee Application requesting $373,576.00 for legal services rendered, and reimbursement of expenses in the amount of $4,563.23.  See Dkt. No. 549.  On December 18, 2014, the Court awarded Seyfarth fees in the amount of $339,329.50 and reimbursement of expenses in the amount of $4,563.23. *See* Dkt. No. 558.  On February 26, 2015, the Court awarded Seyfarth fees in the amount of $34,246.50. *See* Dkt. No. 597.

33.    On April 13, 2015, Seyfarth filed its Sixth Interim Fee Application requesting $313,154.00 for legal services rendered, and reimbursement of expenses in the amount of $4,683.48. *See* Dkt. No. 675.  On May 7, 2015, the Court awarded Seyfarth fees in the amount of $313,154.50 and reimbursement of expenses in the amount of $4,683.48. *See* Dkt. No. 731.

9

34.    On July 8, 2015, Seyfarth filed its Seventh Interim Fee Application requesting $655,361.50 for legal services rendered, and reimbursement of expenses in the amount of $4,271.59.  *See* Dkt. No. 809.  On July 29, 2015, the Court awarded Seyfarth fees in the amount of $655,361.50 and reimbursement of expenses in the amount of $4,271.59.  *See* Dkt. No. 837.

35.    On November 25, 2015, Seyfarth filed its Eighth Interim Fee Application requesting $191,316.50 for legal services rendered, and reimbursement of expenses in the amount of $2,052.12.  *See* Dkt. No. 912.  On December 22, 2015, the Court awarded Seyfarth fees in the amount of $191,316.50 and reimbursement of expenses in the amount of $2,052.12.  *See* Dkt. No. 934.

36.    On April 16, 2016, Seyfarth filed its Ninth Interim Fee Application requesting $272,030.00 for legal services rendered, and reimbursement of expenses in the amount of $5,449.46.  *See* Dkt. No. 961.  On May 4, 2016, the Court awarded Seyfarth fees in the amount of $272,030.00 and reimbursement of expenses in the amount of $5,449.46.  *See* Dkt. No. 964.

37.    On November 16, 2016, Seyfarth filed its Tenth Interim Fee Application requesting $315,255.50 for legal services rendered, and reimbursement of expenses in the amount of $11,034.44.  *See* Dkt. No. 994.  On December 8, 2016, the Court awarded Seyfarth fees in the amount of $315,179.00 and reimbursement of expenses in the amount of $11,034.44.  *See* Dkt. No. 1001.

38.    During the Application Period, Seyfarth has:  (i) provided legal services to the Trustee in the amount of $114,063.50 (the "Fees"), and (ii) advanced costs in the amount of $606.72 (the "Expenses") in connection with the legal services that it has provided to the Trustee.

39.    The following table consists of a breakdown of the amount of Fees incurred by each Seyfarth professional, including each such professional's: (i) title, (ii) hourly rate, (iii)

10

total hours expended in providing legal services in the Case, and (iv) the value attributable to

such legal services:

| PROFESSIONAL | TITLE | 2016 HOURLY RATES | 2017 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $695.00 | $695.00 | 64.60 | $44,897.00 |
| James B. Sowka | Partner | $460.00 | $460.00 | 2.20 | $1,012.00 |
| Tobi Pinsky | Associate | $440.00 | $440.00 | 19.50 | $8,822.00 |
| Bret M. Harper | Associate | $355.00 | $355.00 | 77.20 | $27,406.00 |
| Jennifer M. McManus | Paralegal | $315.00 | $315.00 | 98.10 | $30,901.50 |
| Julie Ziegler | Former Case Assistant | $105.00 | $105.00 | 9.40 | $987.00 |
| Allison Calhoun | Case Assistant | $95.00 | $95.00 | .40 | 38.00 |
| **TOTAL:** | | | | **271.40** | **$114,063.50** |

40.    Biographies for the attorneys listed above who performed the bulk of the services

in this matter were previously submitted to the Court as part of the First, Second, Third, Fourth

Fifth, Sixth, Seventh, Eighth and Ninth Application (*see* Dkt. Nos. 305, 379, 460, 509, 549,

675, 809, 912 and 961 at Exhibit 1) (the "Attorney Biographical Information").

41.    During the Application Period, Seyfarth made every reasonable effort to have

services that it rendered to the Trustee performed by those qualified professionals charging the

lowest hourly rates consistent with the level of service, experience, and efficiency required of a

given task.

42.    All of the compensation for which Seyfarth requests allowance and payment, and

all of the expenses for which Seyfarth requests reimbursement, in this Application relate to the

discharge of Seyfarth services, as requested by the Trustee, during the Application Period.

11

43.    Seyfarth respectfully submits that its services rendered to the Trustee and expenses incurred during the Application Period have, in all respects, been reasonable, necessary, and beneficial to the Estate, as further discussed herein.

## B.  Time and Expense Records

44.    Seyfarth maintains written records of the time expended by its professionals. These time records are maintained:  (i) contemporaneously with the rendition of services by each Seyfarth professional, and (ii) separately from those of the Trustee, in accordance with established procedures within this District.

45.    Such records for the Case, copies of which are grouped and attached hereto as **Exhibit 1** and which are incorporated herein by reference, set forth in detail:  (i) the services which Seyfarth rendered on behalf of the Trustee, (ii) the dates upon which such services were rendered, and (iii) the amount of time spent on the services in one-tenth of one hour increments.

46.     Seyfarth also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with its rendition of services to the Trustee.  A complete listing of the Expenses and the amounts for which reimbursement is sought is attached hereto as **Exhibit 2** and incorporated herein by reference.

## C.  Breakdown of Fees by Category of Services Rendered

47.    For the Court's convenience, Seyfarth has categorized its services to the Trustee during the Application Period into six (6) categories, as follows:  (i) Case Administration;  (ii) Settlement Negotiations; (iii) Corporate Entity/Plan Confirmation; (iv) Sale of Assets; (v) Fee Applications; and (vi) Other Professionals Fee Applications.

### CASE ADMINISTRATION (43.40 HOURS VALUED AT $19,282.00)

During the Application Period, Seyfarth performed 43.40 hours of services having a value of $19,282.00 on behalf of the Trustee on matters related to estate administration including

negotiating and drafting an indemnification agreement with the Equity Interest Holdings with respect to closing of the case and transition of operations, preparing monthly operating reports, abandoning property, retaining an accountant and working with the accountant on preparing tax returns and other case closing tasks.

48.    A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | 2016 HOURLY RATES | 2017 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $695.00 | $695.00 | 14.50 | $10,077.50 |
| James B. Sowka | Partner | $465.00 | $460.00 | 1.20 | $552.00 |
| Bret M. Harper | Associate | $380.00 | $355.00 | 11.30 | $4,011.50 |
| Jennifer M. McManus | Paralegal | $315.00 | $315.00 | 13.50 | $4,252.50 |
| Julie Ziegler | Case Assistant | $105.00 | $105.00 | 2.50 | $262.50 |
| **TOTAL:** | | | | **43.00** | **$19,156.00** |

### SETTLEMENT NEGOTIATIONS (90.10 HOURS VALUED AT $39,357.00)

49.    During the Application Period, Seyfarth performed 90.10 hours of services having a value of $39,357.00 on behalf of the Trustee in connection with the global settlement of various proceedings; including:

A.    Negotiating and finalizing a global settlement with ColFin Bulls Funding A, LLC ("Lender"), resolving substantially all of the remaining litigation involving the Estate, including three appeals and an adversary proceeding;

B.    Preparing documents necessary to the implementation of the Estate's settlement agreement with Lender, including reviewing Lender's motion to vacate an appeal order, dismissal of appeals, an escrow agreement, and resolution of an open letter of credit; and

13

C.      Negotiation with Chicago Title & Trust, a title company, regarding improper recording of prior release and remedies under insurance.

50.    A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | 2016 HOURLY RATES | 2017 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $695.00 | $695.00 | 22.50 | $15,637.50 |
| James B. Sowka | Partner | $460.00 | $460.00 | .30 | $138.00 |
| Bret M. Harper | Associate | $355.00 | $355.00 | 62.70 | $22,258.50 |
| Jennifer M. McManus | Paralegal | $315.00 | $315.00 | 4.00 | $1,260.00 |
| Julie Ziegler | Case Assistant | $105.00 | $105.00 | .60 | $63.00 |
| **TOTAL:** | | | | **90.10** | **$39,357.00** |

### CORPORATE/ENTITY/FINAL DECREE (55.10 HOURS VALUED AT $24,155.00)

51.    During the application Period, Seyfarth performed 55.10 hours of services having a value of $24,155.00 on behalf of the Trustee on matters related to the corporate entity governance and final decree including:

A.      Preparing property vesting spreadsheet, property designations and vesting notices;

B.      Conducting post-confirmation administration of the Estate; and

C.      Preparing final decree in connection with case closing.

52.    A breakdown of the professionals providing services related to the marketing and sale of the properties is as follows:

| PROFESSIONAL | TITLE | 2016 HOURLY RATES | 2017 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|

14

| PROFESSIONAL | TITLE | 2016 HOURLY RATES | 2017 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $695.00 | $695.00 | 17.90 | $12,440.50 |
| James B. Sowka | Partner | $460.00 | $460.00 | .50 | $230.00 |
| Bret M. Harper | Associate | $355.00 | $355.00 | .30 | $106.50 |
| Jennifer M. McManus | Paralegal | $315.00 | $315.00 | 36.00 | $11,340.00 |
| Allison Calhoun | Case Assistant | $95.00 | $95.00 | .40 | $38.00 |
| **TOTAL:** | | | | **55.10** | **$24,155.00** |

### SALE OF ASSETS (25.40 HOURS VALUED AT $12,388.50)

53.    During the Application Period, Seyfarth performed 25.40 hours of services having a value of $12,388.50 on behalf of the Trustee for the Estate on matters related to the sale of assets owned or controlled directly by the bankruptcy estate, including:  preparing documents necessary to the implementation of the settlement agreement with Lender with respect to properties subject to the settlement located in Lynwood and Lombard, Illinois, including preparation of mortgage releases, implementation of an escrow agreement with an escrow trustee, and preparation of a corrective recording affidavit with respect to a mortgage release improperly filed by a title company.

54.    A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | 2016 HOURLY RATES | 2017 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $695.00 | $695.00 | 4.40 | $3,058.00 |
| Tobi Pinsky | Associate | $440.00 | $440.00 | 19.50 | $8,822.00 |
| Bret M. Harper | Associate | $355.00 | $355.00 | .90 | $319.50 |

15

| PROFESSIONAL | TITLE | 2016 HOURLY RATES | 2017 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Jennifer M. McManus | Paralegal | $315.00 | $315.00 | .60 | $189.00 |
| **TOTAL:** | | | | **25.40** | **$12,388.50** |

### FEE APPLICATIONS (54.80 HOURS VALUED AT $18,062.00)

55.    During the Application Period, Seyfarth performed 54.80 hours of services worth a value of $18,062.00 in preparing its Tenth Interim Fee Application, Eleventh and Final Fee Application and the Trustee's Second and Final Fee Application.

56.    In this Application, Seyfarth spent 20.80 hours for a total of $7,059.00 in connection with preparing, reviewing and revising its Tenth Interim Fee Application.  Based upon the total fees requested herein, the value of time recorded for the preparation of Seyfarth's Tenth Interim Fee Application represents 2.25 percent (2.25%) of the total fees sought for services rendered during the Application Period.

57.    Based upon the total fees requested in Seyfarth's Tenth Interim Fee Application, the value of time recorded for the preparation of that fee application represents 3.25 percent (3.25%) of the total fees requested therein.

58.    Seyfarth spent 16.40 hours for a total of $5,964.00 in connection with preparing, reviewing and revising this Application.  Based upon the total fees requested herein, the value of time recorded for the preparation of Seyfarth's Eleventh and Final Fee Application represents approximately 5.20 percent (5.2%) of the total fees sought for services rendered during the Application Period.

59.    Seyfarth spent 17.50 hours for a total of $5,007.50 in connection with preparing, reviewing and revising the Trustee's Second and Final Fee Application.  Based upon the total fees requested herein, the value of time recorded for the preparation of the Trustee's Second

41199155v.1

and Final Fee Application represents approximately 6.30 percent (6.3%) of the total fees sought for services rendered during the Application Period.

60.    A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | 2016 HOURLY RATE | 2017 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $695.00 | $695.00 | 5.30 | $3,683.50 |
| James B. Sowka | Partner | $460.00 | $460.00 | .20 | $92.00 |
| Bret Harper | Associate | $355.00 | $355.00 | 2.00 | $710.00 |
| Jennifer McManus | Paralegal | $315.00 | $315.00 | 41.00 | $12,915.00 |
| Julie Ziegler | Case Assistant | $105.00 | $105.00 | 6.30 | $661.50 |
| **TOTAL:** | | | | **54.80** | **$18,062.00** |

### OTHER PROFESSIONALS FEE APPLICATIONS (3.00 HOURS VALUED AT $945.00)

61.    During the Application Period, Seyfarth performed 3.00 hours of services worth a value of $945.00 in preparing Popowcer Katten, Ltd.'s First and Final Fee Application and Kutchins, Robbins & Diamond, Ltd.'s First and Final Fee Application.

62.    A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | 2016 HOURLY RATE | 2017 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Jennifer McManus | Paralegal | $315.00 | $315.00 | 3.00 | $945.00 |
| **TOTAL:** | | | | **3.00** | **$945.00** |

63.     During the Application Period., Seyfarth has voluntarily reduced its fees by $4,769.50.

## D.  Incurred Expenses

64.     As set forth in attached **Exhibit 2**, Seyfarth advanced $606.72 in Expenses on behalf of the Estate during the Application Period.

65.     A portion of the Expenses consists of in-house photocopying charges, which Seyfarth has voluntarily reduced to $0.10 per page.

66.     Additionally, Seyfarth advanced out-of-pocket expenses on behalf of the Estate for online legal research conducted through [LEXIS and WESTLAW].  The charges for these expenses are *actual and at cost*.

67.     In this respect, there is no mark-up of the online legal research charges and no profit derived by Seyfarth from them.  Seyfarth ordinarily and customarily passes its discount on such services *through to the client*—in this instance, the Estate—billing the client only what Seyfarth is actually charged for use of the online resources.

68.     The expenses for which Seyfarth seeks reimbursement are representative and typical of the types of expenses that Seyfarth ordinarily and customarily charges its non-bankruptcy clients.  Such expenses are neither taken into consideration in determining, nor built as "overhead" into, Seyfarth's hourly rates.

69.     Instead, Seyfarth generally adheres to the so-called "user fee" billing system for out-of-pocket expenses—that is, Seyfarth charges expenses to the particular clients who use them, in this instance the Estate at cost.

70.     During this Application Period, Seyfarth voluntarily reduced its expenses by $361.80.

18

## V.  **RELIEF REQUESTED**

71.    Seyfarth respectfully requests that the Court:  (i) allow and award it on an interim

basis (1) the Fees, consisting of $114,063.50 for legal services rendered to the Trustee, and (2)

the Expenses, in the amount of $606.72, incurred in relation to such services (collectively, the

"Requested Fees and Expenses");  and (ii) authorize and direct the Trustee to make prompt

payment of the Requested Fees and Expenses to Seyfarth from the Estate.

72.    A proposed order providing for the requested relief is attached hereto for the

Court's consideration.

## VI.  **BASIS FOR THE REQUESTED RELIEF**

### A.  **Compensation Standards**

73.    Pursuant to Section 331 of the Bankruptcy Code, a professional person employed

under Section 327 may generally apply for interim compensation from a bankruptcy court.  See

11 U.S.C. § 331.  Under Section 330(a)(1)(A), the Court may then award the professional

person "reasonable compensation for actual, necessary services rendered[.]" 11 U.S.C. §

330(a)(1)(A).

74.    In determining the "extent and value of compensation," this Court has endorsed

and applied the "'lodestar' approach—multiplying the number of actual and necessary hours

reasonably expended by a reasonable hourly rate[.]" *In re* Wildman, 72 B.R. 700, 712 (Bankr.

N.D. Ill. 1987) (Schmetterer, J.);  accord *In re* UNR Indus., Inc., 986 F.2d 207, 210-11 (7th

Cir. 1993) (lodestar approach provides fair compensation under Section 330);  see also City of

Burlington v. Dague, 505 U.S. 557, 562, 112 S. Ct. 2638, 2641, 120 L. Ed. 2d 449 (1992)

("The 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting

jurisprudence.  We have established a 'strong presumption' that the lodestar represents the

'reasonable' fee[.]").

75.    To arrive at an attorney's reasonable hourly rate, the Ninth Circuit has

"emphasize[d] that section 330 . . . *requires* lawyers in bankruptcy matters to receive the same

compensation as they would earn in performing similar services outside the context of

bankruptcy."[1] _In re UNR Indus., Inc._, 986 F.2d at 210 (emphasis added).  The statutory aim is

twofold:  (A) "that attorneys be reasonably compensated," and (B) "that future attorneys not be

deterred from taking bankruptcy cases due to a failure to pay adequate compensation." UNR

Indus., Inc., supra;  see also _In re Farley, Inc._, 156 B.R. at 210 ("The purpose of § 330 was to

encourage bankruptcy practitioners not to leave the field in favor of more lucrative areas of the

law.") (citing legislative history to Section 330).

76.    As a cornerstone of this market rate approach, the Ninth Circuit has repeatedly

"stressed that the best measure of the cost of an attorney's time is what that attorney could earn

from paying clients"—that is, the attorney's "standard hourly rate." Gusman v. Unisys Corp.,

986 F.2d 1146, 1150 (7th Cir. 1993);  see Small v. Richard Wolf Med. Instruments Corp., 264

F.3d 702, 707 (7th Cir. 2001) ("The attorney is entitled to his market rate and not some

'medieval just price' determined by the court.") (quoting Steinlauf v. Continental Ill. Corp. (_In_

_re_ Continental Ill. Sec. Litig.), 962 F.2d 566, 568 (7th Cir. 1992)).

77.    Therefore, the Ninth Circuit has mandated that an "attorney's actual billing rate . .

. is considered to be the presumptive market rate." Small, 264 F.3d at 707.  Moreover, "[t]he

lawyer's regular rate is *strongly presumed* to be the market rate for his or her services."

Moriarty v. Svec, 233 F.3d 955, 965 (7th Cir. 2000) (emphasis added), cert. denied, 532 U.S.

1066, 121 S. Ct. 2216, 150 L. Ed. 2d 209 (2001);  see Moriarty v. Svec, 429 F.3d 710, 718 (7th

---

[1] "In section 330 and its legislative history Congress expressed its intent that compensation in bankruptcy matters be commensurate with the fees awarded for comparable services in non-bankruptcy cases." In re UNR Indus., Inc., 986 F.2d at 208-09;  see In re Farley, Inc., 156 B.R. 203, 210 (Bankr. N.D. Ill. 1993) (Schmetterer, J.) (quoting same).

Cir. 2005) (quoting same);  see also Central States, S.E. & S.W. Areas Pension Fund v. Central

Cartage Co., 76 F.3d 114, 116 (7th Cir.) ("[A] lawyer's regular hourly fee, one counsel would

charge 'to the meanest villain', is the market rate for that lawyer's services.") (emphasis added

and quoting Barrow v. Falck, 977 F.2d 1100, 1106 (7th Cir. 1992)), cert. denied sub nom.

Mason & Dixon Lines v. Central States, S.E. & S.W. Areas Pension Fund, 519 U.S. 811, 117

S. Ct. 56, 136 L. Ed. 2d 19 (1996).

78.    Under this principle, "lawyers who fetch above-average rates are presumptively

entitled to them, rather than to some rate devised by the court." Gusman, 986 F.2d at 1150;

accord In re Spanjer Bros., Inc., 191 B.R. 738, 755 (Bankr. N.D. Ill. 1996) (Squires, J.)

("Generally, so long as the rates being charged are the applicant's normal rates charged in

bankruptcy and non-bankruptcy matters alike, they will be afforded a presumption of

reasonableness.").

79.    "Only if an attorney is unable to provide evidence of her actual billing rates

should a [ ] court look to other evidence, including 'rates similar experienced attorneys in the

community charge paying clients for similar work.'" Mathur v. Board of Trs. of S. Ill. Univ.,

317 F.3d 738, 743 (7th Cir. 2003) (quoting Spegon v. Catholic Bishop of Chicago, 175 F.3d

544, 555 (7th Cir. 1999)); see also Gusman, 986 F.2d at 1151 ("the ability to identify a

different average rate in the community" is an impermissible reason to depart from an

attorney's billing rate).

80.    Accordingly, because Seyfarth bills the vast majority of its time at a set rate for

paying clients and spends only a very small percentage of time on cases covered by fee-shifting

statutes, "there is a strong presumption that such counsel could have billed out remaining time

at the rate normally charged." In re Farley, Inc., 156 B.R. at 211.

81.    Additionally, under generally accepted standards, if the services of an attorney

employed under Section 327 are reasonably likely to benefit a debtor's estate, they should be

21

compensable.  See Andrews & Kurth L.L.P. v. Family Snacks, Inc. (In re Pro-Snax

Distributors, Inc.),157 F.3d 414, 421 (5th Cir. 1998);  In re Ames Dep't Stores, Inc., 76 F.3d

66, 71 (2d Cir. 1996);  2 Lawrence P. King, Collier on Bankruptcy ¶ 330.04 at 330-43 (15th ed.

rev. 1999);  cf. 11 U.S.C. § 330(a)(4)(A)(ii)(I).  In this same context, "[n]ecessary services are

those that aid the professional's client in fulfilling its duties under the Code." In re Ben

Franklin Retail Store, Inc., 227 B.R. 268, 270 (Bankr. N.D. Ill. 1998) (Barliant, J.).

     82.    Thus, the determination of benefit to the Estate is not constrained to a dollar-for-

dollar measurement, such that each dollar's worth of legal services must bring a cash dollar

into the Estate in order to justify equivalent compensation to counsel.  See In re Lifschultz Fast

Freight, Inc., 140 B.R. 482, 488 (Bankr. N.D. Ill. 1992) (Barliant, J.) ("Necessary services have

always included services that aid in the administration of the case and help the client fulfill

duties under bankruptcy law, whether or not those services result in a monetary benefit to the

estate.");  accord In re Rite Way Reproductions, Inc., 1998 Bankr. LEXIS 1080, at *6-*7

(Bankr. N.D. Ill. Aug. 27, 1998) (Squires, J.) (concurring and further observing that "factors

other than the economic impact on the estate of actions taken should be considered in the

'benefit to the estate' analysis"); In re Caribou P'ship III, 152 B.R. 733, 742 (Bankr. N.D. Ind.

1993) (same);  see, e.g., Ben Franklin Retail Store, Inc., supra ("[A] trustee (or interim trustee)

performs necessary services when he carries out the duties set forth in § 704 of the Code.");

JMP-Newcor Int'l, Inc. v. Seyfarth, Shaw, Fairweather & Geraldson (In re JMP-Newcor Int'l,

Inc.), 1998 U.S. Dist. LEXIS 987, at *13 (N.D. Ill. Jan. 23, 1998) (affirming bankruptcy

court's award of fees to firm for advising committee in reasonable way and in good faith

despite lack of direct monetary benefit to debtor and estate).

     83.    Instead, other factors, such as "whether the services rendered promoted the

bankruptcy process or administration of the estate in accordance with the practice and

procedures provided under the Bankruptcy Code and Rules for the orderly and prompt

41199155v.1

disposition of bankruptcy case and related adversary proceedings," also support awards of compensation. *In re* Spanjer Bros., Inc., 191 B.R. at 748.

84.   As previously stated, the legal services for which Seyfarth requests allowance and payment of compensation relate to the Application Period, and were rendered in connection with the Case and in the discharge of Seyfarth's professional responsibilities as counsel to the Trustee during that time.

85.   Seyfarth respectfully submits that such legal services have, in all respects, been reasonable, necessary, and beneficial to the Estate.  In this connection, these services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the matters which they concerned.

86.   Further, they promoted the bankruptcy process and the administration of the Estate and supported the Trustee in fulfilling his statutory duties, all in accordance with the Bankruptcy Code and Rules.

87.   For purposes of this Application, Seyfarth has computed the Fees on the basis of its discounted hourly rates applicable to the performance of bankruptcy legal services unrelated to the Case at the time that such services were rendered.

88.   Seyfarth's average hourly billing rate for its attorneys—that is, its "lodestar" rate—during the Application Period was $502.36.

89.   During the Application Period, Seyfarth's discounted hourly billing rates for professionals providing services in the Case ranged from:  (A) $355.00 to $695.00 for attorneys, and (B) $105.00 to $315.00 for paralegals or para-professionals.  Based upon all of the foregoing, Seyfarth respectfully submits that the fair and reasonable value of the legal services that it rendered during the Application Period is $114,063.50.

41199155v.1

90.    In all these respects, the compensation which Seyfarth has requested herein is reasonable based upon the customary compensation charged by comparably-skilled practitioners in either non-bankruptcy or bankruptcy cases.

91.    Moreover, it is less than the fees which Seyfarth would have received for providing legal services to its non-bankruptcy clients, and thus represents even less than its lost opportunity costs for such non-bankruptcy services because Seyfarth's acceptance of employment by the Trustee in the Case precluded such employment.

92.    In rendering legal services to the Trustee, and in making this Application, Seyfarth respectfully submits that it has exercised its good faith billing judgment, and has not sought compensation for "excessive, redundant, or otherwise unnecessary" time.  Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40, 76 L. Ed. 2d 40 (1983).

93.    Finally, and with respect to whether Seyfarth has demonstrated skill and experience in the bankruptcy field pursuant to 11 U.S.C. § 330(a)(3)(E) (2006), Seyfarth has provided the Attorney Biographical Information.  The Attorney Biographical Information sets forth the qualifications of the Seyfarth attorneys listed herein, including their demonstrated skill and experience in the bankruptcy field, both in the local Chicago market and in representation of clients in matters nationwide.

## B. Expense Reimbursement Standards

94.    With respect to reimbursing expenses, the Court may award a professional person "reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1)(B).

95.    "An expense is necessary if it was incurred because it was required to accomplish the proper representation of the client."  In re Spanjer Bros., Inc., 191 B.R. at 749;  see In re Wildman, 72 B.R. at 731.

96.    In this connection, Seyfarth has requested reimbursement only for actual and necessary expenses incurred on the Trustee's behalf.  Seyfarth respectfully submits that these

24

expenses were incurred because they were required to accomplish the proper representation of

the Trustee and the furtherance of the Estate's interests in the Case. As previously indicated,

Seyfarth voluntarily reduced and limited its costs for photocopy expenses.

97. Seyfarth submits that the Expenses are reimbursable and do not constitute

"overhead," which the Court discussed and described, as follows:

> Expenses which are overhead are not compensable because they are not built into
> the normal hourly rate charged by the billing professional. Convent Guardian,
> 103 Bankr. at 939; Wildman, 72 Bankr. at 731. Overhead expenses include "all
> continuous administrative or general costs or expenses incident to the operation of
> the firm which cannot be attributed to a particular client or cost." In re Thacker,
> 48 Bankr. 161, 164 (Bankr. N.D. Ill. 1985) (quoting Jensen-Farley Pictures, 47
> Bankr. at 584)[2].

98. In contrast, Seyfarth charges for its out-of-pocket expenses only, including the

incurred Expenses, to the particular clients who use them—in this instance, the Estate. As

previously discussed, the incurred Expenses included herein are neither taken into

consideration in determining, nor built as "overhead" into, Seyfarth's hourly rates.

99. Such "user fee" expense billing closely adheres to the Ninth Circuit's market rate

billing approach. In this respect, the Ninth Circuit's market approach to compensation extends

equally to the reimbursement of expenses, including those for online research. See In re

Hunt's Health Care, Inc., 161 B.R. 971, 978 (Bankr. N.D. Ind. 1993); accord In re

Hillsborough Holdings Corp., 127 F.3d at 1403-04 ("[I]f the cost of comparable services is a

relevant factor in setting compensation for services under [330](a)(1), it would logically seem

---

[2] In re GSB Liquidating Corp., 1995 Bankr. LEXIS 1245, at *41 (Bankr. N.D. Ill. Aug. 21, 1995)
(Squires, J.); see In re Adventist Living Ctrs., Inc., 137 B.R. 701, 719 (Bankr. N.D. Ill. 1991) (Sonderby,
J.) ("Expenses which are overhead and which are included in the hourly rate are not compensable."); see
also 2 Lawrence P. King, Collier on Bankruptcy ¶ 330.05 at 3-330 (15th ed. rev. LEXIS 2006)
("Nonreimbursable overhead has been defined as regular administrative and general expenses incident to
the operation of a business that cannot be attributed to a particular client or cost."); see, e.g., Stroock &
Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.), 127 F.3d 1398,
1402 (11th Cir. 1997) ("We accept that true 'overhead' costs—the ordinary operating costs of a firm, *such
as rent, heat, and the like*, that cannot be attributed to a particular case—are not separately
compensable as reimbursable expenses.") (emphasis added)

also to be a relevant factor in determining what categories to treat as reimbursable expenses

under (a)(2).").

100. For example, in <u>Continental Illinois Securities</u>, <u>supra</u>, the Ninth Circuit reversed,

and markedly criticized, the district court for disallowing online research expenses:

> The judge refused to allow the lawyers to bill any of their out-of-pocket
> expenses of using a computerized legal research service (LEXIS).  He
> thought those expenses should be part of the lawyers' overhead.  This was another clear
> error.  If computerized research expenses were customarily treated in this fashion,
> lawyers' hourly rates would be even higher than they are, requiring an adjustment
> in the lodestar.  *But the more important point is that the market—the paying,
> arms' length market—reimburses lawyers' LEXIS and WESTLAW expenses, just
> as it reimburses their paralegal expenses, rather than requiring that these items
> be folded into overhead.*  Markets know market values better than judges do.  And
> as with paralegals, so with computerized research:  if reimbursement at market
> rates is disallowed, the effect will be to induce lawyers to substitute their own,
> more expensive time for that of the paralegal or the computer, 962 F.2d at 570
> (emphasis added); <u>accord</u> <u>Harman v. Lyphomed, Inc.</u>, 945 F.2d 969, 976 (7th Cir.
> 1991) ("The attorneys also claim that the court erred in excluding the roughly
> $10,000 expended in computer-assisted research.  The court felt that the expense
> 'is part of the amount allowed for attorney's fees.'  *We must reverse the district
> court here.*  Computer-assisted research fees—so long as reasonably incurred—in
> theory reduce the number of attorney hours otherwise needed for (presumably)
> more time-consuming manual research and are therefore compensable[. . . . as]
> expenses[.]") (emphasis added).

101. The Ninth Circuit has remained consistent on this subject and has repeatedly

required attorney reimbursement for computerized legal research charges.  <u>See, e.g.</u>, <u>Uniroyal</u>

<u>Goodrich Tire Co. v. Mutual Trading Corp.</u>, 63 F.3d 516, 526 (7th Cir. 1995) ("Before we turn

our attention to the award of costs, we consider MTC's request that the costs of computerized

legal research be subtracted from the award.  *MTC claims that these expenses are better

characterized as overhead in the same way that maintenance of a law firm library is.  We

reject this claim.*") (emphasis added), <u>cert. denied</u>, 516 U.S. 1115, 116 S. Ct. 916, 133 L. Ed.

2d 846 (1996).

102. Accordingly, lower courts in this District—including numerous judges of this

Court—have adhered to this controlling precedent.  <u>See, e.g.</u>, <u>Shula v. Lawent</u>, 2004 U.S. Dist.

26

LEXIS 17662, at *7-*8 (N.D. Ill. Sept. 2, 2004) (Keys, J.) (fully allowing "computerized legal

research charges" as "costs" that were "both reasonable and necessary"); Stamm v. Provident

Life & Accident Ins. Co., 2000 U.S. Dist. LEXIS 5521, at *6 (N.D. Ill. Apr. 7, 2000) (Plunkett,

J.) ("The Ninth Circuit has held that computerized legal research is reimbursable as a

reasonable expense of litigation."); In re Price, 143 B.R. 190, 199 (Bankr. N.D. Ill. 1992)

(Squires, J.) (allowing full reimbursement of Lexis expense), aff'd sub nom. Price v. United

States (In re Price), 42 F.3d 1068 (7th Cir. 1994); In re Met-L-Wood Corp., 103 B.R. 972, 977

(Bankr. N.D. Ill. 1989) (Coar, J.) (allowing full reimbursement of computer research charges as

"'actual and necessary' expenses"), aff'd, 115 B.R. 133 (N.D. Ill. 1990); In re Prairie Cent.

Ry. Co., 87 B.R. 952, 960 (Bankr. N.D. Ill. 1988) (Squires, J.) (following earlier opinions of

the Court to allow reimbursement of Lexis  and Westlaw research charges); In re Wildman, 72

B.R. at 732 ("This Court adopts the view that computer research time that is both necessary

and attributable to a particular client or case is reimbursable under Section 330(a)(2).")

(emphasis in the original); In re UAL Corp., Case No. 02-48191-ERW (Wedoff, C.J.), Order

Approving Quarterly Application Of Vedder, Price, Kaufman & Kammholz, P.C. For

Allowance And Payment Of Compensation And Reimbursement Of Expenses (Docket No.

15670) (allowing full reimbursement of $8,085.93 in online legal research charges); In re

Eagle Food Centers, Inc., Case No. 03-15299-CAD (Doyle, J.), Order Approving Fourth And

Final Application Of Skadden, Arps, Slate, Meagher & Flom LLP Seeking Final Allowance

And Payment Of Compensation And Reimbursement Of Expenses (Docket No. 1136) (allowing

full expense reimbursement of $21,888 in "Computer Legal Research" during case period)

(unpublished decision); In re Conseco, Inc., Case No. 02-49672-CAD (Doyle, J.), Order

Approving Final Application Of Jenner & Block LLP For Allowance Of Administrative Claim

For Compensation And Reimbursement Of Expenses (Docket No. 6987) (allowing expense

reimbursement of $139,934.07, including Westlaw and Lexis charges); In re Wickes, Inc.,

27

Case No. 04-02221-BWB (Black, J.), *Findings Of Fact And Conclusions Of Law In Support Of Order Awarding To DLA Piper Rudnick Gray Cary US LLP, Attorneys For Wickes, Inc., For Allowance And Payment Of Interim Compensation And Reimbursement Of Expenses* (Docket No. 2935) (allowing expense reimbursement of $15,505.32, including Westlaw and Lexis charges).

103.   Finally, in seeking reimbursement for such costs, the Ninth Circuit has laid down guidelines, and cautioned, that an applicant "[is] not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover [ ] costs[, but] [r]ather [ ] [is] required to provide the best breakdown obtainable from retained records." Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co., 924 F.2d 633, 643 (7th Cir. 1991).

104.   In seeking reimbursement for the Expenses herein, Seyfarth has made every attempt to fully comply with these dictates.

## VII.  NOTICE

105.   Twenty-one days' notice of this Application, and service of the Application, has been provided to the Office of the United States Trustee, in care of Patrick S. Layng.

106.   Pursuant to Bankruptcy Rule 2002(a)(2) and (a)(6), and due to the expense that would be incurred by the Estate in serving this Application upon all creditors in the Case, Seyfarth respectfully submits that sufficient cause exists to limit mail service of:  (A) the Application to the parties on the Special Service List, and (B) the Notice of Application to the General Service List, in both regards considering that all other entities requesting notices in the Case will receive notice of, and access to, the Application via CM/ECF.

107.   Seyfarth respectfully requests that the above-notice (the "Notice") be deemed adequate and that the Court find that no other or further notice is necessary.

28

## VIII.  <u>NO PRIOR REQUEST</u>

108.  No prior request for the relief requested by this Application has been made to this

Court or to any other court.

WHEREFORE Seyfarth Shaw LLP respectfully requests that the Court enter an Order:

A.   Finding Notice of the Application sufficient as given and that no other or

further notice is necessary;

B.   Allowing and awarding Seyfarth on a final basis the Requested Fees and

Expenses;

C.   Authorizing the Trustee to make payment of such Fees and Expenses to

Seyfarth from the Estate, and

D.   Granting such other and further relief as this Court deems just and

appropriate.

Dated:  November 9, 2017

Respectfully submitted,

GUS A. PALOIAN, not individually or
personally, but solely in his capacity as the
Chapter 11 Trustee of Debtor's Estate

By: /s/ Bret M. Harper
Gus A. Paloian (6188186)
gpaloian@seyfarth.com
Bret M. Harper (6299968)
bharper@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606
Telephone:  (312) 460-5000
*Counsel to Chapter 11 Trustee Gus A.*
*Paloian*

41199155v.1